# Exhibit A

AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Eastern District of Texas

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC | ) | |
| *Plaintiff* | ) ) | |
| v. | ) | Civil Action No. 2:20-cv-00078 |
| HMD GLOBAL OY | ) ) | |
| *Defendant* | ) | |

Date: 5/28/20
Time: 11:10
Server: KJ
ID #: 10015

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* HMD GLOBAL OY
Karaportti 2, FIN-02610, Espoo, Finland
1200 Brickell Avenue
#510
Miami, FL 33131

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are: Jonathan H. Rastegar
BRAGALONE CONROY PC
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 3/18/20

David A. O'Toole
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09) Summons in a Civil Action (Page 2)

Civil Action No. 2:20-cv-00078

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____
on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____, a person of suitable age and discretion who resides there,
on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____, who is designated by law to accept service of process on behalf of *(name of organization)* _____
on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# (MARSHALL DIVISION)

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, § § § | |
| Plaintiff, § | C.A. No. _____ |
| § | |
| v. § | JURY TRIAL DEMANDED |
| § | |
| HMD GLOBAL OY, § § | |
| Defendant. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Cellular Communications Equipment LLC ("CCE" or "Plaintiff") files this Original Complaint against Defendant HMD Global Oy ("HMD" or "Defendant") for infringement of U.S. Patent No. 7,218,923 ("the '923 patent" or "the patent-in-suit").

## THE PARTIES

1. CCE is a Texas limited liability company with its principal place of business in Plano, Texas.

2. On information and belief, Defendant is a Finish corporation with places of business at Karaportti 2, FIN-02610, Espoo, Finland and Level 4, 4 Kingdom Street, Paddington Central, London W26BD. Upon information and belief, HMD sells and offers to sell products and services throughout Texas, including in this judicial district, and introduces products and services that perform infringing processes into the stream of commerce knowing that they would be sold in Texas and this judicial District.

## JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

1

4.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(c). Defendant is a foreign entity and may be sued in any judicial district under 28 U.S.C. § 1391(c)(3).

6.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Texas Long Arm Statute, due at least to its substantial business in this State and judicial district, including: (A) at least part of its infringing activities alleged herein; and (B) regularly doing or soliciting business, engaging in other persistent conduct, and/or deriving substantial revenue from goods sold and services provided to Texas residents. For example, Defendant designs, develops, manufactures, assembles and markets smartphones that include the Android Messaging app and arranges for such phones to be offered for sale in this District.

7.     This Court has personal jurisdiction over Defendant, directly or through intermediaries, including its wholly-owned subsidiaries, because it has committed acts within Texas giving rise to this action and/or has established minimum contacts with Texas such that personal jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

8.     On information and belief, Defendant has placed and continues to place infringing smartphones into the stream of commerce via an established distribution channel with the knowledge and/or intent that those products were sold and continue to be sold in the United States and Texas, including in this District.

9. On information and belief, Defendant has significant ties to, and presence in, the State of Texas and the Eastern District of Texas, making venue in this judicial district both proper and convenient for this action.

## THE PATENT-IN-SUIT

10. The '923 patent is titled "Control of Terminal Applications in a Network Environment." The inventions claimed in the patent-in-suit generally relate to a new and novel approach to controlling the permissions of applications operating on a mobile device. And more particularly, the inventions relate to controlling the messaging permissions of such applications.

11. The '923 patent lawfully issued on May 15, 2007.

12. The named inventors on the patent-in-suit are Auvo Hartikainen, Kari Silfverberg, Markku Kontio, Kari Miettinen, Isaac De La Pena, Elina Aho, Arto Tiihonen, Arto Pussinen, and Juha P. Hartikainen.

