**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § § § | |
| Plaintiff, | § § | C.A. No. 2:20-cv-00078-JRG |
| v. | § § | **JURY TRIAL DEMANDED** |
| **HMD GLOBAL OY,** | § § § | |
| Defendant. | § | |

**CCE'S SUR-REPLY TO DEFENDANT'S MOTION TO DISMISS
AND ALTERNATE REQUESTS FOR LIMITED DISCOVERY OR
<u>AUTHORIZATION TO SERVE BY ALTERNATE MEANS</u>**

Plaintiff Cellular Communications Equipment LLC ("CCE") files this sur-reply in opposition to Defendant HMD Global Oy's ("HMD") motion to dismiss. In the alternative, CCE requests limited discovery into the relationship between HMD and HMD America, Inc. ("HMD America") or authorization to serve by alternate means.

**TABLE OF CONTENTS**

I.   RESPONSES TO HMD'S STATEMENT OF ISSUES TO BE DECIDED .............. 1

II.   SUMMARY OF ARGUMENT ................................................................................ 2

III.   ARGUMENTS AND AUTHORITIES .................................................................. 2

    A.   The Court Issued a Valid Summons that CCE Served on HMD. .......................... 2

    B.   CCE Served HMD in Accordance with the Federal Rules. ................................... 3

        i.   *CCE's service of HMD satisfied Rule 4(h)(1)(A).* ............................................... 4

        ii.   *CCE's service of HMD satisfied Rule 4(h)(1)(B).* ............................................... 5

    C.   The Facts Undermine HMD's Claim that Service Via the Hague Is Not Slow ...... 7

IV.   CONCLUSION ........................................................................................................ 9

# TABLE OF AUTHORITIES

**Cases**

*Bridgeport Music, Inc. v. Rhyme Syndicate Music*,
  376 F.3d 615 (6th Cir. 2004) .................................................................................................. 5

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ................................................................................................................ 6

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) ......................................................................................... 6

*Fellowship Filtering Technologies, LLC v. Alibaba.com, Inc.*,
  No. 15-2049, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016) .................................................... 4

*Heise v. Olympus Optical Co., Ltd.*,
  111 F.R.D. 1 (N.D. Ind. 1986) ................................................................................................ 6

*OHVA, Inc. v. ACE Merchant Proc. LLC*,
  Case No. 4:20-cv-1244, Dk. No. 9 (S.D. Tex. Apr. 14, 2020) ................................................ 8

*ProShipLine, Inc. v. M/V Beluga Revolution*,
  CIV.A. H-07-4170, 2008 WL 447707 (S.D. Tex. Feb. 19, 2008) ........................................... 5

*SIMO Holdings Inc. et al*. v. *Hong Kong uCloudlink Network Tech. Ltd*,
  C.A No. 2:20-CV-00003-JRG, Dkt. No. 18 (E.D. Tex. May 11, 2020) .................................. 7

*U.S. v. Toyota Motor Corp.*,
  569 F. Supp. 1158 (C.D. Cal. 1983) ....................................................................................... 6

*Victualic Co. v. Allied Rubber & Gasket et al.*,
  Case No. 3:17-cv-1006, Dkt. No. 18 (S.D. Cal. May 8, 2020) ............................................... 8

*Zisman v. Sieger*,
  106 F.R.D. 194 (E.D. Ill. 1985) .............................................................................................. 6

**Rules**

FED. R. CIV. P. 4 .................................................................................................................. 3, 4, 5

I.      **RESPONSES TO HMD'S STATEMENT OF ISSUES TO BE DECIDED**[1]

1. Did CCE use a summons issued by the Court and signed by the clerk? **CCE's Response**: Yes.

2. Was this court correct in *Traxcell Technologies, LLC v. Nokia Solutions & Networks US LLC*, when it found that because "HMD Global Oy is based in Finland and Finland is a signatory to the Hague Convention," plaintiffs seeking to serve HMD Global "must comply with the requirements of the Hague Convention"? **CCE's Response**: HMD oversimplifies the holding of the *Traxcell* case. The *Traxcell* court merely held that the serving party must comply with the Hague Convention (in applicable countries) only when effectuating service *abroad*. *Traxcell*, 2019 WL 8137134, at *3. Rule 4(h)(1) authorizes service of a foreign corporation "in a judicial district of the United States."

