**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | Case No. 2:20-CV-00078-JRG |
| Plaintiff, | § § § § | JURY TRIAL DEMANDED |
| v. | § § | |
| HMD GLOBAL OY, | § § | |
| Defendant. | § § | |

## JOINT MOTION FOR ENTRY OF PROTECTIVE ORDER (WITH DISPUTED PROVISIONS NOTED)

Plaintiff Cellular Communications Equipment LLC and Defendant HMD Global Oy file this Joint Motion for Entry of Protective Order.

## I.    INTRODUCTION AND BACKGROUND

The Parties have conferred and agreed to all terms of the proposed Protective Order, except terms within the following paragraphs.

1.   ¶ 10(h) – limits to source code printouts; and

2.   ¶ 11 – scope of prosecution bar.

Accordingly, the Parties submit a proposed Protective Order, attached as Exhibit A, for the Court's consideration. Disputed language is contained in the proposed Protective Order. For reference, disputed language in the proposed Protective Order is bracketed with an indication of whether Plaintiff or Defendant proposes the disputed language.

## II.    DISPUTE NO. 1: ¶ 10(h) - Limits to Source Code Printouts

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| The receiving Party shall be permitted to make three sets of printouts (including two sets of photocopies) of Source Code Material, all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied. The receiving Party may print ***no more than a reasonable number of pages*** | The receiving Party shall be permitted to make three sets of printouts (including two sets of photocopies) of Source Code Material, all of which shall be designated and clearly labeled "HIGHLY CONFIDENTIAL - SOURCE CODE," and the receiving Party shall maintain a log of all such files that are printed or photocopied. The receiving Party may print ***no more than 1000 pages and no more than 50 contiguous pages per file*** |

A.    <u>Plaintiff's Arguments</u>

Although the Court's default order does not contemplate a source code printout page limitation, Defendant seeks to limit a receiving Party to print no more than 1000 total pages of source code and no more than 50 contiguous pages per file. While Plaintiff does not dispute that source code printouts should be limited to the needs of this case, Plaintiff does not agree to Defendant's arbitrary limitations.

As Defendant's proposal is more restrictive, Defendant bears the burden to show good cause to include the 1000 page and 50 contiguous page limitations it seeks. *See Document Generation Corp. v. Allscripts, LLC*, No. CIV A 6:08-CV-479, 2009 WL 1766096, at *2 (E.D. Tex. June 23, 2009). Setting a specific page limitation at this stage of the case is premature for two reasons. First, the Court and Plaintiff have limited knowledge of the scope, organization, or format of source code that will be produced in this Action. Therefore, it is not possible to determine the number of source code printouts necessary for Plaintiff to present its case at trial. Second, Plaintiff has accused at least forty HMD devices of infringing the patent-in-suit, and it is unclear if the Parties will agree to representative products or even what the scope of representative products may be. Without this information, the Court and the Parties cannot accurately determine the number of

source code printouts required. Indeed, in the event the Parties do not agree to representative products, Plaintiff would be limited to a mere 25 pages per Accused Product, which would likely be insufficient. Plaintiff intends to print only the number of source code pages reasonably necessary to prove infringement. But at this stage, that number is unknown.

That Plaintiff may have agreed to page limits in different cases with different facts and different Accused Products has no bearing on the question before the Court. Instead, the Court first determines whether there is an "'unacceptable opportunity for inadvertent disclosure'" of confidential information to an individual involved in "competitive decisionmaking" with his or her client and then (2) "balance[s] this risk against the potential harm to the opposing party . . . ." *In re Deutsch Bank Trust Co. Ams.*, 605 F.3d 1373, 1378, 1380 (Fed. Cir. 2010) (quoting *U.S. Steel Corp. v. United States*, 730 F.2d 1465 (Fed. Cir. 1984)). The agreed provisions of the proposed Protective Order provide numerous protections to avoid inadvertent disclosure of source code. For example, Source Code Material is limited to a small group of people. Ex. A, ¶ 10(e). As another example, Source Code Material may generally not be stored electronically. *Id.* at ¶ 10(g). As yet another example, a receiving Party shall maintain a log of all printed or photocopied source code documents. *Id.* at 10(h). But a strict, arbitrary page limit has the potential to be catastrophic to Plaintiff. For example, if 51 consecutive pages of code are required for Plaintiff to put on its case at trial, under Defendant's proposal, Plaintiff may not be able to put on its case in chief.

Moreover, under an agreed provision of the proposed Protective Order, should the Parties disagree whether a receiving Party's request to print pages is unreasonable, the producing Party may withhold production pending a Motion to Compel production by the receiving Party. Ex. A, ¶ 10(h). Plaintiff has asserted the patent-in-suit eighteen times in the Eastern District of Texas, and the undersigned is unaware of any instances where the parties to those matters disputed whether

3

any source code print requests were unreasonable. However, if Defendant does believe a request is unreasonable, it has the option to withhold production pending a Motion to Compel.

    B. Defendant's Arguments

    While HMD Global has proposed a generous cap on the number of pages of confidential source code that may be printed—which far exceeds the limits in other CCE cases involving plaintiff's counsel—plaintiff asks to print any number of pages of confidential source code, limited only by the subjective term "not unreasonable."  The Court should adopt HMD Global's proposal.

