FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| | § | Case No. 2:20-CV-00078-JRG |
| Plaintiff, | § § | JURY TRIAL DEMANDED |
| v. | § § | |
| HMD GLOBAL OY, | § § | |
| Defendant. | § § | |

## MOTION TO DISMISS BY DEFENDANT HMD GLOBAL OY
## FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# <u>TABLE OF CONTENTS</u>

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues to be Decided. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.   CCE Claims to Have Exclusive Rights in the Patent-in-Suit, ███████████
     ████████████████████████. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.   CCE's Complaint Makes Insufficient Allegations of Induced Infringement. . . . . . . . . 4

      1.   The '932 Patent Claims a Method That Is Invisible to the End User. . . . . . . . . . 4

      2.   CCE Alleges Direct Infringement That Is Invisible to the End User, and
         Admits That Users Can Send Text Messages Without Infringing the Claim. . . . 5

      3.   CCE's Allegations of Induced Infringement Allege Only That HMD Global
         Provides Information About Sending Text Messages, Not About Infringing. . . . 6

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.   CCE Lacks Constitutional and Prudential Standing to Bring This Action. . . . . . . . . . . 7

      A.   CCE Cannot Meet Its Burden to Show Exclusionary Rights
         in the '923 Patent. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      B.   At Minimum, CCE Cannot Proceed Without ████████████████. . . . 9

      C.   If the Court Does Not Dismiss CCE's Claims Outright, It
         Should Grant Jurisdictional Discovery and Otherwise Stay the Case. . . . . . . . 11

II.  CCE's Allegations of Induced Infringement Fail, Because It
     Fails to Allege That HMD Global Induced Any Infringement. . . . . . . . . . . . . . . . . . . 12

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## <u>TABLE OF AUTHORITIES</u>

<em>Cases</em>              **Pages**

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    No. 16-453, 2017 WL 3668597 (D. Del. Aug. 24, 2017) . . . . . . . . . . . . . . . . . . . . . . . 9

*Alfred E. Mann Found. For Sci. Research v. Cochlear Corp.*,
    604 F.3d 1354 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*Alpine View Co. v. Atlas Copco AB*,
    205 F.3d 208 (5th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*,
    No. 13-307, 2014 WL 10291478 (E.D. Tex. February 7, 2014) . . . . . . . . . . . . . . . . . .14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*AsymmetRx, Inc. v. Biocare Med., LLC*,
    582 F.3d 1314 (Fed. Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bankston v. Burch*,
    27 F.3d 164 (5th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

*Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp. et al.*,
    No. 17-430, 2019 WL 2210686 (E.D. Tex. July 22, 2019). . . . . . . . . . . . . . . . . . 11, 12

*Conley v. Gibson*,
    355 U.S. 41 (1957). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 14-752, 2015 WL 12850550 (E.D. Tex. July 15, 2015). . . . . . . . . . . . . . . . . . . . 12

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
    No. 14-752, 2015 WL 4910427 (E.D. Tex. Aug. 13, 2015). . . . . . . . . . . . 12, 13, 14, 15

*Graftech Int'l Holdings Inc. v. Gc&s Co., Ltd.*,
    No. 12-0720, 2014 WL 12591876 (E.D. Tex. Apr. 8, 2014). . . . . . . . . . . . . . . . . 11, 12

*Indep. Wireless Tel. Co. v. Radio Corp. of Am.*,
    269 U.S. 459 (1926). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*In re Bill of Lading*,
    681 F.3d 1323 (Fed. Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*James v. J2 Cloud Servs., LLC*,
    887 F.3d 1368 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
    572 U.S. 915 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lone Star Silicon Innovations LLC v. Nanya Tech. Corp.*,
    925 F.3d 1225 (Fed. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

*Luraco Health & Beauty, LLC v. Tran*,
    No. 19-51, 2020 WL 2747233 (E.D. Tex. May 27, 2020) . . . . . . . . . . . . . . . . . . . . . . . 7

