# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:20-CV-0078-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| HMD GLOBAL OY, | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S RESPONSE TO NON-PARTY APPLE INC.'S
MOTION FOR SUPPLEMENTAL PROTECTIVE ORDER**

Plaintiff Cellular Communications Equipment LLC ("CCE") files this response in opposition to non-party Apple Inc.'s ("Apple") Motion for a Supplemental Protective Order (Dkt. No. 45) (the "Motion").

███████████████████████████████

## TABLE OF CONTENTS

I. INTRODUCTION ................................. **ERROR! BOOKMARK NOT DEFINED.**

II. BACKGROUND ................................... **ERROR! BOOKMARK NOT DEFINED.**

III. ARGUMENTS AND AUTHORITY ..... **ERROR! BOOKMARK NOT DEFINED.**

   A. The Protective Order and Supplemental Protective Order Provide Ample Protections for the Agreement. .............................**Error! Bookmark not defined.**

   B. The Agreement Concedes that the Protections of the Protective Order and Supplemental Protective Order Are Sufficient. .....**Error! Bookmark not defined.**

   C. Apple Fails to Identify a "Clearly Defined and Serious Injury" and Therefore Cannot Carry its Burden. ....................................................................................... 6

   D. The Additional Protections Sought by Apple Are Unreasonably Burdensome and Not Narrowly Tailored to the Alleged Needs ........**Error! Bookmark not defined.**

IV. CONCLUSION ..................................... **ERROR! BOOKMARK NOT DEFINED.**

# TABLE OF AUTHORITIES

**Cases**

*Elbit Systems of America, LLC v. Thales Visionix, Inc.*,
   881 F.3d 1354 (Fed. Cir. 2018) .................................................................................... 6

*Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*,
   876 F.3d 690 (5th Cir. 2017) ....................................................................................... 4

*Glenmede Trust Co v. Thompson*,
   56 F.3d 476 (3d Cir. 1995) .......................................................................................... 9

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
   849 F.3d 1034 (Fed. Cir. 2017) .................................................................................... 6

*Implicit, LLC v. Huawei Technologies USA, Inc.*,
   2018 WL 1169137 (E.D. Tex. 2018) ........................................................................... 6

*Koch Refining Co. v. Jennifer L. Boudreau MV*,
   85 F.3d 1178 (5th Cir. 2013) ....................................................................................... 8

*Merit Indus., Inc. v. Feuer*,
   201 F.R.D. 382 (E.D. Pa. 2001) ................................................................................... 4

*Van Stry v. McCrea*,
   2019 WL 8017842 (E.D. Tex. 2019) ................................................................. 3, 4, 6, 9

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## I.   INTRODUCTION

Non-party Apple seeks a protective order that would give it the ability to object to disclosure of a CCE agreement to CCE's expert in this matter. This extraordinary request is not justified by the facts. Apple's motion is devoid of any factual allegations from individuals with personal knowledge, and generic attorney argument cannot demonstrate the good cause required for a protective order. As a non-party, Apple should not be given the practical ability to "veto" CCE's choice of expert—particularly when, as here, Apple provides no support for its claims that the Court's Protective Order and Supplemental Protective Order are insufficient.



▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ While Apple correctly notes that the agreement ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Apple provides no explanation of exactly what Apple information in the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ agreement is so sensitive as to warrant a separate protective order. Instead, Apple's motion merely contains unsupported attorney pronouncements regarding the CCE-Apple ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

- "The terms contained in the Apple Confidential Information are among Apple's most highly sensitive and protected business information, and Apple would be seriously harmed if patent owners, potential licensors, and Apple competitors had access to this information."

- "Apple expends significant time and resources to maintain the confidentiality and nonpublic nature of the Apple Confidential Information."

- "Even within Apple, the Apple Confidential Information is not disseminated or accessible except to a small group of Apple employees who maintain its confidentiality."

Dkt. No. 45 at 2-3. These sweeping statements contain more hyperbole than facts. There is no explanation of the "serious harm" that would supposedly befall Apple, much less a showing that such harm would result from not having a separate protective order, especially given the many extensive protections of the parties' current Agreed Protective Order.

