~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| Plaintiff, | § | Case No. 2:20-CV-00078-JRG |
| v. | § § § | JURY TRIAL DEMANDED |
| HMD GLOBAL OY, | § § | |
| Defendant. | § § § | |

**OPPOSITION OF HMD GLOBAL TO CCE'S
<u>MOTION TO ENFORCE THE PROTECTIVE ORDER</u>**

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

# TABLE OF CONTENTS

**Pages**

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.      CCE's Complaint and the Protective Order Governing Confidentiality . . . . . . . . . . . . 1

B.      ███████████████████████████ . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.      HMD Global's Motion to Dismiss for Lack of Standing . . . . . . . . . . . . . . . . . . . . . . . . 3

D.      The Starboard Security Interest May Further Undermine CCE's Standing . . . . . . . . . 3

E.      HMD Global Subpoenas CCE's Parent ARC at its Home Office in California . . . . . . . 4

F.      HMD Global Meets and Confers, and Triggers Local Rule 37-2 . . . . . . . . . . . . . . . . . 4

G.      ARC and CCE Make Last-Minute Claims Regarding the Protective Order . . . . . . . . . 5

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.      This Court's Default Protective Order Allows Ancillary Actions, Mandamus
        Petitions, Transfers, and Appeals, as Required by Governing Law . . . . . . . . . . . . . . . . 6

        A.      CCE's Radical Reimagination of This Court's Default Protective Order
                Finds No Support in the Order or the Law, and Would Upend Decades
                of Practice by Hundreds of Parties Before This Court . . . . . . . . . . . . . . . . . . . . 6

        B.      If This Court Allows CCE's Reimagination of Its Form Protective Order,
                The Resulting Protective Order Would Violate Parties' Substantive Rights . . . . 9

II.     CCE's Remaining Arguments Are Irrelevant to the Issue Before This Court . . . . . . . . 11

        A.      There is Nothing Sinister About the Central District of California . . . . . . . . . . 11

        B.      Only Dismissal of CCE's Complaint Will Moot HMD Global's Subpoena . . . . 12

        C.      Parties Cannot Stipulate to Federal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.      CCE Cannot Speak for Non-Parties ███ and ███, and Its Purported
                Concerns on Their Behalf Are Irrelevant to Its Motion . . . . . . . . . . . . . . . . . . . 15

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

*Cases*      **Pages**

*Abraxis Bioscience, Inc. v. Navinta LLC,*
    625 F.3d 1359, 1363 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Acacia Research Corp v. Slingshot Technologies, LLC,*
    No. 19-1385 (C.D. Cal. July 15, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Agincourt Gaming, LLC v. Zynga, Inc.,*
    No. 14-0708 WL 4079555 (D. Nev. Aug. 15, 2014) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Blitzsafe Tex. LLC v. Mitsubishi Elec. Corp.,*
    No. 17-430, 2019 WL 2210686 (E.D. Tex. May 22, 2019) . . . . . . . . . . . . . . . . . . . 13

*Burnett v. Wahlburgers Franchising LLC,*
    No. 16-4602, 2018 WL 10466827 (E.D.N.Y. Oct. 4, 2018) . . . . . . . . . . . . . . . . . . . 14

*Cellular Commc'n Equip., LLC v. HTC Corp.,*
    No. 13-507 (E.D. Tex. Dec. 10, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cellular Commc'n Equip., LLC v. HTC Corp.,*
    No. 15-2373 (S.D. Cal. Oct 29, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Castelan-Gutierrez v. Bodega Latina Corp.,*
    No. 17-1877, 2018 WL 4050493 (D. Nev. Mar. 30, 2018) . . . . . . . . . . . . . . . . . . . 13

*Dell Inc. v. Acacia Research Group LLC,*
    No. 15-25 (C.D. Cal. Oct. 2, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Google LLC v. Fortress Investment Group LLC,*
    No. 20-132 (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Subpoenas to Intel Corporation,*
    No. 17-80099 (N.D. Cal. July 28, 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Levitt-Stein v. Citigroup, Inc.,*
    284 Fed. App'x 114, 117 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555, 560-61 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.,*
    No. 15-24363, 2018 WL 1456614  (S.D. Fla. Mar. 23, 2018) . . . . . . . . . . . . . . . . . 9

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

*Mobile Telecomm. Tech. LLC v. Sprint Nextel Corp.,*
    No. 15-183 (E.D. Tex. Aug. 25, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mobile Telecomm. Tech. v. Samsung Electr. Co., Ltd.,*
    No. 16-80012 (N.D. Cal. Jan. 14, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Negotiated Data Solutions, LLC v. Dell, Inc.,*
    No. 06-528 (E.D. Texas, Jan. 23, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Negotiated Data Solutions, LLC v. Dell, Inc.,*
    No. 09-80012 (N.D. Cal. Feb. 3, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Nexus Display Tech. LLC v. Dell Inc.,*
    No. 14-762, Docket No. 57 (E.D. Texas) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*PerDiem Co, LLC v. IndusTrack LLC,*
    No. 15-726, 2016 WL 653424 (E.D. Tex. Oct. 18, 2016) . . . . . . . . . . . . . . . . . . . . 14

