**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No. 2:20-cv-00078-JRG** |
| | § | |
| **v.** | § | **JURY TRIAL DEMANDED** |
| | § | |
| **HMD GLOBAL OY,** | § | |
| | § | |
| **Defendant.** | § | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO
TRANSFER VENUE UNDER 28 U.S.C. § 1404**

Plaintiff Cellular Communications Equipment LLC ("CCE") files this response in opposition to Defendant HMD Global Oy's ("HMD") motion to transfer under 28 U.S.C. § 1404. (Dkt. No. 77) (the "Motion").

## <u>TABLE OF CONTENTS</u>

I.        INTRODUCTION ................................................................................................. 1

II.      BACKGROUND ................................................................................................. 1

III.     ARGUMENTS AND AUTHORITIES.................................................................. 2

     A.     The "Practical Problems" Factor Weighs Against Transfer. ................................. 3

     B.     The "Sources of Proof" Factor is at Most Neutral. ................................................. 7

     C.     The "Compulsory Witnesses" Factor Weighs Against Transfer. .......................... 8

     D.     The "Cost to Willing Witnesses" Factor Does Not Support Transfer. ................. 11

           *i. Non-Party Witnesses* ............................................................................................ *11*

           *ii. Party Witnesses* ................................................................................................. *12*

     E.     The "Court Congestion" Does not Favor Transfer. ............................................... 13

     F.     The "Localized Interests" Factor Weighs Against Transfer. ................................ 14

     G.     The "Court Familiarity" and "Conflicts of Law" Factors do not Favor Transfer. 15

IV.      CONCLUSION.................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*AGIS Software Dev. LLC v. Apple, Inc.*,
  No. 2:17-CV-00516-JRG, 2018 WL 2721826 (E.D. Tex. June 6, 2018) ................................. 14

*Aloft Media, LLC v. Adobe Sys. Inc.*,
  No. 6:07-CV-355, 2008 WL 819956 (E.D. Tex. Mar. 25, 2008) .............................................. 7

*Balawajder v. Scott*,
  160 F.3d 1066 (5th Cir. 1998) .................................................................................................. 2

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  No. 6:13-cv-507, Dkt. No. 454 (E.D. Tex. Aug. 21, 2015) ...................................................... 4

*Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*,
  No. 2:14-CV-912-JRG-RSP, 2016 WL 4265034 (E.D. Tex. Aug. 12, 2016) .......................... 13

*Fintiv, Inc. v. Apple Inc.*,
  No. 6:18-CV-00372-ADA, 2019 WL 4743678 (W.D. Tex. Sept. 13, 2019) ............................ 7

*Hoffman v. Blaski*,
  363 U.S. 335 (1960) ........................................................................................................ 3, 7, 12

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) ................................................................................................ 6

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ........................................................................................... 8, 12

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009) ................................................................................................ 2

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) .............................................................................................. 11

*In re Vistaprint Ltd.*,
  628 F.3d 1342 (Fed. Cir. 2010) ........................................................................................... 3, 5

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ......................................................................................... 2, 3, 15

*In re Volkswagen of Am., Inc.*,
  566 F.3d 1349 (Fed. Cir. 2009) ................................................................................................ 7

*Intellectual Ventures I LLC v. T-Mobile USA, Inc.,*
   No. 2:17-CV-0577-JRG, 2018 WL 4175934 (E.D. Tex. June 29, 2018) ................................. 14

*LBS Innovations, LLC v. Apple Inc.*,
   No. 2:19-cv-00119-JRG-RSP, 2020 WL 923887 (E.D. Tex. Feb. 26, 2020)......................... 13

*Lonestar Inventions, L.P. v. Sony Elecs. Inc.*,
   No. 6:10-CV-588-LED-JDL, 2011 WL 3880550 (E.D. Tex. Aug. 29, 2011)........................... 4

*Network-1 Sec. Sols., Inc. v. D-Link Corp.*,
   433 F. Supp. 2d 795 (E.D. Tex. 2006) .................................................................................. 6

*Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*,
   No. 6:09-cv-270, 2010 WL 4238879 (E.D. Tex. 2010) ........................................................... 4

*Seven Networks, LLC v. Google LLC*,
   No. 2:17-CV-00441-JRG, 2018 WL 4026760 (E.D. Tex. Aug. 15, 2018) ................ 2, 8, 11, 13

*Stingray Music USA, Inc. v. Music Choice*,
   No. 2:16-CV-964-JRG-RSP, 2017 WL 1022741 (E.D. Tex. Mar. 16, 2017) ........................... 7

*Wahlstrom v. B & A Carrier LLC*,
   No. 2:18-CV-00313-JRG, 2019 WL 130296 (E.D. Tex. Jan. 8, 2019) ..................................... 3

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
   No. 2:17-CV-00456-JRG, 2018 WL 4620636 (E.D. Tex. May 22, 2018) ................................. 2

*Wireless Recognition Techs. LLC v. A9.com, Inc.*,
   No. 2:10-CV-364-JRG, 2012 WL 506669 (E.D. Tex. Feb. 15, 2012) ..................................... 15

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................................. 2

28 U.S.C. § 636 ........................................................................................................................ 5

**Rules**

37 C.F.R 1.141 ......................................................................................................................... 5

FED. R. CIV. P. 32(a)(4)........................................................................................................... 10

FED. R. CIV. P. 45(c)(1)(B) ...................................................................................................... 9

Local Rule CV-72 ..................................................................................................................... 5

## I.    INTRODUCTION

HMD argues that the Court should transfer venue because the only connection of this case to this District is litigation. This allegation is unsupported by the facts: CCE is a Texas entity, and CCE's business is conducted from its principal place of business in this District. Moreover, CCE has protected its rights in the asserted patent (the "'923 patent") eighteen times in this District, including two pending cases at the time of filing. Through the course of the prior cases, this Court has gained experience in the patent's claims and underlying technology. Indeed, the Court has previously construed the only disputed claim term of an asserted claim in this Action.

HMD is not a Florida resident and represents that it has no witnesses or documents in Florida. Instead, HMD relies on cherry-picked individuals of HMD America who reside in Florida, while ignoring that most of HMD America's employees live outside of Florida, including in Texas. Accordingly, HMD cannot carry its heavy burden to show that transfer is warranted.

## II.    BACKGROUND

CCE filed this lawsuit on March 17, 2020, alleging infringement of the '923 patent. (Dkt. No. 1). Since then, HMD has filed numerous motions to delay resolution on the merits. On June 10, 2020, HMD filed its first motion to dismiss for alleged insufficient process and insufficient service. (Dkt. No. 8). CCE opposed HMD's first motion to dismiss, in part because CCE timely began effecting service on HMD pursuant to the Hague Convention, as CCE informed HMD before HMD filed the motion. (Dkt. No. 15 at 1-3). Nevertheless, HMD waited until after briefing was complete to withdraw its motion, stipulating that it would "respond to the Complaint on or before September 21, 2020." (Dkt. No. 30). On September 21, 2020, HMD filed its second motion to dismiss, this time for alleged failure to state a claim and lack of standing. (Dkt. No. 36). Next, on September 22, 2020, HMD filed its first motion to transfer under § 1404. (Dkt. No. 38). Over

1

HMD's refusal, the Court allowed venue discovery in connection with the motion, which ended on December 14, 2020. (Dkt. Nos. 50, 53). The day venue discovery closed—after it was too late for CCE to seek additional venue discovery pursuant to the Court's order—HMD filed a new motion to transfer, asserting additional facts; HMD thereafter moved to withdraw its original motion. (Dkt. Nos. 77, 80). HMD filed the pending Motion nearly nine months after CCE filed its complaint and over six months since HMD filed its first motion to dismiss.

