# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| Plaintiff, | § § | C.A. No. 2:20-cv-00078-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| HMD GLOBAL OY, | § § § | |
| Defendant. | § | |

**PLAINTIFF'S OPENING BRIEF ON CLAIM CONSTRUCTION**

**Table of Contents**

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | LEGAL STANDARDS | 1 |
| | A. Claim Construction | 1 |
| | B. Indefiniteness | 2 |
| III. | LEVEL OF ORDINARY SKILL IN THE ART | 3 |
| IV. | BACKGROUND OF THE PATENT-IN-SUIT | 3 |
| V. | DISPUTED CLAIM TERM | 4 |
| | A. "a message of the messages" (claim 1) | 4 |
| | 1. The Court previously construed the disputed term to mean "one or more, but less than all, of the messages." | 4 |
| | 2. The disputed term is readily understood. | 5 |
| | 3. The Court held that CCE disclaimed a portion of the full scope of the claims after the patent issued. | 7 |
| | 4. HMD's indefiniteness position for the disputed term remains unclear. | 7 |
| | 5. Claim 8 cannot render claim 1 indefinite. | 8 |
| VI. | CONCLUSION | 9 |

# Table of Authorities

**Cases**

*3M Innovative Properties Co. v. Tredegar Corp.*,
  725 F.3d 1315 (Fed. Cir. 2013) .................................................................................................. 2

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
  811 F.3d 1334 (Fed. Cir. 2016) .................................................................................................. 3

*Aylus Networks, Inc. v. Apple Inc.*,
  856 F.3d 1353 (Fed. Cir. 2017) .................................................................................................. 9

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
  512 F.3d 1338 (Fed. Cir. 2008) .................................................................................................. 6

*Cellular Commc'ns Equip. LLC v. HTC Corp.*,
  No. 6:13-cv-507, 2015 WL 10735208 (E.D. Tex. June 1, 2015) ............................................... 4

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
  809 F.3d 1223 (Fed. Cir. 2015) .................................................................................................. 3

*Embrex, Inc. v. Serv. Eng'g Corp.*,
  216 F.3d 1343 (Fed. Cir. 2000) .................................................................................................. 1

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
  755 F.3d 1367 (Fed. Cir. 2014) .................................................................................................. 2

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ............................................................................................................ 2, 9

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) .............................................................................................. 2, 9

*One-E-Way, Inc. v. Int'l Trade Comm'n*,
  859 F.3d 1059 (Fed. Cir. 2017) .................................................................................................. 3

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 1

*Scripps Clinic v. Genentech, Inc.*,
  927 F.2d 1565 (Fed. Cir. 1991) .................................................................................................. 1

*Vitronics Corp. v. Conceptronic, Inc.*,
  90 F.3d 1576 (Fed. Cir. 1996) .................................................................................................... 2

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
　200 F.3d 795 (Fed. Cir. 1999) ........................................................................................... 1, 4

I. **INTRODUCTION**

Under the scheduling order and P.R. 4-5(a), Plaintiff Cellular Communications Equipment LLC ("CCE") submits this opening claim construction brief for U.S. Patent No. 7,218,923 (the "'923 patent," attached as Ex. A). The sole issue is whether the construction that the Court previously gave to the exact same phrase in the same patent in *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507 (E.D. Tex.) remains correct—as CCE contends, or whether the previously-construed phrase is indefinite under an as-yet undisclosed theory—as HMD contends. CCE submits that the choice is clear: the phrase "a message of the messages" in asserted claim 1 means "one or more, but less than all, of the messages" as the Court has previously held; in contrast, HMD cannot discharge its burden to show by clear and convincing evidence that this phrase is indefinite. Because the Court has already determined that this term has a clear and unmistakable meaning, the Court should reject HMD's indefiniteness assertion.

II. **LEGAL STANDARDS**

    A. **Claim Construction**

"The construction of claims is simply a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims." *Embrex, Inc. v. Serv. Eng'g Corp.*, 216 F.3d 1343, 1347 (Fed. Cir. 2000) (alterations in original) (quoting *Scripps Clinic v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991)). "[O]nly those [claim] terms need be construed that are in controversy, and only to the extent necessary to resolve the controversy." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999).

