**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | § § § | |
| Plaintiff, | § § | Case No. 2:20-CV-00078-JRG |
| v. | § § | JURY TRIAL DEMANDED |
| HMD GLOBAL OY, | § § § | |
| Defendant. | § | |

**DEFENDANT'S RESPONSIVE BRIEF ON CLAIM CONSTRUCTION**

**TABLE OF CONTENTS**

**Pages**

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.      The Patent-in-Suit. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

B.      The Court Narrows "a Message of the Messages" in the Apparatus Claims Due to
CCE's Disclaimer, Which CCE Admits Applies to Method Claim 1 As Well. . . . . . . . . 2

C.      HMD Global Deposes CCE's Claim Construction Expert. . . . . . . . . . . . . . . . . . . . . . . . 3

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      To Avoid Indefiniteness, Method Claims Must Inform a Person Skilled in the Art of
The Steps Necessary to the Method; Claim 1 of the '923 Patent Fails This Test. . . . . . . 3

II.      By Testifying That He Could Determine the Scope of Method Claim 1 Only By
Turning It Into an Apparatus Claim, CCE's Expert Further Confirmed That
"a Message of the Messages" Renders Method Claim 1 Indefinite. . . . . . . . . . . . . . . . . 6

III.      CCE's Arguments Cannot Save Claim 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

         A.      The Previous Construction Requires Indefiniteness. . . . . . . . . . . . . . . . . . . . . . . 9

         B.      CCE Knew of HMD Global's Arguments Well Before Its Brief. . . . . . . . . . . . 10

         C.      CCE Cannot Rely on Leading Questions to Its Own Expert. . . . . . . . . . . . . . . 11

         D.      CCE Cannot Claim That Infringement Scope Differs from Claim Scope. . . . . . 11

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## TABLE OF AUTHORITIES

*Cases*                                                                                                    **Pages**

*Barkan Wireless IP Holdings, L.P. v. Samsung Elecs. Co.*,
      Case No. 18-28, 2019 WL 497902, at *33 (E.D. Tex. Feb. 7, 2019). . . . . . . . . . . . . . . . .9

*Corinth Investors Holdings, LLC v. Evanston Ins. Co.*,
      Case No. 13-682, 2014 WL 4222168, (E.D. Tex. Aug. 25, 2014). . . . . . . . . . . . . . . . .10

*CryptoPeak Sols., LLC v. Lowe's Home Centers, LLC*,
      Case No. 15-737, 2016 WL 5430830, (E.D. Tex. Sept. 29, 2016). . . . . . . . . . . . . . . . . 8

*Cybersettle, Inc. v. National Arbitration Forum, Inc.*,
      243 Fed. App'x 603, 606 (Fed. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 8

*Dixon v. Toyota Motor Credit Corp.*,
      794 F.3d 507, 508 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*E-Watch Inc. v. Apple, Inc.*,
      Case No. 13-1061, 2015 WL 1387947, (E.D. Tex. Mar. 25, 2015). . . . . . . . . . . . . . . . . 8

*Ex Parte Lyell*,
      17 U.S.P.Q.2d 1548, 1550-51 (B.P.A.I. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Halliburton Energy Services, Inc. v. M-I LLC*,
      514 F.3d 1244, 1249-50 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
      909 F.2d 1464, 1468 (Fed. Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
      430 F.3d 1377, 1383-84 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . .1, 4, 8, 9

*Lawrence v. Sw. Bell Yellow Pages, Inc.*,
      Case No. 04-2087, 2006 WL 8437213, (N.D. Tex. Apr. 19 2006). . . . . . . . . . . . . . . . . 11

*Lone Star Technological Innovations, LLC v. Asustek Computer Inc.*,
      Case No. 19-59, 2020 WL 6811484, (E.D. Tex. July 31, 2020). . . . . . . . . . . . . . . . . . . 9

*Markman v. Westview Instruments, Inc.*,
      52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). . . . . . . . . . . . 11