13. Each asserted claim in the patent-in-suit is presumed valid.

14. Each asserted claim in the patent-in-suit is directed to patent eligible subject matter under 35 U.S.C. § 101.

15. The specification of the patent-in-suit discloses shortcomings in the prior art and then explains, in detail, the technical way the inventions claimed in the patent-in-suit resolve or overcome those shortcomings. As the patent-in-suit explains, there is a desire for mobile devices to "provide an open development platform for application developers." '923 Patent, 1:32-33. While this open development platform offers tremendous benefits, it also opens the door to "the possibility of fraudulent applications." *Id.* at 1:38-39. Left unchecked, this could allow for malicious applications to behave contrary to the agreements made with the network operator or send premium SMS messages at the user's expense. *See id.* at 1:43-47. The '923 Patent recognized

this drawback and introduced a solution to allow the mobile device to eliminate the possibility of misuse by a malicious application. *Id.* at 1:53-58.

## COUNT I
### (Infringement of U.S. Patent No. 7,218,923)

16. Plaintiff incorporates paragraphs 1 through 15 herein by reference.

17. This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

18. Plaintiff is the owner of the '923 patent with all substantial rights to the '923 patent including the exclusive right to enforce, sue, and recover damages for past and future infringement.

19. The '923 patent is valid, enforceable and was duly issued in fully compliance with Title 35 of the United States Code.

### DIRECT INFRINGEMENT (35 U.S.C. §271(a))

20. Defendant has, and continues to, infringe one or more claims of the '923 patent in this judicial district and elsewhere in Texas and the United States.

21. On information and belief, Defendant has, and continues to, either by itself or via an agent, infringe at least claim 1 of the '923 patent by, among other things, practicing the method of claim 1 via at least its testing of the native Messaging application in its Android phones ("the Accused Products").

22. Attached hereto as Exhibit A, and incorporated herein by reference, is a claim chart detailing how the Accused Products infringe the '923 patent.

23. Defendant is liable for these infringements of the '923 patent pursuant to 35 U.S.C. § 271.

## INDIRECT INFRINGEMENT (INDUCEMENT - 35 U.S.C. §271(b))

24. Based on the information presently available to Plaintiff, absent discovery, and in the alternative to direct infringement, Plaintiff contends that Defendant has, and continues to, indirectly infringe one or more claims of the '923 patent by inducing direct infringement by end users of the Accused Products.

25. Defendant has had knowledge of the '923 patent since at least the service of this Complaint.

26. On information and belief, despite having knowledge of the '923 patent, Defendant has specifically intended for persons who acquire and use the Accused Products, including Defendant's customers and end consumers, to acquire and/or use such devices in a way that infringes the '923 patent, including at least claim 1, and Defendant knew or should have known that its actions were inducing infringement.

27. Defendant instructs and encourages users to use the Accused Products in a manner that infringes the '923 patent. For example, Defendant's user guides for its phones provide end users detailed instructions on how to use the Android Messaging app in the Accused Products. In addition, Defendant's website includes support articles with detailed instructions on how to use the Android Messaging app in the Accused Products.

28. Furthermore, Defendant has not provided any information or indication that it has implemented a design around or otherwise taken any remedial action with respect to the '923 patent. In accordance with Fed. R. Civ. P. 11(b)(3), Plaintiff will likely have additional evidentiary support after a reasonable opportunity for discovery on this issue.

29. Plaintiff has been damaged as a result of Defendant's infringing conduct described in this Count. Defendant is, thus, liable to Plaintiff in an amount that adequately compensates

Plaintiff for Defendant's infringements, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Plaintiff requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## PRAYER FOR RELIEF