3. Did CCE serve HMD Global through the Hague Convention? **CCE's Response**: CCE is in the process of serving HMD Global via the Hague Convention.

4. Did HMD Global actually authorize HMD America to accept service of legal process on its behalf? **CCE's Response**: HMD America is authorized to accept service for HMD Global pursuant to Rule 4(h)(1).

5. Is HMD America an alter ego of HMD Global? **CCE's Response**: HMD America is an alter ego of HMD Global and is authorized to accept service for HMD Global pursuant Rule 4(h)(1).

---

[1] Although CCE's Response fully responded to each issue in HMD's "Statement of Issues to Be Decided," HMD nevertheless elevated form over substance and argued that CCE failed to respond by not separately segregating the refutations in the Response. Out of an abundance of caution, CCE reiterates the above responses.

## II.     SUMMARY OF ARGUMENT

HMD's Reply consists of a re-hashing of the arguments from its Motion while ignoring the facts and issues raised in CCE's Response. Remarkably, HMD continues to seek dismissal despite the fact that CCE has been attempting service via the Hague Convention since March 23. Such relief is improper and suggests HMD's true motive is delay. HMD's decision to disregard the points raised in CCE's Response further underscores this conclusion.

## III.     ARGUMENTS AND AUTHORITIES

**A.**     **The Court Issued a Valid Summons that CCE Served on HMD.**

The facts are straight-forward. It is undisputed that the Court issued a summons that complied with Rule 4. *See* Dkt. No. 4. CCE sent the summons to a process server. *See* Dkt. No. 15 ("Response") at 3 (citing Rastegar Decl. ¶ 4). The process server served the summons on HMD. *Id*. These facts demonstrate that CCE satisfied Rule 4.

Recognizing that the core facts do not support its motion, HMD manufactures a narrative by mischaracterizing CCE's Response, using terms like "self-help" to suggest that CCE modified the summons. But HMD's window dressing does not change reality: the Court issued a valid summons; HMD received it. *Id*. The fact that a process server made a notation of where he effectuated service does not change this. Again, HMD has not cited a single case that supports the relief it seeks.

HMD's repeated suggestion that CCE used "self-help" to "prepar[e] a new summons" in disregard of the rules is based on no facts and not true. *See* Dkt. No. 16 ("Reply") at 1-2. CCE delivered the properly issued summons to Special Delivery, which in turn sent it to a Florida process server. Dkt. No. 15-2 at ¶¶ 2-3. The Florida process server made the notation, a common practice that helps ensure the server attempts service at the correct location. *Id*. at ¶ 3. If these

2

facts invalidated the summons, HMD would not need to spend so much time suggesting that CCE made the notation or that CCE needed to resort to "self-help" to garner a summons that complied with Rule 4. But HMD insists on accusing CCE of using "self-help" to modify the summons because it cannot prevail on the facts.

CCE did not modify the summons–nor was there any need to do so. The Rules do not require that a summons state the address of service. FED. R. CIV. P. 4(a). And CCE did not "prepar[e] a new summons" (Reply at 1); an issued summons is not transformed into a new summons when a process server notes the address of service. Nor is HMD able to cite any authority to the contrary. CCE complied with Rule 4 by serving a signed, sealed summons on HMD.