    Unbounded printing of source code would frustrate the security provisions of the Protective Order.  The parties have carefully negotiated the capabilities of, and security mechanisms protecting, the source code review computer.  Permitting unlimited printing would circumvent these provisions by allowing plaintiff to print a large amount of code for review elsewhere.  This practice would increase the risk that code is lost, or its confidentiality compromised.  As this Court has recognized, "[g]iven the highly sensitive nature of source code, there is good cause for some restrictions on printing." *Smartflash LLC v. Apple Inc.*, No. 13-447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014) (holding that a limit of 40 contiguous pages was reasonable). *See also E-Contact Technologies, LLC v. Apple, Inc.,* No. 11-426, 2012 WL 11924448, at *3 (E.D. Tex. June 19, 2012) (adopting Defendant's proposal of 10 consecutive pages and 500 total pages, noting that  "[a]lthough Defendants' proposal may make the process more time-consuming, the Court balances this cost against Defendants' interest in the confidentiality of their source code and permits reasonable accountability for the review and printing of the source code.")  Other courts have held imposing limits on the number of contiguous pages is both "reasonable" and "appropriately included" in protective orders.  *See, e.g., Cherdak v. Koko Fitclub, LLC*, No. 14-10371, 2015 WL 1895992, at *3 (D. Mass. Apr. 27, 2015).

HMD Global's proposal already permits between approximately **three and five times** the amount of source code printouts permitted by other protective orders to which CCE and plaintiff's counsel have previously agreed.  For example, in *Cellular Commc'ns Equip. LLC v. HTC Corp. et al.*, Case No. 13-507, Docket No. 310 at 30-31 (E.D. Tex. Dec. 10, 2014), Section 7.2.9 of the Court's protective order imposed a requirement that CCE will need to meet and confer with the producing party if it wishes to print over **200 pages.**  *See also Cellular Commc'ns Equip. LLC v. Samsung Elecs. Co., Ltd.*, Case No. 14-759, Docket No. 74 at 30-31 (E.D. Tex. June 22, 2015); *Cellular Commc'ns Equip. LLC v. HTC Corp. et al.*, Case No. 16-363, Docket No. 11 at 34-35 (E.D. Tex. Apr. 25, 2016); *Cellular Commc'ns Equip. LLC v. LG Elecs.*, Inc. et al., Case No. 16-365, Docket No. 6 at 30-31 (E.D. Tex. Apr. 25, 2016) (each containing an identical provision).  By contrast, HMD Global has suggested a limit of **1000** pages here.

Plaintiff has provided no justification for rejecting HMD Global's limit of 1000 pages of source code.  Indeed, the litigations above involve the same asserted patent, but in some of those cases, CCE agreed to a presumptive limit of 200 pages.  Additionally, in those litigations, CCE also asserted other patents not asserted here, which should counsel lower, rather than higher, page limits.  While plaintiff points out that it has accused numerous products, that is often if not always true; in any event, the protective order provides that the parties may separately reach agreement for additional pages of prints, *see* Section 10(h), and that any party may move to amend it for good cause.  *See* Fed. Rule Civ. P. 26(b)(2)(B).  If there is good cause for more than 1,000 pages of source-code printouts, either the parties will later agree or the Court will order it; there is no reason to assume now that this will be true, and there is nothing in the record at this point justifying the unlimited number of prints Plaintiff now requests.  The Court should adopt HMD Global's proposal to Section 10(h).

### III.    DISPUTE NO. 2: ¶ 11 - Scope of Prosecution Bar

| Plaintiff's Proposal | Defendant's Proposal |
|---|---|
| "prosecution" as used in this paragraph does not include representing a party in a proceeding that challenges a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination, *inter partes* reexamination, post grant review, covered business method patent review, or *inter partes* review) | "prosecution" as used in this paragraph does not include representing a party in a proceeding that challenges a patent before a domestic or foreign agency (including, but not limited to, a reissue protest, *ex parte* reexamination ***without any claim amendment***, *inter partes* reexamination, post grant review, covered business method patent review, or *inter partes* review ***without any claim amendment***) |

   A.   Plaintiff's Arguments

   Plaintiff opposes Defendant's proposal that the prosecution bar applies to claim amendments in post-grant proceedings. Defendant bears the burden to show good cause for its proposal. *See* FED. R. CIV. P. 26(c); *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010) (placing the burden of showing good cause on the party "seeking to include in a protective order a provision effecting a patent prosecution bar"). Defendants have not met their burden.