*Morrow v. Microsoft Corp.*,
    499 F.3d 1332 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Motiva Patents, LLC v. Sony Corp.*,
    408 F. Supp. 3d 819 (E.D. Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*NTP, Inc. v. Research In Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Papasan v. Allain*,
    478 U.S. 265 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Paradise Creations, Inc. v. UV Sales, Inc.*,
    315 F.3d 1304 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Pfizer, Inc. v. Elan Pharm. Research Corp.*,
    812 F. Supp. 1352 (D. Del. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Prima Tek II, L.L.C. v. A-Roo Co.*,
    222 F.3d 1372  (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Quanta Comput., Inc. v. LG Elecs., Inc.*,
    553 U.S. 617 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ricoh Co. v. Quanta Comput. Inc.*,
    550 F.3d 1325 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Rozier v. Ford Motor Co.*,
    573 F.2d 1332 (5th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schreiber Foods, Inc. v. Beatrice Cheese, Inc.*,
    402 F.3d 1198 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*,
    170 F. Supp. 3d 928 (E.D. Tex. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
    427 F.3d 971 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 9

*U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*,
    No. 12-366, 2013 WL 8482270 (E.D. Tex. Mar. 6, 2013). . . . . . . . . . . . . . . . . . .14

*Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*,
    517 F.3d 235 (5th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Warth v. Seldin*,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Waterman v. Mackenzie*,
    138 U.S. 252 (1891). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*WiAV Sols. LLC, v. Motorola, Inc.*,
    631 F.3d 1257 (Fed. Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Zoltek Corp. v. United States*,
    672 F.3d 1309 (Fed. Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

*Statutes and Rules*                                    **Pages**

35 U.S.C. § 271(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . 13

35 U.S.C. § 281. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. Civ. P. 12(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11, 12

Fed. R. Civ. P. 12(h)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## **INTRODUCTION**

For two independent reasons, the Court should dismiss CCE's complaint.  First, CCE lacks standing under Rule 12(b)(1) and Rule 12(b)(6), because it lacks the ability to exclude HMD Global from using the patent before this Court.  A plaintiff lacks standing to sue when another party can grant a license, and ████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████ ██████████████████████████████████ ██████████████████.  Either way, CCE lacks standing to bring any claim of infringement regarding the '923 patent, including this one.

Second and separately, the Court should dismiss CCE's claims of induced infringement, because CCE has failed to allege that HMD Global induced infringement.  CCE asserts infringement claims regarding text messages, but admits that users of HMD Global's accused devices can and often do send text messages without infringing the '923 patent, and alleges that infringement is only *possible*—and even then, not inevitable—when users send text messages to special addresses called "premium short codes."  Nonetheless, when seeking to plead "facts plausibly showing" that HMD Global "specifically intended" users to infringe, as the law requires, CCE points only to instructions showing how to send text messages—which CCE admits need not infringe.  CCE cannot show specific intent to cause infringement through instructions that need not cause infringement.  CCE has thus failed to state a claim for induced infringement under Rule 12(b)(6), and the Court should dismiss that claim.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### STATEMENT OF ISSUES TO BE DECIDED

1. ███████████████████████████████████

█████████████████████████████████████████, does CCE have standing to

bring this suit?

2.    If CCE does have Constitutional standing to bring this suit, must it do so ███

████████████████████████████████████

3.    Does CCE fail to allege induced infringement because it admits that users of

accused products can send SMS messages without infringing, and alleges only that HMD Global

provides users with information about how to send SMS messages?

### BACKGROUND

**A.    CCE Claims to Have Exclusive Rights in the Patent-in-Suit.** 

This case concerns a single patent, U.S. Patent No. 7,218,923 ("the '923 patent").  In its

complaint, CCE claims to be "the owner of the '923 patent with all substantial rights to the '923

patent, including the exclusive right to enforce, sue, and recover damages for past and future

infringement."  Compl. ¶ 18.  The public record seems to match CCE's claims in its complaint:

effective December 21, 2012, Nokia Siemens Networks Oy assigned the '923 patent to Acacia

Research Group LLC (Declaration of Gabriel A. Peixoto ("Peixoto Decl."), Ex. A), and,

effective January 25, 2013, Acacia Research Group LLC purported to assign "the entire right,

title and interest in and to U.S. Patent No. 7218923."  Peixoto Decl., Ex. B. ████████████

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

On September 17, 2020, ███████████ ███████████ it had previously

disclosed as relevant under Patent Local Rule 3-2.  These ██████████ confirm that CCE lacks

standing to bring this action, because they show that ██████████████████████████

██████████████████████████████████████.  As just one

example, ██████████████████████████████ which encompassed

the '923 patent at issue in this case. ████████████████████████████

██████████████████████████████.  Peixoto Decl., Ex. C.