██████████████████████████████████████

Indeed, Apple's statements are so generic that it used the exact same language argue that a third-party protective order was necessary for master purchase agreements between Apple and its memory component suppliers. *See, e.g.*, *Elm 3DS Innovations LLC v. Micron Technology Inc. et al.* Case No. 1:14-cv-01431-LPS (D. Del. 2020), Dkt. No. 282 (attached as Ex. 1). Regurgitating the same attorney argument for any information Apple deems confidential does not satisfy the good cause standard. To the extent that the CCE-Apple ███████ actually did require additional protections, surely Apple would be able to provide specific facts to support its claim. Yet Apple provides none.

Absent such a factual showing by Apple, the Court's Protective Orders already provide these third parties protection over confidential documents—the same protection afforded the parties' confidential documents produced in these cases. Indeed, these protections have been adequate for Apple's peers in the cellular industry. Under the existing Protective Orders, CCE produced agreements with ███████████████████████████████████ ███████████████████████████████ Apple has not shown why its agreement—███████████████████ requires special protection.

Forcing CCE to agree to different protections demanded by different third parties will lead to confusion that will make it difficult for CCE to meet each third parties' demands. As such, it is preferable to minimize the number of Protective Orders in a case.

## II. BACKGROUND

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

2



*Id.* at CCE_HMD_001446. Apple now seeks to modify these terms by seeking additional protections.

Pursuant to these provisions, on August 18, 2020, CCE provided notice to Apple's General Counsel and Director of Patents informing Apple of CCE's intent to disclose the Agreement. On August 20, Apple requested that CCE limit disclosure to outside counsel only; CCE agreed to designate the Agreement OUTSIDE ATTORNEY'S EYES ONLY, pursuant to the Supplemental Protective Order. Ex. 3, Emails between CCE and Apple, at p. 4. Nevertheless, Apple maintained its objection. However, Apple allowed CCE to produce the Agreement pursuant to P. R. 2-2, limiting disclosure to outside counsel of record. Although August 28 marked the end of the ten-day notice period, CCE spent over a month trying to work with Apple to resolve the objections. But Apple refused to withdraw any objections and failed to articulate a factual basis for the additional protections it now seeks.

### III.   ARGUMENTS AND AUTHORITY

In order to enter or modify a protective order, the party seeking additional protections "bears the burden of establishing good cause for a protective order and, in doing so, showing a specific need for protection." *Van Stry v. McCrea*, 2019 WL 8017842, *1 (E.D. Tex. 2019).

"'Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause showing.'" *Id*. (collecting cases and quoting *Merit Indus., Inc. v. Feuer*, 201 F.R.D. 382, 384–85 (E.D. Pa. 2001)).

Since Apple is the party that seeks additional protections beyond the existing Protective Order and Stipulated Supplemental Protective Order, it is Apple's burden to show good cause for why additional protections are necessary. *Id*. at *1. To satisfy its burden of showing a clearly defined and serious injury, Apple may not rely on vague, conclusory assertions. *Id*. ("conclusory assertion[s]" are "not the kind of specific showing of good cause that is necessary to justify the entry of a protective order." *See also Equal Employment Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017) ("The movant bears the burden of showing that a protective order is necessary, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.") (internal quotes omitted)). Nevertheless, Apple's Motion makes vague, conclusory assertions that it needs additional protections but does not make any specific claims as to how it would be harmed by CCE producing the Agreement as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY under the vast protections of the Stipulated Supplemental Protective Order. This does not amount to a showing of good cause necessary to enter additional protections in this case.

### A. The Protective Order and Supplemental Protective Order Provide Ample Protections for the Agreement.

Producing the Agreement under the Stipulated Supplemental Protective Order provides numerous protections. First, the Agreement may only be disclosed to a narrow list of explicitly defined individuals. Dkt. No. 31, ¶ 5(a-b) and (e-g); Dkt. No. 35 (limiting disclosure only to outside counsel of record and counsel's employees assisting with the litigation, limited outside consultants or experts who sign a document agreeing to comply with the Protective Order,