*Schron v. Troutman Sanders LLP,*
    20 N.Y.3d 430, 436 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*St. Jude Medical S.C. Inc. v. Janssen-Counotte,*
    No. 14-877 (W.D. Texas, Nov. 20, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*St. Jude Medical S.C. Inc. v. Janssen-Counotte,*
    No. 15-99 (D. Or. Feb. 20, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Tinkers & Chance v. Leapfrog Enter., Inc.,*
    No. 05-349, 2006 WL 462601 (E.D. Tex. Feb. 23, 2006) . . . . . . . . . . . . . . . . . . . . 15

*TQ Delta LLC v. ZyXEL Communications Inc.,*
    No. 13-2013 (D. Del. June 7, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Uniloc USA, Inc. v. Apple Inc.,*
    No. 18-358 (N.D. Cal. Oct. 22, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Uniloc 2017 LLC v. Google LLC,,*
    No. 18-49 (E.D. Texas) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Wapp Tech Limited Partnership v. Seattle SpinCo Inc.,*
    No. 18-496, 2020 WL 3791520 (E.D. Tex. July 7, 2020) . . . . . . . . . . . . . . . . . . . . 10

*WiAV Sols. LLC, v. Motorola, Inc.,*
    631 F.3d 1257 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## TABLE OF AUTHORITIES

*Statutes and Rules*                                            **Pages**

C.D. Cal. Loc. R. 37-2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 10

C.D. Cal. Loc. R. 37-2.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

C.D. Cal. Loc. R. 79-5.2.2(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

C.D. Cal. Loc. R. 79-5.2.2(b)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. App. P. 3(a)(1)(A), 10(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

Fed. R. Civ. P. 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Fed. R. Civ. P. 45(c)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 14

Fed. R. Civ. P. 45(d)(2)(B)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 14

Fed. R. Civ. P. 45(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

28 U.S.C. § 84 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

## INTRODUCTION

CCE's motion presents a simple question with a sweeping impact:  does the anodyne language of this Court's form protective order prohibit transmission of *any* confidential information under *any* version of that order to *any* other court for *any* other purpose?  Until now, hundreds of parties before this Court have agreed that it does not.  Seeking to overturn decades of precedent, CCE now argues that this Court's form order blocks *any and all* disclosures of confidential information to *any other court*, including but not limited to ancillary actions to enforce third-party subpoenas, mandamus petitions, transferred actions, and appeals.  CCE's radical reimagination of this Court's form order would block all of these and anything else that involves disclosure of confidential information to other courts.  This perverse result cannot be what this Court intended in its form, and would violate parties' substantive legal rights if it were.

Everything else in CCE's motion is chaff, irrelevancies intended to distract this Court from the vast consequences of CCE's reimagining of the form order.  CCE impugns the Central District of California, its parent ARC's home court, but its slurs against that court are false.  CCE tries to reargue HMD Global's motion to dismiss for lack of standing, but fails even on its own terms.  And CCE repeatedly floats the idea of the parties stipulating to this Court's jurisdiction over HMD Global's motion to compel, despite the bedrock principle that parties cannot create jurisdiction by stipulation.  This Court can and should ignore CCE's frolics and detours, focus on the brief but breathtaking question its motion presents, and answer it firmly in the negative.

## BACKGROUND

### A.      CCE's Complaint and the Protective Order Governing Confidentiality

On March 17, 2020, Cellular Communications Equipment LLC ("CCE") sued HMD Global for infringement of a single patent, U.S. Patent No. 7,218,923.  Docket No. 1.  On August

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

10, 2020, CCE effected service on HMD Global through the Hague Convention.  Docket No. 30.

On August 14, this Court entered its protective order governing confidentiality, largely based on this Court's form order.  *Compare* Docket No. 31 *with* http://txed.uscourts.gov/sites/default/files/judgeFiles/Sample_Protective_Order_Patent_ Cases_%28April%202019%29.docx, also at Declaration of Maissa Chouraki, Ex. A.  (Further exhibit citations are to the same declaration.)  The Order specified three tiers of information:  "Confidential," "Highly Confidential—Attorneys' Eyes Only," and "Highly Confidential—Source Code."  Docket No. 31 ¶ 1.  It stated that all tiers of information "shall be used by the Parties only in the litigation of this Action and shall not be used for any other purpose."  *Id.* ¶ 7.  It restricted distribution of all tiers of information to groups including "the Court and its personnel."  *Id.* ¶ 5(g).