## III.    ARGUMENTS AND AUTHORITIES

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). But a motion to transfer venue under § 1404(a) should be granted only upon a showing that the transferee venue is "clearly more convenient." *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) (hereinafter *Volkswagen II*). It is HMD's burden to demonstrate that the proposed transferee venue is clearly more convenient. *See Volkswagen II*, 545 F.3d at 315. Therefore, the Court should draw reasonable inferences and resolve factual conflicts in favor of CCE. *See Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-CV-00456-JRG, 2018 WL 4620636, at *2 (E.D. Tex. May 22, 2018). As such, CCE's choice of forum is given deference, and the statute "places a significant burden on the movant to show good cause for the transfer." *Volkswagen II*, 545 F.3d at 315 n.10; *Seven Networks, LLC v. Google LLC*, No. 2:17-CV-00441-JRG, 2018 WL 4026760, at *2 (E.D. Tex. Aug. 15, 2018). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998). Fifth Circuit law controls the § 1404 analysis. *See Nintendo*, 589 F.3d at 1197.

The § 1404 analysis turns on several factors: (1) practical problems that make trial of a case easy, expeditious, and inexpensive; (2) the relative ease of access to sources of proof; (3) the availability of compulsory process to secure the attendance of witnesses; (4) the cost of attendance for willing witnesses; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems with conflicts of law. *Volkswagen II*, 545 F.3d at 315. These factors are generally analyzed based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). The factors "are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id*. HMD does not meet its heavy burden to show that transfer is warranted. Indeed, no factor weighs in favor of transfer, while several factors weigh strongly against transfer. As such, HMD's proposed transferee forum is not clearly more convenient, and the Court should deny HMD's Motion.

### A.  The "Practical Problems" Factor Weighs Against Transfer.

"Practical problems include those that are rationally based on judicial economy." *Wahlstrom v. B & A Carrier LLC*, No. 2:18-cv-00313-JRG, 2019 WL 130296, at *4 (E.D. Tex. Jan. 8, 2019). A district court may give factors of judicial economy "paramount consideration." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010) ("[I]t is entirely within the district court's discretion to conclude that in a given case the § 1404(a) factors of public interest or judicial economy can be of 'paramount consideration,' ... and as long as there is plausible support of record for that conclusion [the Federal Circuit] will not second guess such a determination, even if the convenience factors call for a different result."). When "the trial court perform[s] a detailed analysis explaining that it is very familiar with the only asserted patent and the related technology, and where there is a co-pending litigation before the trial court involving the same patent-in-suit,

3

and pertaining to the same underlying technology and accusing similar services, [the appellate court] cannot say the trial court clearly abused its discretion in denying transfer." *Id* at 1347 n.3.

CCE has asserted the patent in this District eighteen times. Tice Dec. at ¶ 2. During these matters, the parties submitted discovery and Daubert motions and completed multiple claim construction briefings and hearings. *Id*. at ¶ 2. In fact, following a Markman hearing conducted by Magistrate Judge Mitchell, the Court previously adopted a construction of the only disputed claim term in this Action. Ex. 1, *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507, Dkt. No. 454 (E.D. Tex. Aug. 21, 2015) (The Court adopted the Magistrate Judge's Order (Dkt. No. 413, Ex. 2), construing the term "a message of the messages.").[1] As such, "[t]he parties and the judiciary would benefit from the Court's familiarity with the patent-in-suit, which would require a substantial investment of time, energy and money to replicate. Accordingly, gains in judicial economy derived from the Court's prior experience with the patent-in-suit weighs against transfer." *Lonestar Inventions, L.P. v. Sony Elecs. Inc.*, No. 6:10-cv-588-LED-JDL, 2011 WL 3880550, at *4 (E.D. Tex. Aug. 29, 2011) (internal quotations omitted).

HMD unsuccessfully attempts to discredit the Court's knowledge. First, after conceding that Judge Gilstrap issued "substantive rulings," HMD nevertheless asserts that the Court does not have knowledge because issues were before "other judicial officers." Motion at 12. But Judge Gilstrap's substantive rulings, including on claim construction, heavily favor keeping the case in this District. *Norman IP Holdings, LLC v. Casio Computer Co., Ltd.*, No. 6:09-cv-270, 2010 WL 4238879, *6 (E.D. Tex. 2010) (court had construed claims and therefore had familiarity with the

---

[1] Although the parties previously disputed an additional term within claim 8, claim 8 is no longer asserted in this Action. *See* Ex. 3.