Claim construction focuses mainly on the intrinsic evidence, which consists of the claims themselves, the specification, and the prosecution history. *See generally Phillips v. AWH Corp.*, 415 F.3d 1303, 1313-17 (Fed. Cir. 2005) (en banc). The "words of a claim 'are generally given

their ordinary and customary meaning,'" which is "the meaning that the term would have to a person of ordinary skill in art" as of the date that the patent application was filed. *Id.* at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)) (internal citations omitted). A person of ordinary skill in the art "is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

The court departs from the plain and ordinary meaning in only two instances. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The first is when a patentee acts as a lexicographer. *Id*. The second is when the patentee disavows the full scope of the claim term, known as disclaimer. *See id*. The prosecution disclaimer doctrine precludes a claim from having a scope that was disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). However, "in order for prosecution disclaimer to attach, the disavowal must be both clear and unmistakable." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1325 (Fed. Cir. 2013).

### B. Indefiniteness

A patent is invalid for indefiniteness only when "its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The definiteness requirement "mandates clarity, while recognizing that absolute precision is unattainable." *Id*. at 910. Thus, recognizing that all claims suffer from "the inherent limitations of language," the claims will not be found indefinite if they are "precise enough to afford clear notice of what is claimed." *Id*. at 908-09. Importantly, "definiteness is evaluated from the perspective of a person of skill" (*Dow Chem. Co. v. Nova Chemicals Corp.*

*(Canada)*, 809 F.3d 1223, 1225 (Fed. Cir. 2015) (internal citations omitted)) and "is a question of law . . . subject to a determination of underlying facts." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1343 (Fed. Cir. 2016). Because patents are presumed valid, "[a]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *One-E-Way, Inc. v. Int'l Trade Comm'n*, 859 F.3d 1059, 1062 (Fed. Cir. 2017) (alteration in original).

### III.    LEVEL OF ORDINARY SKILL IN THE ART

A person of ordinary skill in the art of the '923 patent would have been a person having the equivalent of an undergraduate degree in computer science (or a related field) and approximately one year of work experience in the field of wireless communications systems. Additional education in the field could substitute for industry experience, and vice versa. Expert Declaration of Anthony DeRosa at 3-4 [hereinafter DeRosa Dec.].

### IV.    BACKGROUND OF THE PATENT-IN-SUIT

The '923 patent describes a mechanism for controlling message transmission in a mobile device. As the '923 patent explains, mobile devices "provide an open development platform for application developers." '923 patent, Ex. A, at 1:32-33. While this open development platform offers tremendous benefits, it also opens the door to "the possibility of fraudulent applications." *Id.* at 1:38-39. Left unchecked, this could allow for malicious applications to behave contrary to the agreements made with the network operator or send unauthorized premium SMS messages at the user's expense. *See id.* at 1:43-47. The '923 patent recognizes this drawback and introduces a solution to allow the mobile device to eliminate the possibility of misuse by a malicious application. *Id.* at 1:53-58. The '923 patent proposes to divert "[a]t least some of the messages … destined for a communication network" (e.g., the cellular network) to a "controlling entity" that

"evaluates whether any changes are needed in the message." *See, e.g., id.* at Abstract, 1:64-65. The controlling entity may "return[] the message intact or in a modified form" and "may even prohibit the sending of the message." *Id.* at 1:65-2:1. This solution helps ensure that rogue "applications cannot misuse the communication environment." *Id.* at 2:56-57.

**V.     DISPUTED CLAIM TERM**

The parties dispute the proper construction of one phrase: "a message of the messages," as recited in asserted claim 1.[1] (Dkt. No. 67-2). A Judge of this Court, Magistrate Judge Mitchell, advised by Court-appointed technical adviser David Keyzer, previously construed this term to mean "one or more, but less than all, of the messages." *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507, 2015 WL 10735208, at *6 (E.D. Tex. June 1, 2015) (attached as Ex. B). And this Court adopted that construction without modification. *Cellular Commc'ns Equip. LLC v. HTC Corp.*, No. 6:13-cv-507 (E.D. Tex. August 21, 2015) (Dkt. No. 454, attached as Ex. C). Nevertheless, HMD now contends that the previously construed term is indefinite. Because the term continues to have a clear and unmistakable meaning, the Court should reject HMD's indefiniteness assertion.

### A. "a message of the messages" (claim 1)

| CCE's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| one or more, but less than all, of the messages | indefinite |

1. **The Court previously construed the disputed term to mean "one or more, but less than all, of the messages."**

As Magistrate Judge Mitchell previously explained, a person of skill in the art would

---

[1] The parties previously disputed the proper construction of the term "the messages," as recited in claim 8. (Dkt. No. 67-2). However, CCE no longer asserts claim 8 in this Action. (*See* Dkt. No. 82-3 at 2). As claim 8 is not in controversy, it need not be construed. *Vivid*, 200 F.3d at 803.