*Morton Int'l, Inc. v. Cardinal Chem. Co.*,
      5 F.3d 1464, 1470 (Fed. Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898, 901 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 11

*NTP v. Research in Motion, Ltd.*,
    418 F.3d 1282, 1318 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351, 1360 (Fed. Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ormco Corp. v. Align Tech., Inc.*,
    463 F.3d 1299, 1311 (Fed. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*ParkerVision, Inc. v. Qualcomm Inc.*,
    903 F.3d 1354, 1361 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Plastronics Socket Partners, Ltd. v. Dong Weon Hwang*,
    Case No. 18-14, 2020 WL 1324733, (E.D. Tex. March 20, 2020). . . . . . . . . . . . . . . . . 10

*Rembrandt Data Techs., LP v. AOL, LLC*,
    641 F.3d 1331, 1339 (Fed. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335, 1345 (Fed. Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

**INTRODUCTION**

A claim is indefinite when a person of ordinary skill cannot define its scope.  Plaintiff

CCE designated a claim construction expert for the '923 patent, confirmed that he was a person

of ordinary skill in the art regarding the patent, and provided a declaration.  At his deposition,

however, plaintiff's expert testified that he cannot define the scope of claim 1 because, among

other things, he would not be able to make a determination one way or the other whether a user

sending SMS messages, even 6,000 of them, would practice the step of "diverting a message of

the messages."  That sounds like an exaggeration, but is not:  when asked during deposition to

confirm that "you cannot tell if those 6,000 messages are infringing," plaintiff's expert testified

that "[y]ou would not be able to make a determination one way or the other, correct."  Plaintiff's

expert repeatedly admitted that he could not confirm whether various examples fell inside or

outside the claim scope, and testified that the only way he *could* determine that scope would be if

"diverting a message of the messages" were really an apparatus claim, thus rendering it invalid

under *IPXL*.  Although CCE tried to rehabilitate its expert through an examination including only

leading questions, on further direct examination he reaffirmed everything he had previously

admitted, only this time in more detail.  Although CCE attended this deposition and understood

the implications of its expert's testimony, its opening brief simply ignored this issue, as if doing

so would make it go away.  But CCE's silence cannot change the admissions of its own expert,

who could not define the scope of claim 1.  It is indefinite, and the Court should so find.

## BACKGROUND

**A.      The Patent-in-Suit**

The '923 patent "relates generally to control of applications residing in a communication

terminal, especially in a mobile terminal.  More particularly, the invention relates to a

mechanism for controlling the rights and/or behavior of terminal applications in a network

environment."  Docket No. 90-1 at 1:5-10.  After "some of the outbound messages generated by

an application in a terminal are diverted to the controlling entity on their way from the

application to the network," the controlling entity "evaluates whether any changes are needed,"

and "based on the evaluation, the control entity then returns the message intact or in a modified

form."  *Id.* at 1:60-65.  Claim 1 requires:

> A method for controlling application programs in a communication terminal, the method comprising:
>
>> sending messages from an application program towards a communication network, the application program residing in a communication terminal;
>>
>> diverting a message of the messages to a controlling entity residing in the communication terminal; and
>>
>> based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling being performed before the message is transmitted from the communication terminal to the communication network.

'923 cl. 1, Docket No. 90-1 at 9:10-22; *see* Plaintiff's Brief on Claim Construction ("Br.") at 5.

**B.      The Court Narrows "a Message of the Messages" in the Apparatus Claims Due to CCE's Disclaimer, Which CCE Admits Applies to Method Claim 1 As Well**

Until this action, briefing and construction of "a message of the messages" addressed

only apparatus claims, not method claims such as claim 1.  *E.g.*, Docket No. 90-2 at 7-14.

Considering apparatus claim 24, which also contains "a message of the messages," the Court

found that CCE's "arguments to the PTAB rise to the level of a clear and unmistakable

disclaimer that 'a message of the messages' does not include all of the messages."  Br. at 4-5, 7

(quoting Docket No. 90-2 at 11); *see* Docket No. 90-3.  CCE no longer contests this disclaimer,

and agrees that it applies to "a message of the messages" in claim 1 just as in claim 24.  Br. at 7.