Plaintiff asks that the Court find in its favor and against Defendant and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of the '923 patent have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment that one or more claims of the '923 patent have been willfully infringed, either literally and/or under the doctrine of equivalents, by Defendant;

c. Judgment that Defendant account for and pay to Plaintiff all damages and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including an accounting for any sales or damages not presented at trial;

d. Judgment that Defendant account for and pay to Plaintiff a reasonable, ongoing, post judgment royalty because of Defendant's infringing activities, including continuing infringing activities, and other conduct complained of herein;

e. That Plaintiff be granted pre-judgment and post judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f. Find this case exceptional under the provisions of 35 U.S.C. § 285 and award enhanced damages;

g. Plaintiff seeks preliminary and permanent injunctions as a result of Defendant's infringement of the '923 patent. Plaintiff is likely to succeed in showing that Defendant infringes the '923 patent. Because of that infringement, Plaintiff has suffered an irreparable injury, and the remedies available at law, such as monetary damages, are inadequate to compensate for that injury. For example, if Plaintiff must enforce a judgment against Defendant in China, Plaintiff will face a historically challenging burden in persuading a Chinese court to enforce a judgment from a U.S. court, likely preventing Plaintiff from obtaining any

  monetary damages from Defendant. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted; and the public interest would not be disserved by a permanent or preliminary injunction; and

h. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 17, 2020          Respectfully submitted,

By: */s/ Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com

Case 2:20-cv-00078... U.S. Patent No. 7,218,923 (HMD Global Devices) ... Page 1 of 5 PageID #: 8

HMD Global makes, uses, tests, offers for sale, sells, and/or imports user equipment operating version 4.2 and higher of the Android Operating system (the "HMD Global Devices"). Each of the HMD Global Devices includes the features identified in this chart. The features and functionality identified in this chart cause the HMD Global Devices to practice the asserted claims of U.S. Patent No. 7,218,923 (the "'923 patent"). The HMD Global Devices include any user equipment that HMD Global makes, uses, tests, offers for sale, sells, and/or imports that includes the Android Operating System v4.2 and higher. Such devices include, but are not limited to, the:

- Nokia 9 PureView
- Nokia 8.1
- Nokia 8 Sirocco
- Nokia 7.2
- Nokia 7.1
- Nokia 7 Plus
- Nokia 6.2
- Nokia 6.1 Plus
- Nokia 6.1
- Nokia 5.1 Plus
- Nokia 5.1
- Nokia 4.2
- Nokia 3.2
- Nokia 3.1 Plus
- Nokia 3.1
- Nokia 2.3
- Nokia 2.2
- Nokia 2.1
- Nokia 1 Plus
- Nokia 1
- Nokia C1

The above list is not intended to be exhaustive. The term HMD Global Device includes any device that HMD Global offered or offers which included Android Operating System v4.2 or higher. The HMD Global Devices directly infringe the asserted claims of the '923 patent.

This claim chart is meant to be illustrative for purposes of meeting Plaintiff's pleading obligations and should not be construed as binding or limiting.

References to source code in this Exhibit are exemplary and based off of the publicly available version of Android 4.3. CCE reserves the right to change such source code designations based upon its review of the source code for the HMD Global Devices.

| Claim 1 | |
|---|---|
| A method for controlling application programs in a communication terminal, the method comprising: | Each HMD Global Device performs a method for controlling application programs in a communication terminal. For example, each HMD Global Device is a communication terminal that performs a method of controlling messaging applications that operate on it. |

| Claim 1 | |
|---|---|
| sending messages from an application program towards a communication network, the application program residing in a communication terminal; | Each HMD Global Device sends messages from an application program towards a communication network. For example, each HMD Global Device contains a SMS/MMS program that is pre-loaded on the device. An example of such a program is the Android "Messaging" app. The Android Messaging app comprises an executable version of source code that is stored on the HMD Global Device.<br><br>The Android Messaging app is programmed to send messages towards the cellular network. For example, the Messaging app uses the sendMessage() method when the application attempts to transmit a text message. The application invokes either method sendTextMessage() or method sendMultipartTextMessage() when the application attempts to send a text message to the base station, for forwarding to the intended recipient.<br><br>The sendTextMessage() and sendTextMultipartMessage() methods are methods of the SmsManager, which is a core part of the Telephony subsystem of the Android operating system. The Android documentation (available here: https://developer.android.com/reference/android/telephony/SmsManager.html) explains that the SmsManager "Manages SMS operations such as sending data, text, and pdu SMS messages." More specifically, the sendTextMessage() method is used to "Send a text based SMS" and the sendMultipartTextMessage() method is used to "Send a multi-part text based SMS."<br><br>Alternatively, CCE contends that this claim element is met under the doctrine of equivalents because above-described features of the HMD Global Devices perform substantially the same function recited in this element, in substantially the same way to achieve substantially the same result. Any alleged differences between the above-described features and the recited element are insubstantial and immaterial to infringement. |