B.   **CCE Served HMD in Accordance with the Federal Rules.**

The Rules authorize domestic service of a foreign corporation under either subpart (A) or (B) of Rule 4(h)(1). CCE's Response demonstrated that the *Traxcell* court merely held that the serving party must comply with the Hague Convention (in applicable countries) when effectuating service *abroad*. Response at 6. HMD did not—and cannot—rebut this fact; instead, HMD restated its position that "CCE must serve HMD Global through the Hague Convention," while altogether dropping any reference to the holding in *Traxcell* or any other authority. *See* Reply at 1.

CCE's Response further demonstrated that CCE served HMD in compliance with Rule 4(h)(1)(A) and (B). HMD's attempt to characterize CCE's Response as presenting "two conflicting legal theories" misconstrues the issue. *See* Reply at 4. The Rules only require CCE to satisfy a provision of Rule 4(h)(1), which it did.

> i.   *CCE's service of HMD satisfied Rule 4(h)(1)(A).*

As an initial matter, HMD does not dispute that CCE properly served it under Florida law. Response at 7-9. Nor does HMD dispute that the rules authorize service of a foreign corporation in accordance with state law "where service is made." Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A). Thus, the Court can find CCE served HMD under Rule 4(h)(1)(A) without having to consider whether HMD America is either an alter ego or a managing agent of HMD.

Moreover, CCE's Response demonstrates the alter ego relationship between HMD America and HMD. HMD does not dispute any of the allegations in CCE's Response regarding the interplay between it and HMD America. Instead, HMD likens its relationship to that in *Fellowship Filtering Technologies, LLC v. Alibaba.com, Inc.*, No. 15-2049, 2016 WL 6917272 (E.D. Tex. Sept. 1, 2016). But the factually-specific holding in *Fellowship Filtering* concerned whether the contacts of a subsidiary could be imputed to the parent for the purposes of personal jurisdiction. *Id*. at *2-4. HMD focuses on the generalized allegations regarding the relationship between the parent and subsidiary in *Fellowship Filtering*, but fails to appreciate that the Court in *Fellowship Filtering* found that the evidence did not sustain the particular jurisdictional allegations at issue in that case. *Fellowship Filtering*, 2016 WL 6917272, at *4 ("The **evidence** Fellowship Filtering relies on to support these allegations demonstrates nothing more than a typical parent-subsidiary corporate relationship.") (emphasis added). The evidence, not HMD's generalizations, is the crux of the analysis. HMD attempts to manufacture a rule that a subsidiary can *never* be an alter ego of its corporate parent. Reply at 4-6. Instead, the Court held in *Fellowship* that a corporate relationship *alone* is not enough; what matters are the facts. Here, HMD does not dispute the stated facts.

4

And the facts demonstrate an alter ego relationship between HMD and HMD America. Again, HMD does not dispute any of the evidence cited in CCE's Response or CCE's characterizations of that evidence. HMD's Executive Chairman serves as the president of HMD America. Response at 12. In fact, HMD routinely selects a member of its board to serve as HMD America's president. *Id*. This means that HMD's officers and directors necessarily determine the policies for HMD America. Indeed, HMD's vice president acknowledged "HMD **Global's** journey to deliver United States consumers a versatile line up of Nokia phones." Dkt. No. 15-9 at 2 (emphasis added). And such declarations are consistent with HMD's public posturing that there is no distinction between it and its subsidiary. *See generally* Response at 8-9. Accordingly, HMD America functions as an alter ego of HMD.

  ii.  *CCE's service of HMD satisfied Rule 4(h)(1)(B).*

Regardless of whether CCE served HMD under Rule 4(h)(1)(A), the Rules also authorize service of a foreign corporation via its managing agent. FED. R. CIV. P. 4(h)(1)(B). "A managing agent is one authorized to transact all business of a particular kind at a particular place and must be vested with powers of discretion rather than being under direct superior control." *Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 624 (6th Cir. 2004); *ProShipLine, Inc. v. M/V Beluga Revolution*, CIV.A. H-07-4170, 2008 WL 447707, at *2 (S.D. Tex. Feb. 19, 2008).