   No post-grant proceedings are pending at the time of this submission. And this Court and other courts in this District routinely find that a risk of inadvertent disclosure in hypothetical post-grant proceedings is not substantial. *See Intellectual Ventures II LLC v. FedEx Corp., et al.*, Case No. 2:16-cv-980-JRG, at 3-4 (E.D. Tex. April 5, 2017) (collecting cases). As such, courts do not extend a prosecution bar to cover post-grant proceedings absent agreement because "involvement in post-grant proceedings does not raise the same risk of competitive misuse as does involvement in prosecution because in post-grant proceedings the PTO is assessing existing claims that may only be narrowed such that there is little risk that confidential information learned in litigation will be competitively used to draft claims that read on defendant's products." *Id.* at 3 (internal quotes

and cites omitted). Indeed, "defendant's concern that plaintiff's attorneys would have the opportunity to re-write patent claims that they were actively litigating ignored applicable patent law precluding amendment of claims beyond that which were disclosed in the original patent application." *Document Generation*, 2009 WL 1766096, at *3 (internal quotes and cites omitted). Moreover, "it is unlikely that plaintiff[] would narrow claims to capture a single defendant's products and risk losing protection against other possible infringers." *Smartflash LLC v. Apple Inc.*, No. 6:13CV447, 2014 WL 10986995, at *2 (E.D. Tex. May 12, 2014).

By contrast, the burden imposed on Plaintiff by Defendant's proposal is substantial. To exercise its right to amend claims in a post-grant proceeding, Plaintiff would be required to retain separate outside counsel. As such, two separate sets of outside counsel would require time to familiarize themselves with the same facts, imposing unnecessary costs for Plaintiff.

Further, the Parties agree to safeguards to prevent the use of DESIGNATED MATERIAL in any post grant proceeding. For example, the parties agree that "DESIGNATED MATERIAL[] shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose." Ex. A, ¶ 7. As such, the Parties agree that they cannot use DESIGNATED MATERIAL in post-grant proceedings.

B.  Defendant's Arguments

Plaintiff seeks to permit its counsel to participate in *inter partes* review and *ex parte* reexamination proceedings, including those that alter the scope of the claims through amendment. Plaintiff's proposal would permit its counsel to, after viewing highly confidential documentation showing the operation of the accused products, amend the scope of plaintiff's claims to target the accused products and functionality.  This is improper.  "The purpose of the prosecution bar is to prevent outside counsel from using, even inadvertently, confidential information obtained in the lawsuit for purposes outside the lawsuit (e.g. drafting claims during patent prosecution).  This is

true even if the result of the reexamination is narrower claim language." *Visto Corp. v. Seven Networks, Inc.*, No. 03-333, 2006 WL 3741891, at *7 (E.D. Tex. Dec. 19, 2006).  For this reason, this Court has recognized that, even absent participation in amending the claims, plaintiff's counsel's "assistance with IPR strategy while armed with confidential information could significantly prejudice" defendants. *Found. Med., Inc. v. Guardant Health, Inc.,* 2:16-cv-523, Dkt. No. 98, at 1 (E.D. Tex. June 5, 2017).

Plaintiff's proposed provisions are contrary to other protective orders this Court has entered in litigation in which CCE—represented by the same counsel here—is the patent plaintiff.  These orders specifically bar plaintiff's counsel from participating in I.P.R. or reexamination altogether. *See, e.g., Cellular Commc'ns Equip. LLC v. HTC Corp. et al.*, Case No. 16-363, Docket No. 11 at 14 (E.D. Tex. Apr. 25, 2016) ("any individual . . .  who receives access to 'HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY,' or HIGHLY CONFIDENTIAL — ATTORNEYS' EYES ONLY COMPUTER SOURCE CODE' information shall not be involved in the prosecution of patents . . . 'Prosecution' as used in this paragraph includes proceedings before a domestic or foreign agency or court in connection with a reissue protest, ex parte reexamination, or inter partes review.")

Notably, HMD Global has not sought to preclude plaintiff's counsel in this action from participating altogether in *inter partes* review or *ex parte* reexamination proceedings, as defendants often do.  Under HMD Global's language, plaintiff's counsel can view confidential information in this action and assist in *inter partes* review or *ex parte* reexamination proceedings that don't involve modification of claims, or can assist in *inter partes* review or *ex parte* reexamination proceedings that do involve modification of claims—but cannot do both.  Courts frequently choose this middle ground because "the act of drafting and amending claims presents the greatest risk of

8

misuse of the litigation opponent's confidential information, while the burden on the patentee of that less restrictive bar is significantly reduced, as compared to a wholesale bar against participation in the post-review grant proceedings in any way." *British Telecommunications PLC v. IAC/InterActiveCorp,* 330 F.R.D. 387, 397 (D. Del. 2019) (collecting cases).

The Court should adopt HMD Global's proposal to Section 11.

Dated: August 10, 2020

Respectfully submitted,

*/s/ Jerry D. Tice II*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice II
Texas Bar No. 24093263

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcc-law.com

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS
Equipment LLC**

*/s/ Deron R. Dacus (with permission)*
Deron R. Dacus
State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas, 75701
+1 (903) 705-1117
+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

Matthew S. Warren (California Bar No. 230565)
Jen Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-78@cases.warrenlex.com

*Attorneys for HMD Global Oy*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 10, 2020, the foregoing document was electronically filed in compliance with Local Rule CV-5(a) and was served on all counsel of record who have consented to electronic service, per Local Rule CV-5(a)(3).

*Jerry D. Tice II*
Jerry D. Tice II