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

██████████████████████████████

The rest of the ██████████ further undermines CCE's standing in this action; it states that

████████████████████████████████████████

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████, despite the apparent assignment from Acacia

Research Group LLC to plaintiff CCE, █████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

**B.     CCE's Complaint Makes Insufficient Allegations of Induced Infringement**

**1.     The '932 Patent Claims a Method That Is Invisible to the End User**

U.S. Patent No. 7,218,923, entitled "Control of terminal applications in a network

environment," describes "a mechanism for controlling the rights and/or behavior of terminal

applications in a network environment." '923 patent at 1:9-10.  As the specification explains,

"the control mechanisms rest on a separate controlling entity residing in a terminal." *Id.* at

1:59-60.  "At least some of the outbound messages generated by an application in a terminal are

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

diverted to the controlling entity on their way from the application to the network." *Id.* at

1:60-63.  Upon receiving those messages:

> The controlling entity evaluates whether any changes are needed in the message or in the behavior of the application.  Based on the evaluation, the control entity then returns the message intact or in a modified form.  The controlling entity may even prohibit the sending of the message, if it detects that the application has no pertinent rights or that the application is not behaving, as it should.  The controlling entity resides in a tamper resistant area of the terminal, so that its operation cannot be affected by the user or other parties that are beyond the control of the network operator.  The outbound messages of an application are thus controlled by a controlling entity, which is totally independent of the applications residing in the terminal.  Due to its nature, the controlling entity is also termed the trusted agent in this context.

*Id.* at 1:63 to 2:11.  The complaint alleges infringement of claim 1, which reads:

> A method for controlling application programs in a communication terminal, the method comprising:
>
> sending messages from an application program towards a communication network, the application program residing in a communication terminal;
>
> diverting a message of the messages to a controlling entity residing in the communication terminal; and
>
> based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling being performed before the message is transmitted from the communication terminal to the communication network.

*Id.* at 9:10-23.

### 2.     CCE Alleges Direct Infringement That Is Invisible to the End User, and Admits That Users Can Send Text Messages Without Infringing the Claim

CCE's allegations of infringement require use of a "premium short code," which CCE

defines as "a short phone number that may have additional user fees" for receiving text

messages.  Docket No. 1-1 at 5.  Similar to the claims of the '923 patent, CCE's allegations of

direct infringement depend on events that are invisible to the end user.  Compl. ¶ 22; *see, e.g.,*

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Docket No. 1-1 at 4 ("The sendRawPdu() method performs various checks on the message it receives.  A message that passes the checks it is sent [sic] to the controlling entity via the checkDestination() method.").  CCE's infringement allegations admit that, even under its read of the claim and its assertions regarding the accused devices, a user can send text messages without infringing claim 1—by not sending to a "premium short code," for example, or by configuring the device "to ALWAYS or NEVER send premium short codes," in which case "the message is either sent or discarded, respectively."  *Id.* at 5.

### 3. CCE's Allegations of Induced Infringement Allege Only That HMD Global Provides Information About Sending Text Messages, Not About Infringing

CCE's complaint only briefly addresses its claim of induced infringement.  Compl. ¶¶ 24-29.  Regarding HMD Global's alleged inducement, CCE alleges that:

> On information and belief, despite having knowledge of the '923 patent, Defendant has specifically intended for persons who acquire and use the Accused Products, including Defendant's customers and end consumers, to acquire and/or use such devices in a way that infringes the '923 patent, including at least claim 1, and Defendant knew or should have known that its actions were inducing infringement.

> Defendant instructs and encourages users to use the Accused Products in a manner that infringes the '923 patent.  For example, Defendant's user guides for its phones provide end users detailed instructions on how to use the Android Messaging app in the Accused Products.  In addition, Defendant's website includes support articles with detailed instructions on how to use the Android Messaging app in the Accused Products.