4

independent litigation support services (e.g., court reporters, interpreters) assisting with the litigation, and the Court). None of these individuals are competitors of Apple and are therefore unlikely to pose a threat of competitive harm to Apple. Moreover, the Court ordered the Parties to "safeguard all such documents, information and material to protect against disclosure to any unauthorized persons or entities." *Id*. Additionally, the Protective Order requires that confidential material (such as the Agreement) "shall be filed under seal." *Id*. at ¶ 16. Experts receiving protected material must execute an undertaking to comply with the Protective Order and shall be informed by counsel of the conditions of the order. *Id*. at ¶ 19. Further, confidential material, shall be returned or destroyed at the conclusion of this matter. *Id*. at ¶ 22. Numerous parties (such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ found these protections to sufficient. Because Apple provides no specific circumstances in which these protections are deficient, the Court should deny the Motion.

    **B. The Agreement Concedes that the Protections of the Protective Order and Supplemental Protective Order Are Sufficient.**

The Agreement ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



*Id*. at CCE_HMD_001446 (emphasis added). Thus, the Agreement, which was negotiated by sophisticated parties, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CCE has designated the Agreement as HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY, which subjects it to the Protective Order, and thus the

5

Agreement can be produced. As such, the terms of the Agreement demonstrate that the heightened protections Apple seeks are unwarranted.

### C. Apple Fails to Identify a "Clearly Defined and Serious Injury" and Therefore Cannot Carry its Burden.

Apple bears the burden of showing a specific need for protection. *See Van Stry*, 2019 WL 8017842 at *1. Instead, Apple makes vague, sweeping assertions that the Agreement is so highly confidential and sensitive that it must be afforded additional protections:

> The terms contained in the Apple Confidential Information are among Apple's most highly sensitive and protected business information, and Apple would be seriously harmed if patent owners, potential licensors, and Apple competitors had access to this information.

Apple's Motion for Supplemental Protective Order, Dkt. No. 45, at 2-3.

However, Apple provides no evidentiary support for this claim – not even a declaration from an Apple employee asserting the sensitive nature of the Agreement. Without any evidence, this claim is nothing more than attorney argument and therefore should be given no weight when assessing the alleged harm Apple might suffer if the Agreement is designated HIGHLY CONFIDENTIAL – OUTSIDE ATTORNEYS' EYES ONLY. *See Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1043 (Fed. Cir. 2017) ("Attorney argument is not evidence."); *see also Implicit, LLC v. Huawei Technologies USA, Inc.*, 2018 WL 1169137 at *14 n. 13 (E.D. Tex. 2018) (same); *Elbit Systems of America, LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1359 (Fed. Cir. 2018) (same). Indeed, Apple's claim is so generic that it used the same language to describe master purchase agreements in the *Elm 3DS* matter. *Compare* Dkt. No. 45 at p. 2 ("The terms contained in the Apple Confidential Information are among Apple's most highly sensitive and protected business information, and Apple would be seriously harmed if patent owners, potential licensors, and Apple competitors had access to this information.") with Ex. 1 at p. 1 ("All of the

6

Apple Confidential Information is among Apple's most highly sensitive and protected business information, and Apple would be seriously harmed if its competitors had access to this information."). To warrant the special protection it seeks, Apple must do more than recite the same, boilerplate allegations any time confidential materials will be produced.

### D. The Additional Protections Sought by Apple Are Unreasonably Burdensome and Not Narrowly Tailored to the Alleged Needs

Apple requests three additional safeguards not contemplated by the Agreement:

1. Exhibit List: Apple requests that it be notified if the Agreement or other, unspecified "Apple Confidential Information" appears on any party's trial exhibit list.

2. Seal the Courtroom When Using the Agreement: Apple requests that the parties use "reasonable efforts to seal the courtroom" when the Agreement is used in Court and redact any transcripts involving the Agreement or, alternatively, provide notice to Apple so it may intervene.

3. Rights as a Producing Party: Apple requests that it have "notice, disclosure, and consent rights" regarding any expert or consultant who may see the Agreement.

*See* Dkt. No. 45-1, at 1-2.