Setting aside source-code provisions not relevant here, the order governed the tiers differently only by preventing "Highly Confidential—Attorneys' Eyes Only" from going to in-house representatives and some in-house counsel.  *Id.* ¶ 9.  Paragraphs 5(g) and 7 applied equally to all tiers of information.  On September 9, 2020, this Court entered a supplemental order requested by the parties.  Docket No. 35.  This order added a fourth tier of information, "Highly Confidential—Outside Attorneys' Eyes Only," which it governed differently only by barring distribution to all, rather than some, in-house counsel.  *Id.* at 1-2.  It made no other changes, *id.* and Paragraphs 5(g) and 7 thus continue to apply equally to all tiers of information.

**B.**  ███████████████████████████

On September 17, 2020, CCE produced licenses covering the '923 patent including the

████████████████████████████████████████████████████████

████████████████████████  Docket No. 36-4.  ARC is CCE's ultimate corporate parent and owns 100% of CCE.  Docket No. 38 at 2.  ████████████████████████████

– 2 –

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

**C.      HMD Global's Motion to Dismiss for Lack of Standing**

On September 21, 2020, just four days after CCE produced the ████████████████████

████████████████████ HMD Global moved to dismiss CCE's complaint on grounds including

its lack of standing.  Docket No. 36.  HMD Global explained that a plaintiff "lacks standing to

sue a party who has the ability to obtain such a license from another party with the right to grant

it," *WiAV Sols. LLC v. Motorola Inc.*, 631 F.3d 1257, 1266 (Fed. Cir. 2010), and, because ███

can grant a license to the '923 patent without CCE ████████████ CCE cannot show it has the

right to exclude, and thus lacks standing to sue.  Docket No. 36.  The parties briefed this motion,

Docket Nos. 47, 49, 58, and filed public, redacted briefs.  Docket Nos. 40, 48, 51, and 60.

**D.      The Starboard Security Interest May Further Undermine CCE's Standing**

HMD Global discovered publicly available filings that further questioned CCE's

standing.  A "Patent Security Agreement" filed with the United States Patent and Trademark

Office granted Starboard Value Intermediate Fund LP ("Starboard") a security interest in the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

'923 patent, and referenced a Security Agreement, which CCE has not produced, and a "Release of Security Interest in Patents" also filed with the P.T.O. shows that on June 30, 2020, Starboard rescinded its security interest.  These documents may independently undermine CCE's standing.

**E.      HMD Global Subpoenas CCE's Parent ARC at its Home Office in California**

On September 25, 2020, HMD Global served ARC with a subpoena for documents and things, seeking documents regarding the ████████████████████████████ the security interest, the relationship between ARC and CCE, and other documents concerning the '923 patent.  Ex. B.  As required, HMD Global set compliance at a location within 100 miles of ARC's headquarters and only office in Irvine, California.  Fed. R. Civ. P. 45(c)(2)(A); Ex. B at 2.  On October 9, 2020, ARC responded to the subpoena, providing boilerplate objections and refusing to produce a single document.  Ex. C.

**F.      HMD Global Meets and Confers, and Triggers Local Rule 37-2**

On October 16, HMD Global asked ARC to meet and confer regarding the subpoena.  HMD Global and ARC had two lengthy telephone conferences, and exchanged 11 letters and emails regarding the subpoena.  Exs. D, E, F, G, H, I, J, K, L, M, Docket No. 68-1.  Throughout this process, ARC did not commit to producing a single document, and raised no concerns regarding the protective order in this action.  On November 3, HMD Global triggered Central District of California Local Rule 37-1 with a detailed letter; under that rule, ARC had ten days to conduct a final conference.  Ex. H.  After still more letters, ARC agreed to meet and confer on November 13, the last day under the rule.  Exs. L, M; Docket No. 68-1.  The parties conferred a third and final time.  *Id*.  Again, ARC raised no concerns regarding the protective order.

On Monday, November 16, HMD Global served its portion of a draft joint stipulation, along with "all declarations and exhibits to be offered in support of the moving party's position,"

as required by Central District of California Local Rule 37-2.2.  Ex. N.  The Central District

requires submission of "prior filings" with the joint stipulation if "the allegations made in a prior

filing are relevant," and so HMD Global served those documents as well.  C.D. Cal. Loc. R.

37-2.1.  HMD Global also followed the Central District's requirement that parties "attempt to

eliminate or minimize the need for filing under seal by means of redaction," by inviting joint

counsel for ARC and CCE to redact their documents according to their claims of confidentiality.

*See* Ex. N at 1-2.  HMD Global told ARC and CCE that it planned to file documents CCE had

previously redacted and filed publicly "with the same redactions," and would honor all previous

requests to file documents entirely under seal.  *Id.*  ARC had a week, until Monday, November

23, to return its "portion of the stipulation, together with all declarations and exhibits to be

offered in support of the moving party's position."  C.D. Cal. Loc. R. 37-2.2.