4

technology at issue). Further, the primary "other judicial officer" with familiarity is Magistrate Judge Mitchell. Magistrate Judge Mitchell is part of the Court, and her knowledge is attributed the Court. *See* 28 U.S.C. § 636; Local Rule CV-72; *see also Vistaprint*, 628 F.3d at 1344 (noting that a magistrate judge's "substantial experience" is relevant to a court's knowledge). Indeed, Judge Gilstrap could—and does—refer matters to Magistrate Judge Mitchell. *See* Referral Order RG-72-1 (referring cases to Magistrate Judge Mitchell, including "whenever appropriate").

Next, HMD alleges the technology of this Action differs from previous matters because CCE did not assert the particular asserted claims of this Action in the cases it filed in 2014. Notwithstanding that CCE filed only one of the eighteen cases in 2014, HMD cites no authority (and CCE is aware of none) that parses the underlying technology claim-by-claim. Such parsing would make little sense, as each claim is drafted around the same technology and likewise supported by the same specification. *See, e.g.*, 37 C.F.R 1.141. For example, while asserted claim 1 is written in method form and previously asserted claim 24 is written in apparatus form, the claims otherwise substantially track. Ex. 4, '923 patent, at claims 1, 24. Indeed, numerous previously-construed claim terms (including the disputed term in this Action) are present in the currently-asserted claims. Tice Dec. at ¶¶ 3-4; Exs. 1, 2 ("a message of the messages"); Ex. 5 at 33-36 ("based on the message" and a discussion of "diverting"); Ex. 6 at 5-11 ("diverting unit" and "controlling entity"). Further, HMD's own positions belie its argument that claims asserted in the prior matters are irrelevant here, as HMD moved to compel CCE to produce confidential infringement contentions and invalidity contentions related to those previously asserted claims. Dkt. No. 76. Moreover, HMD relies on court and PTAB documents relating to the previously asserted claims to support its claim construction positions in this Action. Dkt. No. 67-2.

HMD further argues that CCE leveled a new theory of infringement. But, as the Motion demonstrates, CCE previously alleged infringement based on the same software that is applicable to this Action. *Compare* Motion at 12 (discussing the "Android OS") *with* Dkt. No. 1-1 at 1 (accusing HMD's devices operating the Android OS). Moreover, HMD's argument merely underscores the fact that the same technical issues span all cases, as the previously asserted claims also recite a "diverting unit." *See* Motion at 12. Further, outside the "diverting unit" limitation, HMD does not allege that CCE's infringement theories for any other limitation differs from previous cases. In each case, the technology of the '923 patent and the functionality of the accused products substantially overlap.

In addition to the Court's knowledge, the case progression weighs against transfer. While the § 1404(a) analysis generally is based on the circumstances in place when the case was filed, case progression is determined from the time the transfer motion is filed. *In re Apple Inc.*, 979 F.3d 1332, 1343 (Fed. Cir. 2020). At the time HMD refiled the Motion, this case had been moving forward for nearly nine months and was set for *Markman* hearing in two months and trial in eight months. (Dkt. Nos. 1; 25). Both parties were to have produced relevant documents. (Dkt. No. 25, ¶ 3-3 deadline). Both parties have served and responded to written discovery requests. Tice Dec. at ¶ 5. The parties exchanged infringement and invalidity contentions. (*See* Dkt. No. 25). And Claim construction proceedings were well underway. *Id*. The progress of the case should not be stifled by transferring venue. Indeed, HMD's delays, after filing serial motions to dismiss and contesting service, are yet further reasons the Court should deny transfer. *Network-1 Sec. Sols., Inc. v. D-Link Corp.*, 433 F. Supp. 2d 795, 800 (E.D. Tex. 2006) ("Six months later this case is now finally underway with a firm trial setting in [one year] and a Markman hearing in six months. This factor does not support transfer.").