4

understand the term "a message of the messages," in light of the claims, specification, and pre-issue prosecution history, to mean "one or more of the messages." Ex. B at 8-9. However, Judge Mitchell found that after the patent issued, CCE, in an IPR proceeding, disclaimed the scope of the term that includes all of the message. *Id*. at 11. As such, Judge Mitchell construed the term "a message of the messages" to mean "one or more, but less than all, of the messages." *Id*. The Court agreed and adopted that construction. Ex. C.

   2. **The disputed term is readily understood.**

   The disputed phrase, consisting of easily understood words, is recited in independent claim 1:

> A method for controlling application programs in a communication terminal, the method comprising:
>
> sending messages from an application program towards a communication network, the application program residing in a communication terminal;
>
> diverting *a message of the messages* to a controlling entity residing in the communication terminal; and
>
> based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling being performed before the message is transmitted from the communication terminal to the communication network.

'923 patent, Ex. A, at 9:1-22 (emphasis added). Claim 1 describes "[a] method for controlling application programs in a communication terminal," such as in a mobile device. *Id*. Relevant here, claim 1 recites "sending messages from an application program towards a communication network" and "diverting a message of the messages." *Id*. By virtue of the plural use of the word "messages," claim 1 requires a plurality of messages. And the "diverting" step of claim 1 recites "a message" of the previously introduced "messages." The patentee's use of the indefinite article "a" within the "a message" term in conjunction with word "comprising" carries a meaning of "one or more." Ex. B at 8-9 (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342

(Fed. Cir. 2008) (The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of one or more in open-ended claims containing the transitional phrase comprising." (internal quotes omitted)). Thus, the claims themselves, absent disclaimer, convey to a person of skill in the art that the easily understood phrase "a message of the messages" means "one or more of the messages." DeRosa Dec. at 4-5.

This plain reading of the phrase is confirmed by the specification. DeRosa Dec. at p. 5. The specification explains that one or more of the messages are diverted: "***sending messages*** from an application towards a communication network, where the application resides in the communication terminal, ***and diverting at least one message*** destined for the communication network." '923 patent, Ex. A, at 2:14-18. Indeed, this concept is explained throughout the specification. *Id*. at Abstract ("***[a]t least some of the messages*** generated by an application residing in the terminal and destined for a communication network ***are diverted*** to an independent controlling entity also residing in the terminal."); *id*. at 1:60-63 (At least some of the outbound messages generated by an application in a terminal are diverted …."); *id*. at 2:26-27 ("The terminal includes one or more applications configured to ***send messages towards a communication network*** and ***diverting means for diverting selected messages*** sent from an application and destined for the communication network to a controlling entity residing in the terminal …."); *id*. at 2:39-41 ("at least one application configured to ***send messages towards the communication network*** and diverting means for ***diverting at least some of the messages***"). Consistent with the plain meaning of claim 1, the specification describes sending messages towards a communication network and diverting one or more of those messages. As such, a person of ordinary skill in the art, after reviewing the claims and specification, would recognize that, absent disclaimer, the disputed term means one or more of the messages, and that "the messages" references the "messages" introduced

6

in the sending step of claim 1. DeRosa Dec. at 5-6.

### 3. The Court held that CCE disclaimed a portion of the full scope of the claims after the patent issued.

After the patent issued, CCE submitted arguments to the PTAB in IPR proceedings that distinguished claims of the '923 patent from prior art. In relation to one of those proceedings, Magistrate Judge Mitchell found that CCE's "arguments to the PTAB rise to the level of a clear and unmistakable disclaimer that 'a message of the messages' does not include all of the messages." Ex. B at 11. Thus, Magistrate Judge Mitchell held that a person of skill in the art would clearly and unmistakably understand the meaning of "a message of the messages" to mean "one or more, but less than all, of the message." *Id.* The Court agreed and adopted the construction. Ex. C. Before the Court's ruling, CCE took the position that it did not disclaim the full scope of the term. However, CCE respects the Court's prior ruling and thus submits that the term "a message of the messages" should be construed to mean "one or more, but less than all, of the messages," as the Court previously held.

### 4. HMD's indefiniteness position for the disputed term remains unclear.

It is unclear why HMD contends that a term comprising simple words, in which the Court has previously adopted a construction, could be indefinite. In its invalidity contentions, HMD merely disclosed that for "each of the below claim limitations [including "a message of the messages], the patent fails to particularly point out and distinctly claim the subject matter that the inventor regards as the invention." Ex. D at 11-12. And HMD was also unwilling to provide the basis for its contention during the P.R. 4-2 meet-and-confer process. Ex. E at 1. Nor did HMD submit an expert declaration that might help to explain its indefiniteness contention. CCE submits that HMD should not be permitted to "lay behind the log" and refuse to disclose the specifics of its contention that the "a message of the messages" term is indefinite, and CCE reserves all rights

to request that the Court strike and/or disregard arguments that should have been disclosed sooner.