Thus, CCE now admits that "a message of the messages" in claim 1 cannot be broader than "one

or more, but less than all, of the messages," and asks this Court to apply this construction and

find the claim definite.  Br. at 7.

C.      **HMD Global Deposes CCE's Claim Construction Expert**

        On November 25, 2020, CCE provided Mr. DeRosa's opinion regarding Claim 1.  Docket

No. 90-6.  On December 18, 2020, HMD Global took Mr. DeRosa's deposition.  *See* Declaration

of Maissa Chouraki ("Chouraki Decl.") Ex. A.  The deposition lasted just over two hours,

including breaks.  *See id.* at 5:15, 98:12.  During the deposition, Mr. DeRosa admitted that he

could not determine the scope of "a message of the messages" in claim 1, and further admitted

that one could understand this term only by treating it as an apparatus claim.  *See generally id.*

Later that day, HMD Global sent CCE a letter noting that Mr. DeRosa's admissions rendered the

claim indefinite, and asking CCE to dismiss its claims.  Chouraki Decl. Ex. B.

**ARGUMENT**

I.      **To Avoid Indefiniteness, Method Claims Must Inform a Person Skilled in the Art of
        The Steps Necessary to the Method; Claim 1 of the '923 Patent Fails This Test**

        "[A] patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those

skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572

U.S. 898, 901 (2014).  If a claim "is not sufficiently precise to provide competitors with an

accurate determination of the 'metes and bounds' of protection involved," it is "ambiguous and

– 3 –

properly rejected under section 112, paragraph 2."  *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,

430 F.3d 1377, 1384 (Fed. Cir. 2005) (citing *Ex Parte Lyell,* 17 U.S.P.Q.2d 1548, 1550-51

(B.P.A.I. 1990)).  "A patented method is a series of steps, each of which must be performed for

infringement to occur.  It is not enough that a claimed step be 'capable' of being performed."

*Cybersettle, Inc. v. Nat'l Arbitration Forum, Inc.*, 243 Fed. App'x 603, 606 (Fed. Cir. 2007)

(citing *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *NTP v. Research

in Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005).  Thus, when considering indefiniteness of

method claims, the Court must determine whether those claims "inform, with reasonable

certainty, those skilled in the art" about the "steps" which "must be performed for infringement

to occur"; failure to do so renders a method claim indefinite.  *Nautilus*, 572 U.S. 901;

*Cybersettle*, 243 Fed. App'x at 606; *see, e.g.*, *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d

1335, 1345 (Fed. Cir. 2015) (where one step of a method claim did not provide "reasonable

certainty" regarding its scope, finding the claim "invalid for indefiniteness by clear and

convincing evidence because read in light of the specification and the prosecution history, the

patentee has failed to inform with *reasonable certainty* those skilled in the art about the scope of

the invention.") (emphasis in original).

     As the testimony of CCE's claim construction expert confirms, claim 1 of the '923 patent

fails this test, because a person of ordinary skill in the art can never be certain he or she has

successfully avoided "diverting a message of the messages to a controlling entity residing in the

communication terminal."  '923 claim 1.  Mr. DeRosa considers himself a person of ordinary

skill in the field of the '923 invention, *see* Docket No. 90-6 at 3-4, Ex. A at 53:12 to 59:4, and

CCE agrees.  Br. at 3.  But Mr. Rosa himself could not guarantee that messages would fall

outside the scope of "diverting a message of the messages," and indeed confirmed that it was

*impossible* to know, because non-infringing activity could later *retroactively* become infringing:

> Q. If a user sends two messages and two messages only and neither one of them is diverted, is there infringement?
>
> A. No, because of the "one or more."
>
> Q. Okay. So if a user sends 6,000 messages and they're all diverted, there is no infringement; correct?
>
> A. If a user sends 6,000 and only 6,000 and never sends another one, and all of them are diverted, then that would not infringe.
>
> Q. So if a user sends 6,000 messages and none of them are diverted, that also would not infringe; correct?
>
> A. Correct.
>
> Q. If a user sends 6,000 messages and they're all diverted, so far that user has not infringed; correct?
>
> A. Correct.
>
> Q. If a user then sends message 6,001 and that message is not diverted, is that message infringing, or are all 6,001 messages now infringing?
>
> A. In this particular circumstance you're saying the first 6,000 are diverted and then the next one is not?
>
> Q. That is what I'm saying.
>
> A. Then it seems to fit the definition of one or more but not all.
>
> Q. **And so does that mean that all 6,001 messages that the user sent are now retroactively infringing?**
>
> A. **Yes.**

Ex. A at 69:13 to 70:20; *see id.* at 61:11 to 69:12.  As a result:

> Q. Is it ever possible to determine whether infringement has occurred based simply on whether or not a particular message has been diverted?
>
> A. Maybe with enough analysis.
>
> Q. **But it's not always possible; correct?**
>
> A. **Correct.**

Chouraki Decl. Ex. A at 75:23 to 76:5 (emphasis added).  Later in the deposition, and following

cross-examination by CCE, Mr. DeRosa made the same point, but even more clearly:

> Q.    And you previously answered that if a user sends 6,000 messages and none of them are diverted but the patent is otherwise met, **that you cannot tell if those 6,000 messages are infringing.  Correct**?
>
> A.    **You would not be able to make a determination one way or the other, correct**.

Chouraki Decl. Ex. A at 92:25 to 93:7 (emphasis added).  Mr. DeRosa thus confirmed and reconfirmed that a person of ordinary skill could never achieve "reasonable certainty" that he or she had avoided "diverting [one or more, but less than all, of the messages]," and thus could not know the scope of the claim because of the uncertainty caused by "a message of the messages," rendering it indefinite.  *See supra; see, e.g., Teva Pharm.*, 789 F.3d at 1345.  The indefiniteness "standard is met where an accused infringer shows by clear and convincing evidence that a skilled artisan could not discern the boundaries of the claim based on the claim language, the specification, and the prosecution history, as well as her knowledge of the relevant art area." *Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249-50 (Fed. Cir. 2008).  Although it is unusual for plaintiff's expert to supply this evidence, Mr. DeRosa did so here.

**II.    By Testifying That He Could Determine the Scope of Method Claim 1 Only By Turning It Into an Apparatus Claim, CCE's Expert Further Confirmed That "a Message of the Messages" Renders Method Claim 1 Indefinite**

Although Mr. DeRosa's admission that he could not "could not discern the boundaries of the claim" is sufficient to confirm its indefiniteness, *see supra* § I, he also provided a second, separate reason the claim must fail.  Mr. DeRosa repeatedly testified that he could understand the scope of "a message of the messages" only if it included an apparatus as well as a method:

> Q.    What would you have to do to determine whether infringement has occurred in my one-message hypothetical?
>
> A.    You would have to understand how the device was operating, and you would have to kind of identify the logic in that communication terminal in order to understand if there was diverting and controlling being done.
>
> Q.    Okay.  And so do I correctly understand you to be saying that if a user is using a communication terminal and that user sends a single message from an application program toward a communication network and then the communication terminal

Q.      diverts that message to a controlling entity, and the controlling entity controls whether an application program behaves in a predetermined manner, in that hypothetical, **in order to determine whether infringement occurs you would have to look at whether the device was capable of sometimes diverting and sometimes not diverting.  Am I understanding that correctly?**

A.      **Correct.**

Q.      Okay.  And so to determine whether a person has infringed Claim 1, one must consider not only the steps of the method being performed but also the source code being used to perform that method; correct?

MR. TICE:     Objection; form.

THE WITNESS:       No, you would not need the source code.