| Claim 1 | |
|---|---|
| diverting a message of the messages to a controlling entity residing in the communication terminal; and | Each HMD Global Device diverts a message of the messages to a controlling entity residing in the communication terminal. For example, calling the sendTextMessage() or sendMultipartTextMessage() methods that are part of the SMSManager class results in the message being diverted by calling the sendRawPDU() method.<br><br>The sendRawPdu() method performs various checks on the message it receives. A message that passes the checks it is sent to the controlling entity via the checkDestination() method. Messages that fail any of the checks are not delivered to the controlling entity. Therefore, the sendRawPdu() method is configured to divert one or more, but less than all, of the messages sent from the Messaging application to the controlling entity.<br><br>Alternatively, CCE contends that this claim element is met under the doctrine of equivalents because above-described features of the HMD Global Devices perform substantially the same function recited in this element, in substantially the same way to achieve substantially the same result. Any alleged differences between the above-described features and the recited element are insubstantial and immaterial to infringement. |

| Claim 1 | |
|---|---|
| based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling being performed before the message is transmitted from the communication terminal to the communication network. | The controlling entity controls, based on the message and before the message is transmitted to the communication network, whether the application program behaves in a predetermined manner in the communication terminal. The control occurs before the message is transmitted from the communication terminal to the communication network.<br><br>The controlling entity calls the SmsUsageMonitor.checkDestination() method to determine if the message is a premium short code, which is a short phone number that may have additional user fees. If the message is not a premium short code, the message is sent to the communication network. Otherwise, the controlling entity checks if it was previously configured by the user to ALWAYS or NEVER send premium short codes, and if configured, the message is either sent or discarded, respectively.<br><br>All other messages are sent to the controlling entity's handleConfirmShortCode() method. This method informs the user via a dialog that the application "would like to send a message to" the destination, and that "this will cause charges on your mobile account". The user can choose to allow or deny the message to be sent. The message that is sent from the application consists of two parts – the number to which it is being sent (i.e. its destination) and the body (i.e. the text, pictures etc.). In particular, a message (consisting of both destination number and text body), when sent towards the communication network via the sendMultipartTextMessage() method, is checked to confirm that the message contains a destination. If the destination is missing, the method raises an error. The controlling entity examines the destination (the number portion of the message) to determine whether to allow the message to be sent to the communication network, and thus the requirement that the controlling entity control based on the message is met. When the Messages application invokes sendTextMessage() or method sendMultipartTextMessage(), the predetermined manner of operation is to send messages to the communication network without further action from the user. The controlling entity controls whether the Messages application behaves in this manner. For example, if the controlling entity examines the message and determines that the message is for a premium SMS code, then it will take one of the above described actions. If the device was configured to NEVER send premium short codes and the message is for a premium SMS code, then the Messages application will not behave in the predetermined manner. Similarly, if the device was not previously configured to either ALWAYS or NEVER send premium short codes and the message is for a premium SMS code, then a dialog will be presented to the user and the Messages application will not behave in the predetermined manner. Therefore, the controlling entity controls based upon the destination portion of the message. This control action is also performed before the message is transmitted to the cellular network.<br><br>Alternatively, CCE contends that this claim element is met under the doctrine of equivalents because above-described features of the HMD Global Devices perform substantially the same function recited in this element, in substantially the same way to achieve substantially the same result. Any alleged differences between the above-described features and the recited element are insubstantial and immaterial to infringement. |