As detailed in CCE's Response, HMD's declarations establish that HMD America is its managing agent. Response at p. 13. If, as HMD contends, HMD America is authorized to transact all business related to the sale of its mobile devices in the United States and has its own leadership team vested with the powers of discretion, then, by definition, HMD America is HMD's managing agent. HMD does not dispute the definition of a managing agent; and

5

importantly, HMD does not deny that HMD America has the authority of a managing agent. *See* Reply at 7-8.

Instead, HMD states "HMD Global has found no cases—and CCE has submitted none—that use the 'managing or general agent' provision in Rule 4(h)(1)(B) to allow service through a subsidiary." Reply at 7. Thus, HMD appears to incorrectly argue that the Rules do not allow for a subsidiary to serve as a managing agent. HMD's arbitrary interpretation of Rule 4 is incorrect. *See, e.g.*, *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 515 (D.N.J. 2008) (finding that "[Volkswagen of America] operates as an agent of [Volkswagen AG] by law for the purpose of service of process."); *U.S. v. Toyota Motor Corp.*, 569 F. Supp. 1158, 1160 (C.D. Cal. 1983) ("As previously noted in this litigation, Toyota U.S.A. may be considered a 'managing agent' of Toyota Japan, as that term is used in Federal Rule of Civil Procedure 4(d)(3)."); *Heise v. Olympus Optical Co., Ltd.*, 111 F.R.D. 1, 6 (N.D. Ind. 1986) (service on managing agent of a subsidiary is sufficient under Rule 4); *Zisman v. Sieger*, 106 F.R.D. 194, 200 (E.D. Ill. 1985) (service on foreign corporation accepted by sales assistant in wholly owned subsidiary's office satisfies Rule 4). Contrary to HMD's suggestion, these holdings demonstrate that finding a subsidiary to be a managing agent under Rule 4(h)(1)(B) does not create "open season on subsidiary corporations." Instead, it allows CCE to serve HMD's managing agent, as expressly allowed by Rule 4(h)(1)(B). HMD's strawman argument fails: because HMD uses HMD America as its managing agent—and not because HMD America is a corporate subsidiary of HMD—the Rules allowed CCE to serve HMD via HMD America.

Lastly, *Daimler AG v. Bauman*, 571 U.S. 117 (2014) is irrelevant to the issue of service. *Daimler* concerned general jurisdiction. *Daimler*, 571 U.S. 117, 134 (2014). *Daimler* simply stands for the proposition that for a foreign corporation to be subject to general jurisdiction in a

state, the corporation itself must be at home in the forum state. *Id.* at 132-133. As the Supreme Court noted, this is consistent with the traditionally restrictive view of general jurisdiction. *Id.* But general jurisdiction has nothing to do with service. And HMD cites no case to suggest that the holding in *Daimler* restricts the language of Rule 4.

**C.      The Facts Undermine HMD's Claim that Service Via the Hague Is Not Slow.**

CCE delivered the summons and complaint to the Finnish Central Authority on March 23. Response at 2. HMD's anecdotal statements that "service in Finland through the Hague Convention generally takes 15-40 days" has no bearing on this case. *See* Reply at 8. Here, service has not been complete in over 100 days. It is unreasonable for HMD to discuss the alleged general pace of the Finnish Central Authority while ignoring the facts of the case.

Moreover, HMD's anecdotal citations of cases are from August 2019 and prior. *See* Reply at 8 n.6. HMD cannot credibly contend these pre-COVID-19 services under the Hague Convention are representative of the current state of service through the Finland Central Authority. Nor can HMD credibly contend that the pandemic is not impacting the pace of service. Indeed, HMD offers no explanation for why the Finnish Central Authority has taken nearly three times as long as its purported general pace. And HMD's attempt to dismiss the email from CCE's process server stating that COVID-19 was causing delays as "hearsay" is misplaced. Whether the email is admissible at trial is not relevant at this stage. It is an uncontroversial proposition that the COVID-19 pandemic is causing worldwide delays. Indeed, this Court and others have recognized the impact the COVID-19 pandemic has on service of process, including international service. *Compare* Ex. A, *SIMO Holdings Inc. et al.* v. *Hong Kong uCloudlink Network Tech. Ltd*, C.A No. 2:20-CV-00003-JRG, Dkt. No. 18, at 7-8 (E.D. Tex. May 11, 2020) (motion requesting alternative service "particularly because of already-apparent and further-