*Id.* ¶¶ 26-27.  Tellingly, although CCE claims that HMD Global "instructs and encourages users to use the Accused Products in a manner that infringes the '923 patent," the only categories of documents it identifies are "user guides" and "support articles," each "with detailed instructions on how to use the Android Messaging app in the Accused Products."  *Id.* ¶ 27.  But as CCE itself admits in its complaint, even if everything else in its complaint is correct, it remains possible—even likely—"to use the Android Messaging app in the Accused Products" in a

– 6 –

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

non-infringing manner, by texting to recipients that are not "premium short codes" or turning off

"premium short codes" entirely.  *See supra* § B.2.

## ARGUMENT

## I.   CCE Lacks Constitutional and Prudential Standing to Bring This Action

Whatever rights CCE may have to the asserted patent, they are not exclusive and not

exclusionary.  CCE accordingly lacks both Constitutional and prudential standing to maintain

suit.  "Ascertaining standing in a patent-infringement case requires an inquiry into both Article

III standing and what has been called 'statutory standing.'"  *Luraco Health & Beauty, LLC v.*

*Tran*, No. 19-51, 2020 WL 2747233, at *3 (E.D. Tex. May 27, 2020).  "The party bringing the

action bears the burden of establishing that it has standing."  *Sicom Sys., Ltd. v. Agilent Techs.,*

*Inc.*, 427 F.3d 971, 976 (Fed. Cir. 2005) (citing *Pfizer, Inc. v. Elan Pharm. Research Corp.*, 812

F. Supp. 1352, 1356 (D. Del. 1993)).  "[O]bjections to standing are jurisdictional in nature and

can be raised at any time."  *Bankston v. Burch*, 27 F.3d 164, 167 (5th Cir. 1994) (citing Fed. R.

Civ. P. 12(h)(3)).  Where "a plaintiff lacking a sufficiently large portion of rights brings suit, that

plaintiff does not have standing to sue on his own, and the suit must be dismissed, or additional

holders of rights under the patent must be joined as parties to the suit, as appropriate given the

plaintiff's status as either an exclusive or a nonexclusive licensee."  *Alfred E. Mann Found. For*

*Sci. Research v. Cochlear Corp.*, 604 F.3d 1354, 1360 (Fed. Cir. 2010).

### A.   CCE Cannot Meet Its Burden to Show Exclusionary Rights in the '923 Patent

"A party must have Article III standing in order to participate in an enforcement action,"

*Luraco*, 2020 WL 2747233, at *8 (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).  "In the

area of patent infringement, this court has held that if the original plaintiff lacked Article III

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

initial standing, the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition of a party with standing." *Schreiber Foods, Inc. v. Beatrice Cheese, Inc*., 402 F.3d 1198, 1203 (Fed. Cir. 2005) (citing *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003)).  To meet its burden to show constitutional standing in a patent infringement suit, a plaintiff must "establish that it has an exclusionary right in a patent that, if violated by another, would cause the party holding the exclusionary right to suffer legal injury." *WiAV Sols. LLC, v. Motorola, Inc.*, 631 F.3d 1257, 1265 (Fed. Cir. 2010); *see also Paradise*, 315 F.3d at 1309.

Accordingly, "[t]here are three general categories of plaintiffs encountered when analyzing the constitutional standing issue in patent infringement suits:  those that can sue in their own name alone; those that can sue as long as the patent owner is joined in the suit; and those that cannot even participate as a party to an infringement suit." *Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).  "The first category includes plaintiffs that hold all legal rights to the patent as the patentee or assignee of all patent rights—the entire bundle of sticks." *Id.*  "The second category of plaintiffs hold exclusionary rights and interests created by the patent statutes, but not all substantial rights to the patent." *Id.* at 1340.  These plaintiffs are "often identified as exclusive licensees," but their exclusionary rights "'must be enforced through or in the name of the owner of the patent.'" *Id.* (quoting *Indep. Wireless Tel. Co. v. Radio Corp. of Am.*, 269 U.S. 459, 467, 469 (1926)).  "The third category of plaintiffs includes those that hold less than all substantial rights to the patent and lack exclusionary rights under the patent statutes to meet the injury in fact requirement." *Morrow*, 499 F.3d at 1340.  These plaintiffs "are not injured by a party that makes, uses, or sells the patented invention because

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

they do not hold the necessary exclusionary rights," and thus "[p]laintiffs in this category lack

constitutional standing." *Id.* at 1341 (citing *Sicom*, 427 F.3d at 976).