First, Apple seeks notice of any party's trial exhibit list, should the Agreement appear on it. Even if an exhibit list somehow included Apple confidential information, CCE would be required to properly designate the list and the Parties would be required to treat the list under the protective orders. As discussed in the next paragraph, the Parties may not publicly disclose Apple confidential information in open Court. Thus, there is no "clearly defined injury" that would be prevented by this additional protection. Moreover, this request requires unreasonable additional effort by the parties in this case. The additional step of disclosing an exhibit list to Apple is by definition more burdensome than the status quo, and improper given that it is not designed to provide any additional safeguards.

7

Second, Apple seeks an additional order requiring the parties to seal the courtroom or provide Apple notice, should the Agreement be discussed before the Court. The request is superfluous: the Protective Order already supplies the mechanisms for sealing the court. The Protective Order limits who may receive confidential information. Protective Order, Dkt. No. 31 at 3-4. And the Court has already ordered the parties to safeguard confidential information to protect against disclosure to any unauthorized persons or entities. Allowing the Agreement to be disclosed in open court would violate the terms of the Protective Order. Apple knows this: it has reviewed the protective orders, and CCE has informed Apple that it will make reasonable efforts to seal the courtroom to protect all confidential information in this case, including the Agreement. Ex. 3 at p. 1. This request is unnecessary.

Third, to support its request for new protections regarding experts, Apple provides only the unfounded, nebulous assertion that disclosure to an expert "may pose a conflict." Motion at 4. Typically, an expert witness has a conflict of interest when he receives confidential information from a party and then switches sides such that the information can be used against that party. *See Koch Refining Co. v. Jennifer L. Boudreau MV*, 85 F.3d 1178, 1181 (5th Cir. 2013). Here, since Apple is not a party to this suit, it is entirely unclear how a conflict could arise that would need Apple's intervention to resolve. Apple does not have a "side" in this case and fails to articulate any "conflict" it envisions. Further, it is unclear how an expert testifying in this case could even have a conflict of interest regarding the Agreement or any other Apple information. There is no reason to believe that an expert testifying on Apple information could use that information against either party; that expert certainly could not use the information against Apple in this case, as Apple is not a party to this litigation.

Further, Apple asserts that its concern is "well-founded" because of a previous protective order violation involving source code in a wholly unrelated matter. *See* Motion at 4. This example is inapplicable to the present dispute. Protective Orders need to be respected. But the fact that a Protective Order violation occurred in an unrelated matter does not show that a more restrictive Protective Order is necessary here. An expert violating a protective order in an unrelated case is not an impetus for allowing third parties to influence expert designation in this litigation. Apple makes no effort to show how the alleged misuse of *source code* in an unrelated matter warrants the protections it now seeks.

Remarkably, this protective order violation from an unrelated matter is the only example Apple provides to show alleged harm. Because the alleged harm does not apply to the issue at hand, it does not clearly define a serious injury that Apple would suffer as a result of disclosure. Absent a clearly defined and serious injury, good cause does not exist. *See Van Stry*, 2019 WL 8017842 at *1; *Glenmede Trust Co v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) ("Good cause is established when it is specifically demonstrated that disclosure will cause a clearly defined and serious injury. Broad allegations of harm, unsubstantiated by specific examples, however, will not suffice.") (internal quotes omitted).

Apple's request is unreasonable not only for the reasons discussed above, but also because it would set a precedent for multiple other non-parties with similar disclosed settlement agreements to also seek individualized protections from the Court. CCE has disclosed over twenty other agreements among fifteen other entities in this case under the protection of the Protective Order, many with confidentiality terms similar to the Agreement. Allowing non-parties like Apple to seek protections beyond the scope of the terms of their agreements and the Protective Order would unreasonably burden the parties and the Court. For example, if both

9

parties were required to seek third-party input regarding each expert, it would require the coordination of fifteen different entities. This would likely lead to unnecessary disputes and waste both the parties' and the Court's time and resources.

## IV. CONCLUSION

For the foregoing reasons, Apple's Motion for a Supplemental Protective order should be denied.

Dated: October 16, 2020

Respectfully submitted,

By: /s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043
Jerry D. Tice II
Texas Bar No. 24093263
Hunter S. Palmer
Texas Bar No. 24080748

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com
jtice@bcpc-law.com
hpalmer@bcpc-law.com

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS EQUIPMENT LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 16, 2020.

By: */s/ Hunter S. Palmer*
Hunter. S. Palmer