**G.     ARC and CCE Make Last-Minute Claims Regarding the Protective Order**

On Friday, November 20, nearly two months after HMD Global served the subpoena and

on the last business day before ARC's deadline to submit its portion of the joint stipulation, CCE

claimed for the first time that this Court's protective order bars disclosure of "confidential

information produced by CCE in this Action to a Central District of California court or its

personnel," and further bars "using such confidential information in a different Action."  Docket

No. 68-6.  Later that same day, joint counsel for ARC and CCE sent a letter speaking for both of

them, repeating the assertion that "that it would be a protective order violation" even for HMD

Global "to file its proposed stipulation with a Central District of California court."  Ex. O.

Although frustrated by CCE and ARC's last-minute assertion of an argument they could

have raised long ago, out of respect for this Court's authority, HMD Global agreed to defer its

motion to compel until this Court could interpret its own order, as long as CCE agreed to an

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

expedited briefing schedule under which it will reply this coming Friday, December 4.  Docket

No. 68-7.  CCE agreed, Docket No. 68-8, and confirmed its agreement in its motion.  Mot. at 16.

## ARGUMENT

I.    **This Court's Default Protective Order Allows Ancillary Actions, Mandamus Petitions, Transfers, and Appeals, as Required by Governing Law**

A.    **CCE's Radical Reimagination of This Court's Default Protective Order Finds No Support in the Order or the Law, and Would Upend Decades of Practice by Hundreds of Parties Before This Court**

CCE asks this Court to radically reimagine the protective orders governing dozens if not

hundreds of active cases on this Court's busy docket.  Stripped of its obfuscation, CCE makes

two arguments, each depending entirely on the text of this Court's default protective order

governing confidentiality.  First, CCE claims that the restriction on disclosure to "the Court and

its personnel" in ¶ 5(g) actually means '*this* Court and its personnel but *no other Court*.'  Mot. at

2, 5-8.  Thus CCE argues that disclosure of confidential information "to a CDCA court and its

personnel," *without any further disclosure*, is still a violation of this Court's order, "as that court

and its personnel are not authorized to view such produced and designated information."  Mot. at

8.  Paragraph 5(g) is copied directly from this Court's form order, *compare* Docket No. 31 ¶ 5(g)

*with* Ex. A, ¶ 5(g), and applies equally to all tiers of information in this Court's order here and in

its form order.  *Id.*; *see supra* § A.  If CCE is right about what this language means, then parties

subject to this Court's form order cannot even file *any confidential information* with *any other*

*Court,* including at least any ancillary actions, mandamus petitions, transfers, or appeals.

Second, CCE claims that the restriction requiring that confidential information "shall be

used by the Parties only in the litigation of this Action and shall not be used for any other

purpose" in Docket No. 31 ¶ 7 actually means that confidential information 'shall be used by the

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Parties only in the litigation of this Action *before this Court and no other Court*.'  Mot. at 9.

Thus CCE argues that placing confidential information under any other caption *by itself* violates

the protective order, even where (as here) the sole and only purpose is to seek documents under a

subpoena bearing *this* caption, which ARC would produce under the same protective order it

claims HMD Global would violate.  Mot. at 9-10.  Again, paragraph 7 is copied directly from

this Court's form order, *compare* Docket No. 31 ¶ 7 *with* Ex. A ¶ 7, and applies equally to all

tiers.  *Id.*; *see supra* § A.  Again, if CCE is correct about what this language means, then no party

subject to this Court's form order can share *any confidential information* with *any other Court*,

including at least any ancillary actions, mandamus petitions, transfers, or appeals.

Other than the text of this Court's form order, CCE provides no authority to support its

radical restructuring of the myriad cases subject to that order.  None exists.  Indeed, CCE cannot

point to *any other party or non-party* that has even *tried* to advance its radical argument, across

this Court's mountains of patent litigation involving companies' dearest secrets, even though this

argument would (if true) benefit parties (such as CCE) that wish to block ancillary actions,

mandamus petitions, transfers, or appeals (which many surely do).  CCE cannot find another

party that has ever made this argument for a simple reason:  everyone has always agreed that this

Court's form order allows use of confidential information before other courts, under their own

sealing procedures, to advance litigation before this Court through procedures such as ancillary

actions, mandamus petitions, transfers, or appeals.