6

Moreover, at the time CCE filed this case, the Court was overseeing two co-pending cases involving the same patent and same accused software. No. 2:20-cv-079 ("OnePlus case"), and No. 2:20-cv-080 ("TCL case"). In each case, CCE asserted infringement by user equipment operating the Android operating system. (*Compare* Dkt. Nos. 1-1 of this case, OnePlus case, and TCL case). "[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (denying mandamus due to related cases). Though the other cases have now resolved, they were all pending at the time this suit was filed, and thus relevant to the Court's analysis. *See Hoffman*, 363 U.S. at 343 (factors are based on "the situation which existed when suit was instituted.").

### B.  The "Sources of Proof" Factor is at Most Neutral.

"[P]atent litigation usually involves sources of proof that are readily convertible to an electronic medium." *Aloft Media, LLC v. Adobe Sys. Inc.*, No. 6:07-CV-355, 2008 WL 819956, at *4 (E.D. Tex. Mar. 25, 2008). "With the volume of documentary evidence associated with a patent case, it is presumed that the parties will exchange discovery electronically. Any convenience or burden associated with electronic discovery bears little, if any, relation to the physical location of the underlying document." *Id*.; s*ee also Fintiv, Inc. v. Apple Inc.*, No. 6:18-CV-00372-ADA, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 13, 2019) (collecting cases). As such, "[t]he importance of the location of sources of proof is largely a fiction" and the Court may "diminish[] the importance of this factor in the overall transfer analysis, especially where, as is the case here, the movant has identified no sources of proof that cannot be transferred electronically." *Stingray Music USA, Inc. v. Music Choice*, No. 2:16-CV-964-JRG-RSP, 2017 WL 1022741, at *3 (E.D. Tex. Mar. 16, 2017).

"[T]he bulk of the relevant evidence usually comes from the accused infringer." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, HMD concedes that it is the accused infringer and that its documents are in Finland. Motion at 7. Instead, HMD seeks to vicariously benefit from HMD America's documents. But as an HMD America employee admits, assertions that relevant documents are located in Miami is "a little bit deceiving." Ex. 17 (Hoyos) at pp. 17-19. The fact is HMD America's employees, located throughout the country, access HMD America's documents electronically through a shared drive, which is a "cloud space." Ex. 7 (Angelone) at p. 59. There is no evidence that the server hosting this shared drive is in Florida. And as is typical, both parties have produced all documents electronically, with the exception for source code; HMD has made some source electronically available for inspection in this District, and portions of that code were printed in the District and produced to CCE's outside counsel. Tice Dec. at ¶ 6.

While HMD alleges, with no basis or citation, that "CCE has documents in Orange County" (Motion at 7), the fact is that CCE maintains relevant documents in Texas, including in paper form. These include documents related to CCE's business practice and the assignment and licensing of the '923 patent. Hernandez Dec. at ¶ 9.  These documents go directly to CCE's claim that it owns the '923 patent and further support CCE's claim for damages. This factor favors denial, or is at most neutral.

### C.  The "Compulsory Witnesses" Factor Weighs Against Transfer.

HMD attempts to obfuscate the "compulsory witness" factor by lumping it together with the "cost of attendance" factor. Motion at 8-10. But the caselaw is clear: this factor is applicable only to *unwilling* witnesses. *Seven Networks*, 2018 WL 4026760, at *7 ("If a witness is willing, the convenience of the witness is what is important, not a court's compulsory subpoena power.").

HMD does not identify any unwilling witness. Further, HMD provides no indication of what process would be required to secure testimony from any unwilling witness. Nor does HMD provide any reasoning why the Southern District of Florida, as opposed to this District, could issue any such process. As such, HMD does not demonstrate that this factor favors transfer.

Conversely, there *are* unwilling witnesses living in Texas, including **Barry French**, a director on HMD's Board. *See* French Dec. at ¶¶ 1, 3. As a Board member, Mr. French has knowledge of HMD's business practices and business plans and strategies. *Id*. at ¶¶ 5-10.  Yet Mr. French is unwilling to testify at trial. *Id*. at ¶ 11. Because Mr. French lives and works in Dallas, Texas (*id*. at ¶ 3), the Court may compel Mr. French's attendance at trial; a Florida district court cannot. *See* FED. R. CIV. P. 45(c)(1)(B).