Nevertheless, HMD's invalidity contentions also allege that "'the messages' in dependent claim 8 [is indefinite], in view of 'a message of the messages' in independent claim 1." Ex. D at 12. Yet HMD does not contend that the same "the messages" term in asserted independent claim 2 is indefinite. *Id.*; Ex. E at 1. As such, CCE is left to guess that HMD's indefiniteness position is that the identified terms of claims 1 and 8 are irreconcilable in light of the Court's prior holding of disclaimer. However, as discussed below, dependent claim 8 does not render the disputed term indefinite.

### 5. Claim 8 cannot render claim 1 indefinite.

Claim 8, which depends from claim 1, does not render the "a message of the messages" term of claim 1 indefinite. Claim 8 recites "wherein the diverting comprises diverting ***the messages*** to the controlling entity." '923 patent, Ex. A, at claim 8 (emphasis added). While claim 1, before the finding of post-issuance disclaimer, required diverting one or more—including all—of the messages, dependent claim 8 required diverting "the messages." That is, claim 8 required diverting *all* the messages.

To the extent HMD argues that claim 8 renders the "a message of the messages" term of claim 1 indefinite, it would be incorrect. Specifically, one could attempt to argue that because claim 1, ***after a finding post-issuance disclaimer***, requires diverting less than all of the messages and dependent claim 8, ***before a finding of post-issuance disclaimer***, covers diverting all of the messages, a person of skill in the art might be confused as to whether the "a message of the messages" term of claim 1 covers *all* of the messages or whether it requires "less than all" of the messages. Not only would this mixing of a pre-disclaimer reading of one claim with a post-disclaimer reading of another be improper, the Court has already recognized that a person of skill in the art would have no such confusion.

8

In finding prosecution disclaimer, the Court recognized that a person of skill in the art would clearly and unmistakably understand that, in view of the statements made in the prior IPR proceeding, "a message of the messages" means "one or more, but less than all, of the messages" and thus cannot include "all" of the messages. And because definiteness is determined from the prospective of one of skill in the art in view of the prosecution history, the disputed term is definite. *See Nautilus*, 572 U.S. at 901; *see also Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1360-361 (Fed. Cir. 2017) (For purposes of claim construction, the prosecution history includes statements made by a patentee in an IPR proceeding.). The Court adopted a claim construction of the disputed term based on a finding that CCE disclaimed a scope of "a message of the messages" that includes all of the messages. To reach a finding of disclaimer, the intrinsic record ***must be "clear and unmistakable"***: the patentee must "unequivocally disavow[] a certain meaning" of the claims. *Omega*, 334 F.3d at 1325. Thus, by finding disclaimer, the Court determined that a person of ordinary skill in the art would have no question that the scope the disputed term does not include "all" messages because the post-issuance disavowals in the prior IPR made that unmistakably clear. Thus, claim 8 cannot render the disputed term indefinite. Indeed, an argument that a person of ordinary of skill in the art would not understand whether "a message of the messages" includes "all" messages is tantamount to an argument that the patentee did not clearly and unmistakably disclaim that scope of the claims in the IPR proceeding. But the Court has already rejected that argument. As such, the disputed term is not indefinite.

## VI. CONCLUSION

For the foregoing reasons, the disputed term, "a message of the messages" should be given the construction previously adopted by the Court: "one or more, but less than all, of the messages."

9

| | |
|---|---|
| Dated: January 13, 2020 | Respectfully submitted,<br><br>/s/ *Jeffrey R. Bragalone*<br>Jeffrey R. Bragalone (lead attorney)<br>Texas Bar No. 02855775<br>Jonathan H. Rastegar<br>Texas Bar No. 24064043<br>Jerry D. Tice II<br>Texas Bar No. 24093263<br>Hunter S. Palmer<br>Texas Bar No. 24080748<br><br>**BRAGALONE CONROY PC**<br>2200 Ross Avenue<br>Suite 4500W<br>Dallas, TX 75201<br>Tel: (214) 785-6670<br>Fax: (214) 785-6680<br>jbragalone@bcpc-law.com<br>jrastegar@bcpc-law.com<br>jtice@bcpc-law.com<br>hpalmer@bcpc-law.com<br><br>Attorneys for Plaintiff<br>**CELLULAR COMMUNICATIONS EQUIPMENT LLC** |

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on January 13, 2020.

/s/ Hunter S. Palmer
*Hunter S. Palmer*