BY MR. WARREN:

Q.      Okay.  So in order to—withdraw that.  To determine whether a person has infringed Claim 1 of the '923 patent, **one must consider not only the steps of the method being performed but also the apparatus being used to perform that method; correct?**

A.      **Yes.**

Chouraki Decl. Ex. A at 76:6 to 77:21 (emphasis added).  Later in the deposition, and following

cross-examination by CCE, Mr. DeRosa again made the same point, again even more clearly:

Q.      So I'll try to use terms that don't seem loaded to you.  What matters is not whether or not a particular message is diverted.  What matters is whether the communication terminal has the **capability of diverting some but not all of the messages; correct?**

A.      The only reason I'm hesitating is "has the capability."  I'm thinking of a case where—not the technical word case, but I'm thinking of an example where maybe the device manufacturer does ship something with a capability but always has the capability turned off and never makes use of it.  So in that case, I don't think it would be infringing if it wasn't actually ever doing it.  **So has the capability and also enables the capability or makes use of that capability.**

Q.      So in order—withdraw that.  In order to determine whether a user sending a particular message from a communication terminal infringes Claim 1, you must examine **not only whether or not the device has the capability of diverting a message or not diverting a message, but also whether or not that capability is enabled; correct?**

A.      **I mean, I think that's—yes**.

Chouraki Decl. Ex. A at 96:16 to 97:21 (emphasis added).  Mr. DeRosa thus admitted that he

could understand the scope of "a message of the messages" only if he treated the "diverting"

limitation of method claim 1 as an apparatus claim.  "[A]pparatus claims cover what a device *is*,

not what a device *does*."  *ParkerVision, Inc. v. Qualcomm Inc.*, 903 F.3d 1354, 1361 (Fed. Cir.

2018) (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1468 (Fed. Cir.

1990)).  But a method claim "is a series of steps, each of which must be performed for

infringement to occur.  It is not enough that a claimed step be 'capable' of being performed."

*Cybersettle*, 243 Fed. App'x at 606.  Mr. DeRosa thus admitted that claim 1 "recit[es] both an

apparatus and a method of using that apparatus," which "renders a claim indefinite under section

112, paragraph 2."  *IPXL*, 430 F.3d at 1384; *see, e.g.*, *Rembrandt Data Techs., LP v. AOL, LLC*,

641 F.3d 1331, 1339 (Fed. Cir. 2011).

    "[T]he relevant inquiry under *IPXL* is whether the claim leaves the reader 'unclear

whether infringement [ ] occurs when one creates a system that allows the user to [practice the

claimed method step], or whether infringement occurs when the user actually [practices the

method step]."  *CryptoPeak Sols., LLC v. Lowe's Home Centers, LLC*, No. 15-737, 2016 WL

5430830, at *2 (E.D. Tex. Sept. 29, 2016) (quoting *IPXL*, 430 F.3d at 1384).  That is precisely

the problem with claim 1, given Mr. DeRosa's understanding of "a message of the messages,"

under which he considers the scope of the "diverting" step based on the *capability* of diverting

"one or more, but less than all, of the messages"—an apparatus analysis—while considering the

remaining steps according to the usual analysis for method claims of what actually happens in

practice.  As a result, claim 1 is "not definite as to whether the claim is infringed when the

apparatus is made or sold, or when a user actually operates the input device."  *E-Watch Inc. v.*

*Apple, Inc.*, Case No. 13-1061, 2015 WL 1387947, at *6 (E.D. Tex. Mar. 25, 2015) (citing *IPXL*, 430 F.3d at 1384); *see also, e.g., Lone Star Technological Innovations, LLC v. Asustek Computer Inc.*, Case No. 19-59, 2020 WL 6811484, at *14-15 (E.D. Tex. July 31, 2020); *Barkan Wireless IP Holdings, L.P. v. Samsung Elecs. Co.*, Case No. 18-28, 2019 WL 497902, at *33 (E.D. Tex. Feb. 7, 2019).  For this reason as well, claim 1 must fall as indefinite.