7

anticipated delays [of the Beijing and Hong Kong Central Authorities] in view of COVID-19) *with* Ex. B, *id*. at Dkt. No. 25, at 2 (E.D. Tex. June 15, 2020) (granting motion in part the motion, among on reasons, "[i]n view of the delay in service by the Central Authority in China."); Ex. C, *Victualic Co. v. Allied Rubber & Gasket et al.*, Case No. 3:17-cv-1006, Dkt. No. 18, at 3 (S.D. Cal. May 8, 2020) ("the current global COVID-19 pandemic has likely complicated service efforts in China and will undoubtably result in additional service delays in the future") *Compare* Ex. D, *OHVA, Inc. v. ACE Merchant Proc. LLC*, Case No. 4:20-cv-1244, Dk. No. 9, at 1 (S.D. Tex. Apr. 14, 2020) (requesting substitute service "in light of the COVID-19 pandemic, given that normal service of process involves bringing the process server in close proximity with the agent of the Defendant") *with* Ex. E, *id*. at Dkt. No. 10, at 1 (S.D. Tex. Apr. 14, 2020) (granting motion).

There is no reason to believe that the Finnish Central Authority will deliver the summons and complaint any time soon. While HMD's Motion and Reply suggest that service could occur any day, its actions tell a different story: if HMD believed service would occur shortly, it would accept CCE's offer of a favorable extension of time in exchange for a waiver of service.[2] HMD's suggestion that service through the Hague Convention will occur soon is belied by its actions.

Finally, CCE is not asking for a 'get out of jail free' card. It is unclear what "jail" HMD believes CCE is in. Even if there were a problem with CCE's domestic service on HMD, which there is not, CCE is concurrently attempting to serve HMD via the Hague Convention. As such, dismissal is improper.

---

[2] While CCE properly served HMD, it nonetheless offered an extension of time in exchange for a waiver of service to avoid burdening the Court with the instant motion practice.

## IV.     CONCLUSION

For the foregoing reasons, HMD's motion should be denied. The Court issued a signed and sealed summons, which CCE served on HMD. Moreover, CCE's method of service complied with the Rules. Indeed, HMD does not dispute that CCE's method of service complied with Florida law, and thus, Rule 4(h)(1)(A). This fact alone is sufficient to overcome HMD's motion to dismiss. Moreover, dismissal is particularly improper because within a week of the Court issuing a summons, CCE began attempting service via the Hague Convention, and CCE's attempted service via the Hague Convention is continuing.

| | |
|---|---|
| Dated: July 9, 2020 | Respectfully submitted,<br><br>/s/ *Jonathan H. Rastegar*<br>Jeffrey R. Bragalone (lead attorney)<br>Texas Bar No. 02855775<br>Jonathan H. Rastegar<br>Texas Bar No. 24064043<br>Jerry D. Tice II<br>Texas Bar. No. 24093263<br><br>**BRAGALONE CONROY PC**<br>2200 Ross Avenue<br>Suite 4500W<br>Dallas, TX 75201<br>Tel: (214) 785-6670<br>Fax: (214) 785-6680<br>jbragalone@bcpc-law.com<br>jrastegar@bcpc-law.com<br>jtice@bcpc-law.com<br><br>Attorneys for Plaintiff<br>**CELLULAR COMMUNICATIONS EQUIPMENT LLC** |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 9, 2020.

/s/ *Jonathan H. Rastegar*
Jonathan H. Rastegar