Here, CCE cannot establish that it has the right to exclude others from practicing the '923

patent, because ███████████████████████████████████████████████████

████████████████████████████████. Peixoto Decl., Ex. C; *see supra* § A.  A plaintiff ██████

████ "lacks standing to sue a party who has the ability to obtain such a license from another

party with the right to grant it." *WiAV Sols. LLC*, 631 F.3d at 1266; *see also, e.g.*, *Acceleration*

*Bay LLC v. Activision Blizzard, Inc.*, No. 16-453, 2017 WL 3668597, at *3 (D. Del. Aug. 24,

2017) ("Defendants had the ability to obtain a license from Sony at all relevant times because

Sony could have granted Defendants licenses as of late 2006.  Because of this, Plaintiff has not

shown that it had the right under the patents to exclude the Defendants from engaging in the

alleged infringing activity.  It therefore could not have been injured as a result.  Plaintiff lacks

standing to sue Defendants with respect to games covered by the Sony license.").

CCE has not established that it has an exclusionary right sufficient to meet the injury in

fact requirement, and accordingly lacks Constitutional standing.  *Morrow*, 499 F.3d at 1340.  As

a result, "the suit must be dismissed, and the jurisdictional defect cannot be cured by the addition

of a party with standing." *Schreiber*, 402 F.3d at 1203 (citing *Paradise*, 315 F.3d at 1309).

### B.     At Minimum, CCE Cannot Proceed Without ████████████████████████

Even if CCE could show exclusionary rights to the '923 patent, it cannot show that it

holds "all substantial rights" necessary to statutory standing under 35 U.S.C. § 281.  In

considering statutory standing, "to determine whether a party other than the original patentee has

established that it obtained all substantial rights in the patent," *Lone Star Silicon Innovations*

– 9 –

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*LLC v. Nanya Tech. Corp.*, 925 F.3d 1225, 1229 (Fed. Cir. 2019) (citing *AsymmetRx, Inc. v. Biocare Med., LLC*, 582 F.3d 1314, 1321 (Fed. Cir. 2009)), courts examine the "'totality'" of the circumstances around the transfer. *Lone Star*, 925 F.3d at 1229 (quoting *AsymmetRx*, 582 F.3d at 1321). "This inquiry depends on the substance of what was granted rather than formalities or magic words." *Lone Star*, 925 F.3d at 1229 (citing *Waterman v. Mackenzie*, 138 U.S. 252, 256 (1891)). "For example, in previous cases we have reviewed how an agreement affected who could use, assert, license, or transfer the covered patents." *Lone Star*, 925 F.3d at 1229 (citing *Alfred E. Mann*, 604 F.3d at 1359 (collecting cases)). "We have also considered whether the transferor retained reversionary rights in or ongoing control over the patents." *Lone Star*, 925 F.3d at 1229 (citing *Alfred E. Mann*, 604 F.3d at 1360-61).

Regardless of the "magic words" CCE and its parent Acacia Research Group LLC purported to use in the assignment,

. Peixoto Decl., Ex. C; *see supra* § A.

Peixoto Decl., Ex. C at CCE_HMD_001026.

– 10 –

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

████████████████████████████████████████████████████████████

████████████████████████   CCE's rights to assert the '923 amount, under the totality of the

circumstances, to little more than a ""hunting license," solely for the purpose of litigation."  *Lone

Star*, 925 F.3d at 1233 (quoting *Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1381 (Fed.

Cir. 2000)).  The Court should accordingly dismiss this action under Rule 12(b)(6) for failure to

join ████ without which CCE lacks statutory standing.  "[M]otions to dismiss based on

'statutory standing' defects are properly brought under Rule 12(b)(6) rather than Rule 12(b)(1) in

recognition of the fact that such defects are not jurisdictional."  *Id*. at 1235 (citations omitted).