Far from a grave violation of the protective order, what HMD Global contemplates is a

routine practice.  Parties litigating in this Court as well as other jurisdictions with similar

protective orders have repeatedly filed documents confidential under those orders under seal in

ancillary actions, with no one raising any confidentiality concern.  For example, in *Uniloc 2017*

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

*LLC v. Google LLC*, Case No. 18-491 (E.D. Texas), the protective order included the same language CCE claims prevents HMD Global from proceeding with its motion to compel, permitting disclosure of confidential materials to "the Court and its personnel," and limiting use of confidential materials to "prosecuting, defending, or attempting to settle this Action."  *Id.* Docket No. 57 ¶¶ 5(g), 7.  But this language did not bar an ancillary action, *Google LLC v. Fortress Investment Group LLC*, Case No. 20-132 (S.D.N.Y.), in which movant Google filed information, produced here by Uniloc and designated confidential, under seal in the Southern District of New York, following the procedures for sealing in that Court.  *See, e.g., id.* Docket No. 15.  In the short time since CCE raised this issue, HMD Global has found many other examples of the same procedure under the same provisions, with no complaint from anyone.[1]

Tellingly, both ARC and CCE have been in exactly this situation and raised no concern. *Compare Cellular Commc'n Equip., LLC v. HTC Corp.*, Case No. 13-507, Docket No. 310 ¶¶ 6.6.1(c), 6.1 (E.D. Tex. Dec. 10, 2014) w*ith Cellular Commc'n Equip., LLC v. HTC Corp.*, Case No. 15-2373, Docket No. 1 (S.D. Cal. Oct 29, 2015) (movant filed ARC's confidential information); *compare Nexus Display Tech. LLC v. Dell Inc.*, Case No. 14-762, Docket No. 57 (E.D. Tex. Dec. 14, 2014) *with Dell Inc. v. Acacia Research Group LLC*, No. 15-25, Docket No.

---

[1] *Compare Mobile Telecomm. Tech. LLC v. Sprint Nextel Corp.*, Case No. 15-183, Docket No. 43 ¶¶ 6.1, 1 (E.D. Tex. Aug. 25, 2015) *with Mobile Telecomm. Tech. v. Samsung Electr. Co.*, Case No. 16-80012, Docket Nos. 1, 6 (N.D. Cal. Jan. 14, 2016) (movant filed respondent's confidential information); *compare St. Jude Medical S.C. Inc. v. Janssen-Counotte*, Case No. 14-877, Docket No. 99 ¶¶ 2(iv), 4 (W.D. Texas, Nov. 20, 2015) *with St. Jude Medical S.C. Inc. v. Janssen-Counotte*, Case No. 15-99, Docket No. 3 (D. Or. Feb. 20, 2015) (movant filed respondent's confidential information); *compare Negotiated Data Solutions, LLC v. Dell, Inc.*, Case No. 06-528, Docket No. 64 ¶¶ 4.1(f), 3.1 (E.D. Texas, Jan. 23, 2008) *with Negotiated Data Solutions, LLC v. Dell, Inc.*, Case No. 09-80012, Docket No. 16 (N.D. Cal. Feb. 3, 2009) (respondent filed movant's confidential information); *compare TQ Delta LLC v. ZyXEL Communications Inc.*, Case No. 13-2013, Docket No. 230 ¶¶ 7.2(d), 7.3(c), 3 (D. Del. June 7, 2016) *with In re Subpoenas to Intel Corporation*, 17-80099, Docket No. 4 (N.D. Cal. July 28, 2017) (movant filed respondent's confidential information).

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

1, 15 (C.D. Cal. Oct. 2, 2015) (movant filed ARC subsidiary's confidential information).

CCE has nothing to say to any of this, except that maybe all these parties happened to agree to these disclosures.  Mot. at 12 & n.2.[2]  But CCE and its parent ARC know the answer to this question regarding ARC, CCE, and ARC's subsidiary Nexus Display Technologies.  If any of *those* parties had agreed to the disclosure, CCE would have said so.  This Court supervised most of the remaining cases, and knows them well:  does it seem plausible that *all* these various parties, each engaged in high-stakes litigation, happened at the same procedural point to put down their swords and magnanimously waive provisions otherwise to their benefit?  It does not.

Finally, although HMD Global has not found any case addressing an ancillary action using confidential information—because everyone agrees that ancillary actions are perfectly permissible, *see supra*—the law HMD Global *has* found allows filing of confidential information before other Courts *even in unrelated cases*.  *See Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, Case No. 15-24363, 2018 WL 1456614, at *6 (S.D. Fla. Mar. 23, 2018) (where Pliteq used Ecore's confidential production to support a motion to compel in a different case, finding that "Ecore's argument that Pliteq violated the Pennsylvania Protective Order by filing those documents under seal in conjunction with the Motion to Compel is entirely without merit.").