**Marvin Key** is a prior Chief Executive Officer of Acacia Research Group LLC. Ex. 8 at 3. Mr. Key is a signatory of a document assigning the asserted patent to CCE. *Id*. at 1-3. As such, Mr. Key has relevant knowledge of CCE's ownership rights in the asserted patent. In connection to HMD's second motion to dismiss (Dkt. No. 36), the parties dispute the breadth of CCE's ownership rights. While CCE believes the Court may deny HMD's motion on the briefing, Mr. Key's knowledge is highly relevant if fact issues related to that motion remain at the time of trial. While Mr. Key is no longer an officer of Acacia Research Group, he resides in Dallas, Texas and is thus subject to the Court' subpoena power. *See* Key LinkedIn Profile, Ex. 16 at 1, 3-4.

**AT&T**'s Texas witnesses are also subject to the Court's subpoena power. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████ AT&T is headquartered in Texas. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████

Relevant marketing witnesses are located in Texas, including in the District. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. 13 at 1. Witnesses from these companies

likely have relevant knowledge related to marketing of the Accused Devices in the United States.

It is unclear at this time whether the foregoing witnesses from AT&T, ████████████████

████████████████████████████████████ would all be willing to attend trial. However, given that

the witnesses are non-parties, it is reasonable to presume that these witnesses are unwilling to

appear at trial voluntarily.

HMD identifies **Jeg & Sons**, **Shalbaf LLC**, and **Quality One Wireless**. Motion at 9. But

HMD gives no explanation why anyone from these entities would be likely to testify at trial or

why deposition testimony presented at trial would be insufficient. *See* FED. R. CIV. P. 32(a)(4)

(deposition testimony is permissible at a hearing or trial when the witness is more than 100 miles

away). Overall, this factor weighs heavily against transfer.

10

### D.  The "Cost to Willing Witnesses" Factor Does Not Support Transfer.

This factor focuses on the cost of attendance for willing witnesses. *Seven Networks*, 2018 WL 4026760, at *7. "Because it generally becomes more inconvenient and costly for witnesses to attend trial the further they are away from home, the Fifth Circuit established [] a 100-mile rule, which requires that when the distance between an existing venue for trial of a matter and proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal citations omitted). However, "the convenience of party witnesses is given little weight. *Seven Networks*, 2018 WL 4026760, at *9.

Again, HMD provides no indication as to which witnesses are willing to attend trial. Thus, HMD cannot establish that this factor favors transfer. Nevertheless, given that HMD secured declarations from the declarants without a subpoena, the Court may infer that the declarants and other HMD-related witnesses are willing to attend trial given their apparent close ties and aligned interest with HMD. Further, CCE is aware of two additional witnesses, Holly Hernandez and Eric Lucas, who are willing to attend trial.

### i.    *Non-Party Witnesses*

**Holly Hernandez** is a non-party witness who has knowledge that directly supports CCE's case-in-chief. Ms. Hernandez is a former Senior Vice President of Acacia Research Group (a prior owner of the '923 patent) and a former Director and Senior Vice President of CCE. Hernandez Dec. ¶¶ 2,4.  Ms. Hernandez has personal knowledge of the transfer of the '923 patent and CCE's litigation and licensing efforts. *Id*. at ¶¶ 3-5. ██████████████████████

████████████████████████████████████████████████

██ Currently, Ms. Hernandez conducts CCE's business in the District pursuant to a consulting

11

████████████████████████████████

agreement. Hernandez Dec. at ¶¶ 6, 10.  Ms. Hernandez works out of CCE's office in this District. *Id.* at ¶¶ 7, 10. As Ms. Hernandez works in the District, a short drive to Marshall is substantially more convenient than a flight, hotel, and food costs for travel to the Southern District of Florida. *See id.* at ¶ 11.