## III.    CCE's Irrelevant and Incorrect Arguments Cannot Save Claim 1

Hiding its head in the sand, CCE ignores Mr. DeRosa's deposition in its brief.  Instead, CCE raises several arguments that are both irrelevant and incorrect.

### A.    The Previous Construction Requires Indefiniteness

CCE briefly argues that, because the Court previously construed "a message of the messages" in claim 24 to mean "one or more, but less than all, of the messages," the same construction cannot render claim 1 indefinite.  Br. at 1, 4.  The opposite is true.  Claim 24 is an *apparatus* claim, *see supra* § B, which can and often does address the *capability* of a device, rather than what it actually does.  *See ParkerVision*, 903 F.3d at 1361.  HMD Global's argument does not require the Court either to reconsider the prior construction of "a message of the messages" to mean "one or more, but less than all, of the messages," or to overrule CCE's admission of its disclaimer.  *See supra* § B.  To the contrary, HMD Global agrees with CCE that CCE's disclaimer includes "a message of the messages" in claim 1; the parties disagree only on the effect that the disclaimer has.  As HMD Global has already explained, in a method claim such as claim 1, as opposed to an apparatus claim such as claim 24, CCE's disclaimer renders "a message of the messages" indefinite.  *See supra* §§ I, II.  HMD Global's arguments thus do not contradict the previous claim construction; they rely on it.

### B.    CCE Knew of HMD Global's Arguments Well Before Its Brief

Puzzlingly, CCE argues that HMD Global has failed to disclose its indefiniteness

arguments.  Br. at 7-8.  But HMD Global's arguments depend on admissions from CCE's own

expert, obtained at a deposition attended by CCE's counsel.  *See supra.*  CCE understood the

implications of its expert's admissions as they occurred, and attempted to rehabilitate him

through leading questions.  *See* Chouraki Decl. Ex. A at 79:22 to 86:10.  Although HMD Global

was not required to re-disclose events that occurred in a deposition attended by CCE itself, HMD

Global actually *did* write to CCE later that day, stating that Mr. DeRosa's admissions rendered

the claim indefinite.  Chouraki Decl. Ex. B; *see supra* § C.  In the unlikely event that HMD

Global's letter was unclear or CCE wanted more information or to confer further, CCE could

have responded to this letter to seek further discussion—but did not.  Instead CCE ignored HMD

Global's letter and ignored its expert's testimony in its opening brief, professing ignorance of

HMD Global's arguments.  CCE "should not be permitted to 'lay behind the log' and refuse to

disclose" its arguments against indefiniteness until its reply brief.  Br. at 7-8; *Plastronics Socket*

*Partners, Ltd. v. Dong Weon Hwang*, Case No. 18-14, 2020 WL 1324733, at *8 (E.D. Tex.

March 20, 2020) ("Arguments raised for the first time in a reply brief are waived.") (quoting

*Dixon v. Toyota Motor Credit Corp.*, 794 F.3d 507, 508 (5th Cir. 2015)); *Corinth Investors*

*Holdings, LLC v. Evanston Ins. Co.*, Case No. 13-682, 2014 WL 4222168, at *5 (E.D. Tex. Aug.

25, 2014) ("The Court will not rely on arguments made and evidence presented for the first time

in a reply brief when the non-movant . . . has not had adequate time to respond.").

### C.      CCE Cannot Rely on Leading Questions to Its Own Expert

Following Mr. DeRosa's admissions on direct examination, CCE sought to rehabilitate

him with a cross-examination that included only leading questions.  Chouraki Decl. Ex. A. at

79:22 to 86:10.  HMD Global objected to the form of each question.  *See id.*  This "testimony is

inadmissible, because it was elicited through improper leading questions."  *Lawrence v. Sw. Bell*

*Yellow Pages, Inc.*, Case No. 04-2087, 2006 WL 8437213, at *4 (N.D. Tex. Apr. 19 2006).  In

any event, CCE's leading-questions examination did not work:  when HMD Global returned to

questioning him, Mr. DeRosa repeated and reaffirmed his admissions from his original

examination.  *See generally* Chouraki Decl. Ex. A at 86:12 to 97:23; *compare, e.g.*, *id.* at 69:13

to 70:20, 75:23 to 76:5 *with* 92:25 to 93:7; *id* at 76:6 to 77:21 *with* 96:16 to 97:21.  Although the

Court should not consider CCE's leading-questions examination, if it does, it will find that this

examination had no effect on Mr. DeRosa's admissions.