### C.     If the Court Does Not Dismiss CCE's Claims Outright, It Should Grant Jurisdictional Discovery and Otherwise Stay the Case

If the Court does not dismiss CCE's claims outright, it should grant jurisdictional

discovery to determine whether CCE has standing to bring this action.  To the extent that the

Court finds any "evidentiary gaps" in the information CCE has provided thus far, additional

discovery into those areas "will benefit this Court."  *Graftech Int'l Holdings Inc. v. Gc&s Co.,

Ltd.*, No. 12-720, 2014 WL 12591876, at *7 (E.D. Tex. Apr. 8, 2014).  "The decision to grant

jurisdictional discovery lies within the Court's discretion."  *Id.* (citing *Walk Haydel & Assocs.,

Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008)).  "Particularly because the

Rules favor broad discovery, jurisdictional discovery should only be denied where it is

*impossible* that the discovery 'could . . . add[] any significant facts' that might bear on the

jurisdictional determination."  *Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.*, No. 17-430, 2019

WL 2210686, at *3 (E.D. Tex. May 22, 2019) (alteration and emphasis in original) (quoting

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000)) .  "Since evidence of

jurisdictional facts is often largely or wholly in the possession of an adverse party, broad

– 11 –

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

jurisdictional discovery also ensures that jurisdictional disputes will be 'fully and fairly' presented and decided." *Blitzsafe*, 2019 WL 2210686, at *3 (quoting *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1345 (5th Cir. 1978)).  Because jurisdiction is a threshold issue which will prevent the case from proceeding, the Court should otherwise stay the case pending resolution of the jurisdictional issue. *See, e.g.*, *Graftech*, 2014 WL 12591876, at *8 (ordering "discovery on the sole issue" of jurisdiction and staying all "other pending deadlines").

## II.    CCE's Allegations of Induced Infringement Fail, Because It Fails to Allege That HMD Global Induced Any Infringement

"Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint if the complaint 'fail[s] to state a claim upon which relief can be granted.'" *Script Sec. Sols. L.L.C. v. Amazon.com, Inc.*, 170 F. Supp. 3d 928, 935 (E.D. Tex. 2016) (quoting Fed. R. Civ. P. 12(b)(6)). To survive a motion to dismiss, a complaint must allege sufficient factual matter "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555  (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957) and citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "It is well-settled that '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, No. 14-752, 2015 WL 12850550, at *4 (E.D. Tex. July 15, 2015), *report and recommendation adopted*, 2015 WL 4910427 (E.D. Texas Aug. 13, 2015) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Although inducement claims are sometimes ancillary to patent cases, they are central to

CCE's claimed recovery here, because the only claims CCE asserts are method claims.  "[D]irect

infringement under 35 U.S.C. § 271(a) requires performance of all steps of a method patent to be

attributable to a single party," *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 915

(2014), and thus "a patented method may not be sold in the same way as an article or device."

*Quanta Comput., Inc. v. LG Elecs., Inc.*, 553 U.S. 617, 628 (2008).  As a result, "a party that

sells or offers to sell software containing instructions to perform a patented method does not

infringe the patent under § 271(a)."  *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1335

(Fed. Cir. 2008).  Importation of software also cannot infringe a method claim.  *See NTP, Inc. v.

Research In Motion*, Ltd., 418 F.3d 1282, 1321 (Fed. Cir. 2005) ("for the same reasons that the

jury could not have found that RIM infringed the method claims under the sale or offer for sale

prongs, it could not have found infringement by importation"), abrogated on other grounds,

*Zoltek Corp. v. United State*s, 672 F.3d 1309, 1323 (Fed. Cir. 2012) (en banc).  Accordingly,

CCE's claims of induced infringement are effectively its primary claims.

Despite their primacy, CCE fails to plead properly its claims for induced infringement.