**B.      If This Court Allows CCE's Reimagination of Its Form Protective Order, The Resulting Protective Order Would Violate Parties' Substantive Rights**

CCE's motion must fail for another reason:  if this Court follows CCE down the rabbit hole of reimagination, its resulting order would violate parties' substantive rights under law.   No

---

[2] CCE claims that Google "consented to the filings" in *Mobile Telecomm. Tech. v. Samsung Electr. Co., Ltd.*, Case No. 16-80012 (N.D. California), but that is incorrect.  Movant Mtel filed Google's confidential information under seal, Docket No. 6, and Google then filed a declaration supporting its confidentiality, as required by that court's Local Rule 79-5.  *Id.*, Docket No. 14.  The declaration supported sealing; it did not consent to the original filing.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

Court can issue orders contrary to the Federal Rules.  Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions and proceedings in the United States District Courts"), 83 (courts "may regulate practice in any manner consistent with" law and rules); *see, e.g., Levitt-Stein v. Citigroup, Inc.*, 284 Fed. App'x 114, 117 (5th Cir. 2008); *Wapp Tech Limited Partnership v. Seattle SpinCo Inc.*, Case No. 18-496, 2020 WL 3791520, at *2 (E.D. Tex. July 7, 2020) ("local rules cannot be inconsistent with the Federal Rules of Civil Procedure").  CCE asks this Court to do precisely that for all matters governed by its form protective order.

CCE's reimagination of this Court's form protective order would prevent parties such as HMD Global from exercising their rights under Rule 45.  That Rule requires HMD Global to bring its motion in the Central District of California, Fed. R. Civ. P. 45(d)(2)(B)(i), where the local rules require that if "the allegations made in a prior filing are relevant, a copy of that prior filing should be attached as an exhibit."  C.D. Cal. Loc. R. 37-2.1.  HMD Global thus cannot pursue its rights under Rule 45 without filing documents that, under CCE's reimagination of this Court's form protective order, it could not file.  Even without that rule, HMD Global could not file its motion without referring to confidential information, as this Court can confirm from reviewing the arguments that HMD Global has already transmitted to ARC.  *See generally* Ex. N.  CCE's reimagination of the form order would thus bar HMD Global and many similarly situated parties from pursuing their substantive rights to third-party discovery under Rule 45.

But CCE's reimagination of this Court's form protective order would not stop there.  It would bar appeals—different Court, different caption—of any action containing confidential information, thus preventing parties from pursuing their substantive rights to appeal.  Fed. R. App. P. 3(a)(1), 10(a).  And CCE's reimagination of this Court's form protective order would bar prosecution of transferred cases—again, different Court and different caption—unless each party

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

and non-party that produced documents consented to the use of its documents in the transferee court.  This Court cannot adopt CCE's reimagination of the protective order without causing chaos in all these cases, and without violating parties' substantive legal rights.

## II.      CCE's Remaining Arguments Are Irrelevant to the Issue Before This Court

Much of CCE's brief raises issues that are not relevant to the issue before this Court. Although HMD Global should not have to respond to these irrelevant points, it will try at least to set the record straight.  This Court can and should ignore these issues in deciding CCE's motion.

### A.      There is Nothing Sinister About the Central District of California

CCE devotes much of its brief to impugning the Central District of California and its personnel.  CCE repeatedly calls the Central District an "unknown district court," Mot. at 7, *see id.* at 1, 5, 8, 11, and claims that disclosure of confidential information to its judges and staff "could prove disastrous."  *Id.* at 8.  CCE's baseless insults to the Central District contradict ARC's usual behavior in its home district, where it is comfortable as both plaintiff and defendant. *See, e.g.*, *Acacia Research Corp v. Slingshot Technologies, LLC,* No. 19-1385, Docket No. 1 (C.D. Cal. July 15, 2019).  And CCE cannot support its insults.  It notes that the Central District's rules require "good cause" to seal confidential information, Mot. at 8 (citing C.D. Cal. Loc. R. 79-5.2.2(b)(i), but this requirement is routine, this Court has a similar rule, Docket No. 31 ¶ 1, and either requirement could matter only if CCE designated as confidential documents for which there is *not* "good cause" to seal—which of course CCE does not say, resolving the issue.

Nor is there anything sinister about the Central District of California's procedures for sealing documents, or HMD Global's attempts to follow them.  CCE states that HMD Global sought "to improperly shift its burden under the Protective Orders to non-party ARC" to delineate ARC's own claims of confidentiality, Mot. at 6, but HMD Global simply sought to

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

follow the Central District's command that it "attempt to eliminate or minimize the need for filing under seal by means of redaction" by conferring with opposing counsel.  C.D. Cal. Loc. R. 79-5.2.2(b); *see supra* § F.  It is not sinister to follow those rules, to confer with opposing counsel, or to ask a party to limn its own confidentiality claim; indeed, having a party define its own confidentiality is the most solicitous and courteous mechanism possible.[3]  CCE has done exactly that for its prior filings, *see, e.g.*, Ex. P, and even did so regarding this motion itself.  Ex. Q.  This practice is reasonable when CCE does it, and is still reasonable when HMD Global does it.  CCE tries to claim otherwise, but provides nothing to support its claims.