**HMD America Witnesses**: HMD's Motion relies on cherry-picked witnesses from HMD America, Inc. that live in Florida. However, HMD America's documentation shows that ████ ████████████████████████████████████ *See* Ex. 11. The other witnesses are scattered across the country. ████████████████████████████████

████████████████████████████████████

██████████████████

> ii.     *Party Witnesses*

HMD identified one party witness, **Per Ekman**, an HMD officer who lives in Sweden. Dkt. No. 77-15, ¶¶ 1, 3. While in the past he traveled to Miami 2-3 times per *year*, this travel was before the coronavirus pandemic. *Id.* at ¶ 11. But Mr. Ekman's travels prior to the filing of this Action are irrelevant. *Hoffman*, 363 U.S. at 343 (factors decided based on "the situation which existed when suit was instituted."). Mr. Ekman declared that, should corona restrictions permit, it would be convenient for him to travel to Miami. Notably, Mr. Ekman did *not* declare that such travel would be more convenient than traveling to this District. *Id.* The relative convenience of traveling from Sweden to Florida to testify for trial would be substantially similar to traveling from Sweden to Texas. *See Genentech*, 566 F.3d at 1345.

**Eric Lucas** is a CCE officer who lives in California. He has relevant knowledge related to CCE's corporate matters, including the acquisition, technology, and licensing of the patents-in-suit. Tice Dec. at ¶ 7. Eric Lucas intends to present issues related to CCE's case-in-chief, including

providing background on CCE's business, licensing efforts, and underlying technology. As such, deposition testimony is insufficient. Under the Fifth Circuit's 100-mile rule, traveling from California to Marshall is more convenient that traveling to Miami.

### E.  The "Court Congestion" Does not Favor Transfer.

"[T]he relevant inquiry under this factor is the speed with which a case can come to trial and be resolved." *Seven Networks*, 2018 WL 4026760, at *14. HMD's Motion recites generalized statistics related to all civil cases, which are comparable in both districts. In the 12-month period ending June 20, 2020, SDLF's 16.0-month median time to trial was slightly shorter than EDTX's 17.7-month time. Dkt. No. 79-14. The year prior, EDTX's 17.5-month time was slightly shorter than SDFL's 18.3-month time. *Id*. However, relying on those statistic, alone, is facile. If the statistics were properly narrowed to focus on patents cases, this factor would weigh even more heavily in favor of denying transfer. The percentage of intellectual property cases within the total number of civil cases in EDTX (376 out of 3,040, or 12.4%) is much higher than in SDFL (413 out of 10,045, or 4.1%). *See* Caseload Statistics, Table C-3, (available at https://www.uscourts.gov/statistics/table/c-3/federal-judicial-caseload-statistics/2020/03/31).

"Patent cases tend to be longer than other civil cases. Thus, it follows that, if the time-to-trial were narrowed to focus on patent cases, the time-to-trial statistics would weigh even more strongly against transfer." *LBS Innovations, LLC v. Apple Inc.*, No. 2:19-cv-00119-JRG-RSP, 2020 WL 923887, at *6 (E.D. Tex. Feb. 26, 2020). Further, given HMD's delay in filing its motion, this factor weighs even more heavily against transfer. *See Core Wireless Licensing S.A.R.L. v. LG Elecs. Inc.*, No. 2:14-CV-912-JRG-RSP, 2016 WL 4265034, at *2, 9 (E.D. Tex. Aug. 12, 2016) (this factor weighs against transfer when the movant waited "nearly seven months after the filing of [the] Complaint.").