### D.      CCE Cannot Claim That Infringement Scope Differs from Claim Scope

At the conclusion of its leading examination, CCE elicited testimony from its expert that

he had not "performed an infringement analysis for any devices or products related to the '923

patent" and did not "offer any opinions of whether any devices infringe the '923 patent."

Chouraki Decl. Ex. A at 85:22 to 86:8.  But the scope of the invention analyzed for

indefiniteness is the same scope determined by claim construction and used to find infringement.

*Nautilus*, 572 U.S. at 910; *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351,

1360 (Fed. Cir. 2008) ("The purpose of claim construction is to 'determin[e] the meaning and

scope of the patent claims asserted to be infringed.'") (quoting *Markman v. Westview*

*Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996));

*Morton Int'l, Inc. v. Cardinal Chem. Co.*, 5 F.3d 1464, 1470 (Fed. Cir. 1993) ("Since the

evidence shows that the claims at issue here are not sufficiently precise to permit a potential

competitor to determine whether or not he is infringing, we also agree with the district court's

determination that the claims are invalid for failure to satisfy the 'definiteness' requirement of

section 112, second paragraph.").

At his deposition, following a day of preparation by CCE's counsel, CCE's expert

understood and acknowledged that he was testifying about the scope of the claims, not applying

those claims to any particular device.  Chouraki Decl. Ex. A at 61:18-24 ("Q.  I'm going to

now—we're going to walk through Claim 1, and I'm going to use terms that appear in the patent.

I mean for those terms to have the meaning that you understand them to have in the patent.  Do

you understand that?  A.  Okay."); *see id.* at 35, 52, 62-77, 87-97.  Although CCE may not like

the answers its expert gave, it cannot avoid them by inventing a false distinction between the

scope of a claim for infringement and for any other purpose.  Mr. DeRosa's testimony confirmed

that he could not determine the scope of claim 1, and thus that it is indefinite.  *See supra* § I.

## CONCLUSION

For the foregoing reasons, the Court should find that "a message of the messages" in

claim 1 is indefinite.

Date: January 27, 2021                          Respectfully submitted,

                                                */s/ Deron R. Dacus*
                                                Deron R. Dacus
                                                State Bar No. 00790553
                                                **The Dacus Firm, P.C.**
                                                821 ESE Loop 323, Suite 430
                                                Tyler, Texas, 75701
                                                +1 (903) 705-1117
                                                +1 (903) 581-2543 facsimile
                                                ddacus@dacusfirm.com

– 12 –

Matthew S. Warren (California Bar No. 230565)
Jennifer A. Kash (California Bar No. 203679)
Erika Warren (California Bar No. 295570)
**Warren Lex LLP**
2261 Market Street, No. 606
San Francisco, California, 94114
+1 (415) 895-2940
+1 (415) 895-2964 facsimile
20-78@cases.warrenlex.com

*Attorneys for HMD Global Oy*

## CERTIFICATE OF SERVICE

I certify that on January 27, 2021, I filed the foregoing Defendant's Responsive Brief on

Claim Construction under Local Rule CV-5(a)(7) and served it on all counsel of record through

the Court's electronic filing system.  As required by the Court's Order of January 5, 2021,

Docket No. 86, I also sent a copy of the foregoing Defendant's Responsive Brief on Claim

Construction by electronic mail to the court-appointed technical advisor, Michael D. Paul.

*/s/ Deron R. Dacus*
Deron R. Dacus