For a claim of induced infringement to survive a motion to dismiss, the complaint must:

"1) adequately plead direct infringement by defendant's customers; 2) contain facts plausibly

showing that defendant specifically intended for its customers to infringe the asserted patents;

and 3) contain facts plausibly showing that defendant knew that the customer's acts constituted

infringement."  *Core Wireless*, 2015 WL 4910427, at *3 (citing *In re Bill of Lading*, 681 F.3d

1323, 1331 (Fed. Cir. 2012)).  Under this test, "generic allegations that an alleged infringer

provides instructional materials along with the accused products, without more, are insufficient

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

to create a reasonable inference of specific intent for the purposes of an induced infringement claim." *Core Wireless*, 2015 WL 4910427, at *4 (citing *U.S. Ethernet Innovations, LLC v. Cirrus Logic, Inc.*, No. 12-366, 2013 WL 8482270, at *4 (E.D. Tex. Mar. 6, 2013); *Am. Vehicular Scis. LLC v. Mercedes-Benz U.S. Int'l, Inc.*, No. 13-307, 2014 WL 10291478, at *7 (E.D. Tex. February 7, 2014)).  Applying this test, *Core Wireless* noted that the plaintiff's complaint "allege[d] that Apple provides instructive materials and information concerning operation and use of the accused products," but "fail[ed] to allege any facts identifying, even at a basic level, which functionalities of the accused products are at issue, or how the instructions direct customers to use those products in an infringing manner," and thus the "complaint fail[ed] to provide Apple with adequate notice as to its induced infringement allegations." *Core Wireless*, 2015 WL 4910427, at *4.

Another, more recent case from this Court further shows how CCE's inducement claims fail. *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819 (E.D. Tex. 2019).  *Motiva* explained that, "[i]n this context, *Twombly* is met when a plaintiff identifies a specific class of information that it expects discovery will reveal." *Id.* at 831 (citing *James v. J2 Cloud Servs., LLC*, 887 F.3d 1368, 1372 (Fed. Cir. 2018)).  *Motiva* noted that the plaintiff there had identified "classes of information relevant to induced infringement" including "instruction manuals" and "communications" that, the plaintiff alleged, directed customers to "to use the Accused Vive Products in an infringing manner." *Id.*  Critically, in *Motiva*, the plaintiff alleged that the software in the accused products had no substantial non-infringing use, *see, e.g., id.* at 826, 829, 835—and so, according to the plaintiff's allegations, "allegations the Court must take as true" at the pleading stage, *any* instruction manuals or communications about the product would

– 14 –

*necessarily* direct the recipient to infringe. *Id.* at 831-32.  This case is quite different:  here, CCE admits that infringement (should it happen) is invisible to the end user, and that the accused devices have an infinity of non-infringing uses, including sending text messages to any number other than a premium short code, as well as sending text messages with premium short codes turned off. *See supra* § B.2.  But on inducement, CCE can allege only that HMD Global's "user guides" and "support articles" provide "detailed instructions on how to use the Android Messaging app in the Accused Products"—without explaining how HMD Global can teach the user to infringe in a way the user cannot see, and without mentioning premium short codes, presumably because it has no Rule 11 basis to do so.  Compl. ¶ 27; *see supra* § B.2.  CCE's own complaint thus admits that it has *not* "alleged that those classes of evidence contain instructions on how to infringe," and thus that it has *not* made "a plausible showing that discovery will reveal evidence" to support its inducement claims.  *Motiva*, 408 F. Supp. 3d at 831.  CCE's claims thus fail the test of *Motiva* as well as *Core Wireless*.

## CONCLUSION

For the foregoing reasons, HMD Global respectfully requests that the Court dismiss the complaint in this action, Docket No. 1, in its entirety, or in the alternative stay the case while HMD Global conducts jurisdictional discovery into CCE's standing to advance its claims.


Date: September 21, 2020                    Respectfully submitted,

                                            */s/ Deron R. Dacus*
                                            Deron R. Dacus
                                            State Bar No. 00790553
                                            **The Dacus Firm, P.C.**
                                            821 ESE Loop 323, Suite 430
                                            Tyler, Texas, 75701
                                            +1 (903) 705-1117

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

Matthew S. Warren (California Bar No. 230565)
Jen Kash (California Bar No. 203679)
Patrick Fitch (California Bar No. 321493)
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-78@cases.warrenlex.com

*Attorneys for HMD Global Oy*

### CERTIFICATE OF SERVICE

I certify that on September 21, 2020, I filed the foregoing document under Local Rule

CV-5(a)(7) and served the foregoing document on plaintiff's attorneys of record through the

Court's electronic filing system.

*/s/ Deron R. Dacus*
Deron R. Dacus

– 16 –