### B.    Only Dismissal of CCE's Complaint Will Moot HMD Global's Subpoena

Evidently unsatisfied with its prior briefing on HMD Global's motion to dismiss, CCE seeks to reargue that motion here.  Mot. at 3-4.  CCE's late arguments are improper, and their merits are risible.[4]  Most importantly, however, CCE's arguments against dismissal are simply

---

[3] CCE's motion provides a good example of why it is important to allow parties to define their own confidentiality.  CCE designated as confidential a large portion of page 14, which does not summarize or relate to the confidential information otherwise at issue here.  *Compare* Docket No. 68 *with* Docket No. 69.  If HMD Global tried to define CCE's claims of confidentiality for CCE, it would not have included these redactions.  For precisely this reason, and to avoid disputes over whether HMD Global has correctly limned CCE's confidentiality claims, HMD Global has followed common practice by allowing CCE to define its own claims, as CCE has done for HMD Global.  HMD Global did nothing more than extend ARC the same courtesy.

[4] CCE argues that ███████████████████████████████ █████████        Mot. at 3-4 (citing *Schron v. Troutman Sanders LLP*, 20 N.Y.3d 430, 436 (2013)).  But CCE did not make this argument opposing HMD Global's motion to dismiss, and neither its opposition nor its surreply cite the *Schron* case or even contain the word "unambiguous."  Docket Nos. 47, 58.  CCE cannot sneak this argument in now.  Nor would it gain anything if it could, as CCE asks this Court to conclude that an agreement █████████████████████████ ████████████████████████████████████████████████████████████████

Finally, CCE argues that "a written instrument is necessary to obtain rights to a patent," Mot. at 3, and then adds without citation or evidence that "[n]o written instrument has ever conveyed such rights in the '923 patent to ARC."  Mot. at 3.  CCE thus claims that no relevant documents exist, while ARC and CCE work together to block HMD Global from discovery into

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

irrelevant here, because the only ruling from this Court that will moot HMD Global's subpoena

is a complete dismissal of CCE's complaint.  Even if this Court denied HMD Global's pending

motion, because standing is a "threshold jurisdictional issue," *Abraxis Bioscience, Inc. v. Navinta*

*LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560-61 (1992)), which even CCE acknowledges "may be raised at anytime," Docket No. 47 at

11, HMD Global can present facts beyond the pleadings to support its claim, has no time limit to

make this claim, and can take discovery to support a renewed motion.  *See, e.g., Uniloc USA,*

*Inc. v. Apple Inc.*, No. 18-358, Docket No. 165 (N.D. Cal. Oct. 22, 2020) (renewing motion to

dismiss for lack of standing based on new discovery); *see also Blitzsafe Tex. LLC v. Mitsubishi*

*Elec. Corp.*, No. 17-430, 2019 WL 2210686, at *3 (E.D. Tex. May 22, 2019).  And separately

from HMD Global's current standing claim, documents sought by the subpoena are relevant to

other possible standing claims as well as internal analysis and valuations of the '923 patent, prior

royalties paid for it, and potential damages for infringement.  For at least these reasons, no ruling

on HMD Global's motion to dismiss, short of a complete dismissal, will moot the subpoena.

### C.  Parties Cannot Stipulate to Federal Jurisdiction

CCE states several times that ARC offered "to cause the place of compliance of the ARC

subpoena to be in the Eastern District of Texas," thus allowing this Court to consider a motion to

compel, and that HMD Global "did not accept this proposal."  Mot. at 7; *see id.* at 5, 14.  CCE's

lawyerly language—"did not accept"—obscures HMD Global's actual response, *see* Ex. R,

---

whether any relevant documents exist.  To justify this Catch-22, CCE argues that ARC need not
respond to HMD Global's subpoena because CCE does not agree with HMD Global's legal
theory.  If parties could block discovery for this reason, there would be no discovery.  *See, e.g.,*
*Castelan-Gutierrez v. Bodega Latina Corp.*, Case No. 17-1877, 2018 WL 4050493, at *2 (D.
Nev. Mar. 30, 2018) ("The mere fact that a party may articulate some legal argument that may
allow it to prevail on a particular claim, even when presented in a currently-pending dispositive
motion, is simply insufficient to justify denying discovery to its opponent.").

~~FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER~~

which was that ARC's proposal failed on its own because "parties cannot stipulate or consent to a federal court's subject matter jurisdiction" if it does not otherwise exist.  *PerDiem Co, LLC v. IndusTrack LLC*, Case No. 15-726, 2016 WL 6534524, at *2 (E.D. Tex. Oct. 18, 2016).