### F.  The "Localized Interests" Factor Weighs Against Transfer.

As HMD concedes, "'[t]here can be little doubt that' a district court 'has a local interest in the disposition of any case involving a resident corporate party.'" Motion at 13 (citing *Intellectual Ventures I LLC v. T-Mobile USA, Inc., No. 2:17-CV-0577-JRG*, 2018 WL 4175934, at *1, 9 (E.D. Tex. June 29, 2018)). This Action involves two corporate parties: CCE and HMD. CCE is a Texas LLC with its principal place of business in the District. Dkt. No. 2; Hernandez Dec. at ¶ 7 (CCE maintained a Plano location before moving to its current Frisco location). HMD attempts to minimize that the District is CCE's home forum by asserting, without basis, that CCE's principal place of business is a mere "mailing address" and "co-working" space. Motion at 3. Not true: CCE operates out of private (i.e., not "co-working") office space. Hernandez Dec. at ¶ 8. Further, HMD alleges (again with no citation to evidence) that CCE "has no personnel in this District" (Motion at 2). Once again, HMD's allegation is false. *See* Dkt. No. 79-24 at Rog. 11 (CCE "maintains personnel and assets for conducting activities related to CCE's business" at its location within this District.). A substantial part of CCE's business in conducted in this District, including via Ms. Hernandez, who provides consulting for CCE and regularly works out of its Frisco office. Hernandez Dec. at ¶ 10. Even though CCE is a small company, there is substantial localized interest of CCE choosing to protect its property in its home forum. *AGIS Software Dev. LLC v. Apple, Inc.*, No. 2:17-CV-00516-JRG, 2018 WL 2721826, at *8 (E.D. Tex. June 6, 2018) ("corporation[s] … are equal before the law and must be treated as equals in a court of justice.").

In contrast, HMD is not a resident of Florida, and instead seeks to vicariously benefit from HMD America's Florida location. Motion at 13. But Florida's interest is tenuous. According to HMD, HMD America sells the Accused Devices and performs "regional" marketing in the United States. Motion at p. 13. But the declarants make clear that the Accused Devices are marketed and

█████████████████████████████████████████

sold throughout the United States. *See* Dkt. No. 77-15 at ¶¶ 6-7; Dkt. No. 77-17 at ¶¶ 3-4. Indeed, according to HMD America's own documentation, ██████████████████████████████████████ ██████████the rest are scattered throughout the country. Ex. 11. As such, HMD America's business practices are *not* localized interests. *See Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) ("Interests that 'could apply virtually to any judicial district or division in the United States,' such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.") (quoting *Volkswagen II*, 545 F.3d at 318).

HMD also attempts to rely on testing for this factor, but, tellingly, is careful not to allege that any testing actually occurs in the Southern District of Florida. *See* Motion at 14. █████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

██████████████████████████████ *Id*. at 79-80; Ex. 15 at 5.

Like CCE, HMD denies having any presence in Florida. Of the two parties to this lawsuit, neither claims any presence in Florida. This factor weighs in favor of denying transfer.

**G.  The "Court Familiarity" and "Conflicts of Law" Factors do not Favor Transfer.**

HMD concedes that these factors are neutral. (Motion at 15). As such, these factors do not support transfer.

**IV. CONCLUSION**

For the foregoing reasons, the Court should decline HMD's motion to transfer venue.

15

Dated: December 28, 2020

Respectfully submitted,

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone (lead attorney)
Texas Bar No. 02855775
Jonathan H. Rastegar
Texas Bar No. 24064043
Hunter S. Palmer
Texas Bar No. 24080748

**BRAGALONE CONROY PC**
2200 Ross Avenue
Suite 4500W
Dallas, TX 75201
Tel: (214) 785-6670
Fax: (214) 785-6680
jbragalone@bcpc-law.com
jrastegar@bcpc-law.com
hpalmer@bcpc-law.com

Attorneys for Plaintiff
**CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

16

## CERTIFICATE OF SERVICE

I certify that on December 28, 2020, I served the foregoing on counsel for Defendant HMD Global Oy by email pursuant to Section 12(c) of the Discovery Order (Dkt. No. 24).

/s/ *Serrena Meyer*
Serrena Meyer

## CERTIFICATE OF AUTHORIZATION TO SEAL

Under Local Rule CV-5, the undersigned counsel hereby certifies that authorization for filing under seal has been previously granted by the Court in the Protective Order (Docket No.31) entered in this case on August 14, 2020.

/s/ *Jeffrey R. Bragalone*
Jeffrey R. Bragalone

17