That is precisely what ARC and CCE seek here.  As required, HMD Global noticed compliance with its subpoena "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(2)(A); *see* Ex. B. When a subpoena seeks documents from a corporation, "the proper district for a motion to compel is the district in which the subpoenaed, nonparty corporation is headquartered."  *Burnett v. Wahlburgers Franchising LLC*, No. 16-4602, 2018 WL 10466827, at *2 (E.D.N.Y. Oct. 4, 2018) (collecting cases).  ARC's headquarters and sole office is in Irvine, California, within the Central District of California.  Ex. S; *see* 28 U.S.C. § 84.  Having noticed compliance there (as required) HMD Global now may proceed only in "the court for the district where compliance is required for an order compelling production or inspection."  Fed. R. Civ. P. 45(d)(2)(B)(i).  No other Court, including this one, would have jurisdiction to hear HMD Global's motion to compel, and the parties cannot create jurisdiction by agreeing otherwise.  *See, e.g., Agincourt Gaming, LLC v. Zynga, Inc.*, 2014 WL 4079555, at *3 (D. Nev. Aug. 15, 2014) ("Under the current version of the Rule, when a motion to quash a subpoena is filed in a court other than the court where compliance is required, that court lacks jurisdiction to resolve the motion.").  HMD Global will not join ARC and CCE in asking this Court to act beyond its jurisdiction.[5]

---

[5] CCE also states that Rule 45 "allows for HMD's motion to compel to be transferred to this Court, as the entity subject to the subpoena (ARC) would consent to the transfer."  Mot. at 14 (citing Fed. R. Civ. P. 45(f)).  This offer is illusory, since HMD Global cannot seek to transfer its motion to compel without filing it, and cannot file its motion in the Central District of California without complying with that Court's Rule 37-2.1, which CCE says would violate this Court's protective order, which brings us back to where we started.  *See supra* § I.A.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

### D.      CCE Cannot Speak for Non-Parties ███ and ███, and Its Purported Concerns on Their Behalf Are Irrelevant to Its Motion

CCE improperly seeks to argue on behalf of non-parties ███ and ███ claiming they "never consented to their confidential information being treated in this manner."  Mot. at 8.  But ███ and ███ are irrelevant to CCE's motion, which relies on paragraphs of this Court's form order governing all tiers of confidential information.  *See supra* §§ A, I.  The scope of their consent is doubly irrelevant, because a private agreement cannot bar production of relevant documents.  *Tinkers & Chance v. Leapfrog Enter., Inc.* Case No. 05-349, 2006 WL 462601, at *2 (E.D. Tex. Feb. 23, 2006) ("this Court will order the production of all relevant documents and evidence, without regard to any private non-disclosure agreements.").  In any event, ███ and ███ evidently do not care:  CCE spoke with both companies regarding its initial production, *see* Mot. at 8, 9, and its solicitousness of their rights surely extends to notice of HMD Global's proposed ancillary action.  Neither ███ nor ███ has appeared to oppose this disclosure, as Apple recently appeared to oppose a different disclosure, Docket No. 45; their silence speaks volumes.

### CONCLUSION

For the foregoing reasons, HMD Global respectfully requests that this Court deny CCE's motion, and confirm that Paragraphs 5(g) and 7 of its form protective order allow submission of confidential information to other courts, under their own sealing procedures, to advance this action through procedures such as ancillary actions, mandamus petitions, transfers, or appeals.[6]

Date:  December 2, 2020                               Respectfully submitted,

                                                                          */s/ Deron R. Dacus*
                                                                          Deron R. Dacus

---

[6] Depending on this Court's interpretation of its order, HMD Global may seek to modify the protective order governing confidentiality in this matter.  Docket No. 31 ¶ 27.  But HMD Global cannot reasonably seek to modify the governing order without knowing its scope; in light of the significant dispute over that scope, HMD Global does not seek this relief at this time.

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

State Bar No. 00790553
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas, 75701
+1 (903) 705-1117
+1 (903) 581-2543 facsimile
ddacus@dacusfirm.com

Matthew S. Warren (California Bar No. 230565)
Jen Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-78@cases.warrenlex.com

*Attorneys for HMD Global Oy*

## <u>CERTIFICATE OF AUTHORIZATION TO SEAL</u>

Under Local Rule CV-5, the undersigned counsel certifies that the Court has previously

granted authorization for filing under seal in the protective order governing confidentiality in this

matter, Docket Nos. 31, 35.

*/s/ Deron R. Dacus*
Deron R. Dacus

FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 2, 2020, I served the foregoing Opposition of HMD Global to

CCE's Motion to Enforce the Protective Order on counsel for plaintiff Cellular Communications

Equipment LLC:

> Jeffrey R. Bragalone
> Jerry D. Tice II
> Hunter S. Palmer
> Bragalone Conroy PC
> 2200 Ross Avenue
> Suite 4500W
> Dallas, Texas, 75201

by electronic mail to cce-service@bcpc-law.com, the email address designated for service by

outside counsel for plaintiff Cellular Communications Equipment LLC under Section 12(c) of

the Discovery Order in this case, Docket No. 24.

> *<u>/s/ Deron R. Dacus</u>*
> Deron R. Dacus